# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASHAYILA SAYERS, BRITTNEY TINKER, JENNIFER MONACHINO, KIMBERLY MULLINS, HILDA MICHELLE MURPHREE, and AMANDA JIMENEZ, on behalf of themselves and all others similarly situated, <br><br>                         Plaintiffs, <br>     v. <br><br> ARTSANA USA, INC., <br><br>                         Defendant. | Case No. 7:21-cv-07933-VB <br><br> Hon. Vincent L. Briccetti |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Dated: August 28, 2023

**BURSOR & FISHER, P.A.**
Alec M. Leslie
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Martha A. Geer
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
Email: mgeer@milberg.com

-and-

**VOZZOLO LLC**
Antonio Vozzolo
345 Route 17 South
Upper Saddle River, NJ 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com

*Co-Class Counsel*

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................ 2

III.   SUMMARY OF SETTLEMENT TERMS ...................................................... 5

    A.   The Class Definition ............................................................................ 5

    B.   Monetary Benefits ............................................................................... 5

    C.   Non-Monetary Benefits ....................................................................... 6

    D.   Release Of Claims ............................................................................... 7

    E.   Notice, Claims Process, And Settlement Administration ................... 7

    F.   Attorneys' Fees, Costs, Expenses, And Incentive Awards ................. 7

IV.   LEGAL STANDARDS .................................................................................... 8

V.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................. 9

    A.   The Requirements of Rule 23(a) are Met ........................................... 9

        1.    Joinder Of All Members Is Impracticable ................................ 9

        2.    There Are Questions Of Law Or Fact Common To The Class ................... 9

        3.    Plaintiffs' Claims Are Typical Of The Claims Of The Class ................... 10

        4.    Plaintiffs Fairly And Adequately Protect The Class's Interests ............... 10

        5.    Class Members Are Readily Identifiable And Ascertainable ................... 11

    B.   The Settlement Class Satisfies Rule 23(b)(3) ................................... 12

        1.    Common Questions Predominate Over Individual Issues ........ 12

        2.    A Class Action Is Superior To Alternative Methods Of Adjudication ................................................................................ 12

VI.   THE COMPLETED NOTICE PLAN SATISFIES DUE PROCESS AND RULE 23 ......................................................................................................... 13

VII.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND
       MERITS FINAL APPROVAL ....................................................................... 15

   A.   The Settlement Is Procedurally Fair (Rules 23(e)(2)(A-B)) ...................................... 15

   B.   The Settlement Is Substantively Fair (Rules 23(e)(2)(C-D)) .................................... 17

         1.    Rule 23(e)(2)(C)(i) – The Costs, Risks, And Delay Of Trial And
               Appeal And First, Fourth, Fifth, And Sixth *Grinnell* factors.................... 17

         2.    Rule 23(e)(2)(C)(ii) – The Proposed Method Of Distributing
               Relief............................................................................................................ 19

         3.    Rule 23(e)(2)(C)(iii) – Terms Of Any Proposed Award Of
               Attorneys' Fees ........................................................................................... 20

         4.    Rule 23(e)(2)(C)(iv) –Agreements Required To Be Identified
               Under    Rule 23(e)(3) ................................................................................. 21

         5.    Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably......... 21

         6.    Second *Grinnell* Factor – The Class's Reaction Has Been Positive......... 21

         7.    Third *Grinnell* Factor – Stage Of Proceedings And Amount Of
               Discovery ..................................................................................................... 22

         8.    Seventh *Grinnell* Factor – Ability To Withstand A Greater
               Judgment....................................................................................................... 23

         9.    Eighth And Ninth *Grinnell* Factors – The Settlement Amount Is
               Reasonable In Light Of The Possible Recovery And Attendant Risks
               Of Litigation................................................................................................. 24

VIII.  CONCLUSION.............................................................................................................. 25

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................................... 8

*Antitrust Litig.*,
2014 U.S. Dist. LEXIS 180914 (E.D.N.Y. Oct. 15, 2014)...................................... 10

*Athale v. Sinotech Energy Ltd.*,
2013 U.S. Dist. LEXIS 199696 (S.D.N.Y. Sep. 4, 2013)....................................... 23

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000)............................................................................. 10

*Carlotti v. ASUS Computer Int'l*,
2019 U.S. Dist. LEXIS 201564 (N.D. Cal. Nov. 19, 2019)..................................... 21

*Castagna v. Madison Square Garden, L.P.*,
2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7, 2011) ........................................ 23

*Christine Asia Co. v. Jack Yun Ma*,
2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019) .......................... 15, 22, 25

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)......................................................................... 8, 24

*City of Providence v. Aeropostale, Inc.*,
2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) ........................................ 18

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)............................................................................. 8

*Denney v. Jenkens & Gilchrist*,
230 F.R.D. 317 (S.D.N.Y. 2005) ..................................................................... 23

*Dupler v. Costco Wholesale Corp.*,
705 F. Supp. 2d 231 (E.D.N.Y. 2010) .............................................................. 20

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)...................................................................................... 13

*Famular v. Whirlpool Corp.*,
2019 U.S. Dist. LEXIS 44907 (S.D.N.Y. Mar. 18, 2019) ...................................... 24

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)......................................................... 24

*Hadel v. Gaucho, LLC*,
2016 U.S. Dist. LEXIS 33085 (S.D.N.Y. Mar. 14, 2016) ....................... 23

*Heerwagen v. Clear Channel Commc'ns*,
435 F.3d 219 (2d Cir. 2006)................................................................. 12

*Hesse v. Godiva Chocolatier*,
2022 U.S. Dist. LEXIS 72641 (S.D.N.Y. Apr. 20, 2022)......................... 21

*Holding Corp. Sec. Litig.*,
2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ........................ 15

*In re "Agent Orange" Prod. Liab. Litig.*,
611 F. Supp. 1396 (E.D.N.Y. 1985) ...................................................... 25

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................... 19

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012)................................................................. 12

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)...................................................... 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009)................................................................... 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 8, 2010)........................ 24

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) .............................................. 19

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ...................... 13

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................... 21

*In re PPDAI Grp. Inc. Sec. Litig.*,
2022 U.S. Dist. LEXIS 11427 (E.D.N.Y. Jan. 21, 2022) ........................ 16

*In re Petrobras Secs.*,
862 F.3d 250 (2d Cir. 2017).................................................................. 11

iv

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
2022 U.S. Dist. LEXIS 137329 (E.D.N.Y. Aug. 2, 2022) ........................ 8

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) .................................................. 17

*In re Vitamin C Antitrust Litig.*,
2012 U.S. Dist. LEXIS 152275 (E.D.N.Y. Oct. 22, 2012) ..................... 22

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ...................................................... 19

*Jankowski v. Castaldi*,
2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. Jan. 13, 2006) ........................ 12

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................. 19

*Massiah v. MetroPlus Health Plan, Inc.*,
2012 U.S. Dist. LEXIS 166383 (E.D.N.Y. Nov. 16, 2012) ................... 22

*Moses v. N.Y. Times Co.*,
2023 U.S. App. LEXIS 21530 (2d Cir. Aug. 17, 2023) ............. 16, 20, 21

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ............................................................... 24

*Nichols v. Noom, Inc.*,
2022 U.S. Dist. LEXIS 123146 (S.D.N.Y. July 12, 2022) ...................... 9

*Pearlstein v. Blackberry Ltd.*,
2022 U.S. Dist. LEXIS 177786 (S.D.N.Y. Sep. 29, 2022) ........... 14, 15, 17

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ............................................................... 10

*Rosenfeld v. Lenich*,
2021 U.S. Dist. LEXIS 26950 (E.D.N.Y. Feb. 4, 2021) ........................ 17

*TBK Partners, Ltd. v. Western Union Corp.*,
517 F. Supp. 380 (S.D.N.Y. 1981) ...................................................... 17

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ........................ 25

*Torres v. Gristede's Operating Corp.*,
2010 U.S. Dist. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010) .................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..................................................................................... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)................................................................... passim

*Yang v. Focus Media Holding Ltd.*,
  2014 U.S. Dist. LEXIS 126738 (S.D.N.Y. Sept. 4, 2014)...................... 16

**STATUTES**

15 U.S.C. § 2301 ............................................................................................. 3

28 U.S.C. § 1715(b) ........................................................................................ 7

Colo. Rev. Stat. § 6-1-101 .............................................................................. 4

N.Y.U.C.C. § 2-607(3)(a) ............................................................................... 3

New York General Business Law ("GBL") § 349.................................... 3, 4

New York General Business Law ("GBL") § 350.................................... 4

**RULES**

Fed R. Civ. P. 15(a)(2)..................................................................................... 4

Fed. R. Civ. P. 23 .................................................................................... passim

# I. INTRODUCTION

On January 23, 2023, this Court preliminarily approved the Settlement Agreement (the "Settlement") between Plaintiffs Mashayila Sayers, Brittney Tinker, Jennifer Monachino, Kimberly Mullins, Hilda Michelle Murphree, and Amanda Jimenez (collectively, "Plaintiffs") and Artsana USA, Inc. ("Defendant" or "Artsana") and directed that notice be sent to the Class.[1] *See* Preliminary Approval Order (ECF No. 45). The Settlement Administrator, Angeion Group ("Angeion"), has implemented the Court-approved notice plan and notice has reached the majority of the Class. The reaction from the Class has been overwhelmingly positive. As of August 28, 2023, no Settlement Class Members have objected and only 3 requested to be excluded. *See* Declaration of Steven Weisbrot, Esq. Regarding Implementation of the Notice Plan ("Weisbrot Decl.") ¶¶ 31-32. Further, as of July 21, 2023, claims for 153,244 Eligible Products awaiting confirmation of validity were reported by the Settlement Administrator to Class Counsel. *Id.* ¶ 27.

The Settlement provides significant economic benefits in the form of cash payments to Settlement Class Members. Specifically, Class Members who submit valid Claim Forms along with proof of purchase will receive $50 for each Eligible Product purchased during the Class Period. Because manufacturers' suggested retail prices for the Booster Seats ranged from $99.99 to $149.99 each, this equates to an approximate recovery of 33% to 50% of the purchase price of the Products for Class Members with proof of purchase. *See* Declaration of Antonio Vozzolo in Support of Plaintiffs' Motions for Final Approval of Class Action Settlement and Award of Attorneys' Fees and expenses, and Approval of Incentive Awards ("Vozzolo Decl.") ¶ 33. For Settlement Class Members who submit a valid Claim Form without proof of purchase, but who corroborate their purchase by answering certain basic questions, Artsana will provide relief in the amount of $25 for each Eligible

---

[1] Capitalized terms used and not otherwise defined herein have the definitions set forth in the Settlement Agreement. *See* Stipulation of Settlement ("Settlement") (ECF No. 42-1).

Product purchased during the Class Period. This equates to an approximate recovery of 17% to 25% of the purchase price for Class Members without proof of purchase. *Id.* ¶ 34.

Further, Artsana will pay all costs of notice and administration, and any incentive awards and attorneys' fees, costs, and expenses the Court may award, separately from the funds paid to the Class so that any such amounts will not reduce the monetary benefits paid to Class Members under the Settlement. There is no cap on the number of Claims or total amount of monetary benefits Defendant will pay to the Class, and Class Members' monetary benefits will not be prorated for any reason.

The Settlement is an exceptional result for the Settlement Class and is fair, reasonable, and adequate. It is the product of extensive arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this case. The Parties engaged in informal and confirmatory discovery and have ample knowledge of the legal claims and defenses, the risks presented by the case, and the value achieved by the proposed Settlement. Moreover, the Settlement was reached with the assistance of a highly respected and experienced class action mediator, the Hon. Diane M. Welsh (Ret.) from JAMS. Despite the significant risks of litigation, Plaintiffs secured substantial monetary benefits for Class Members, including the opportunity to receive up to approximately 50% of their Booster Seat purchase price, as well as meaningful non-monetary benefits.

For these reasons and as further detailed below, the Settlement is fair, reasonable, and adequate, and meets Rule 23's standards for final approval.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

This class action arose out of the advertising and sale of Defendant's Chicco-brand KidFit booster seats ("Booster Seats" or "Products").[2] Artsana's marketing has included representations

---

[2] The Booster Seats include the KidFit, KidFit Zip, KidFit Zip Air, KidFit Luxe, KidFit Plus, and KidFit Air Plus. Settlement ¶ 17.

that the Booster Seats are safe for children as small as 30 pounds (the "30-pound Claim") and that the Products offer side-impact collision protection (the "Side-Impact Claim"). Plaintiffs allege the 30-pound Claim and the Side-Impact Claim were false and misleading. *See* Consolidated Amended Complaint ("CAC") ¶¶ 5-13, 72-95 (ECF No. 39). Defendant denies these allegations.

On February 19, 2021, counsel for Plaintiff Amanda Jimenez served pre-suit notice and demand for corrective action on Artsana, pursuant to U.C.C. § 2-607(3)(a), concerning breaches of express and implied warranties, for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* and New York General Business Law ("GBL") §§ 349-50. On April 22, 2021, Plaintiffs Sayers, Tinker, Monachino, Mullins, and Murphree commenced a proposed class action in the Eastern District of Pennsylvania against Artsana, captioned *Sayers, et al. v. Artsana USA, Inc.*, Case No. 21-cv-01876-JMG, ECF No. 1 (the "*Sayers* Action"). The Parties fully briefed Defendant's motion to dismiss and separate motion to strike portions of the complaint. *Id.* (ECF Nos. 18-20, 27, 29, 31).

On September 23, 2021, Plaintiff Jimenez commenced a proposed class action in the Southern District of New York against Artsana, captioned *Jimenez v. Artsana USA, Inc.*, Case No. 21-cv-07933-VB (the "*Jimenez* Action"). Shortly thereafter, the Parties initiated settlement discussions. The Parties had lengthy and hard-fought negotiations about the terms of a settlement, including three mediations with Judge Welsh, a well-respected mediator and retired Magistrate Judge of the U.S. District Court for the Eastern District of Pennsylvania. Vozzolo Decl. ¶¶ 14-17. The Parties made substantial progress toward resolution during the mediation sessions, which occurred on September 30, 2021, November 8, 2021, and June 6, 2022. *Id.* ¶¶ 15-17. The Parties also participated in multiple phone conferences with each other, along with the assistance of Judge Welsh, to finalize the terms included in the Stipulation of Settlement. *Id.* ¶¶ 16-17. Before and during the mediation sessions, the Parties had an arm's length exchange of information or informal

discovery to permit Plaintiffs and their counsel to evaluate their claims and the potential defenses and to meaningfully conduct informed settlement discussions. *Id.* ¶ 20. Throughout the mediation sessions and follow-up sessions/discussions, the Parties engaged in protracted, informed, and hard-fought settlement negotiations. *Id.* ¶¶ 14-23. These efforts culminated in and were memorialized in the Stipulation of Settlement, which was fully executed on January 17, 2023. *Id.* ¶ 25.

On January 17, 2023, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, Plaintiff Jimenez filed a Consolidated Amended Complaint adding the claims of Plaintiffs Sayers, Tinker, Monachino, Mullins, and Murphree. (ECF No. 39.) Plaintiffs bring causes of action under the MMWA and various state laws.[3] Specifically, the CAC alleges, *inter alia*, that the 30-pound Claim and Side Impact Claim were false and misleading.

Prior to and throughout negotiations, Plaintiffs, by and through their respective counsel, conducted a thorough examination and investigation of the facts and law relating to the issues in this case, including, but not limited to, research and assessment of the claims and products at issue, discussions with experts, review and analysis of Artsana's documents and data, and confirmatory discovery. Vozzolo Decl. ¶¶ 4, 12-13, 20. The Parties engaged in rigorous debate of legal and factual theories and Class Counsel assessed the merits of all Parties' contentions and ultimately thoroughly evaluated all aspects of this Settlement, as it affects all Parties, including Settlement Class Members. *Id.* ¶¶ 20-23, 28-32, 74. As a result of the negotiations, the Parties agreed to settle pursuant to the terms set forth in the Stipulation of Settlement.

The Court granted preliminary approval of the Settlement on January 23, 2023. (ECF No.

---

[3] Plaintiffs assert claims for violations of Pennsylvania's UTPCPL; Colorado's Commercial Code for breach of express and implied warranties; the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*; Florida's Commercial Code for breach of express and implied warranties; the FDUTPA; Illinois's Commercial Code for breach of express and implied warranties; Illinois's ICFA; Illinois's UDTPA; Maryland's Commercial Code for breach of express and implied warranties; the Maryland Consumer Protection Act; Texas's Commercial Code for breach of express and implied warranties; Texas's DTPA; New York's Commercial Code for breach of express and implied warranties; N.Y. GBL § 349; and N.Y. GBL § 350; and unjust enrichment.

45). On February 3, 2023, the Parties applied to the Court for an order extending and consolidating the objection and exclusion deadlines set forth in the Preliminary Approval Order to simplify the schedule and afford Class Members additional time to decide whether to object or seek exclusion from the Settlement. (ECF No. 50). The Court granted the Parties' request on February 3, 2023. *See* Amended Preliminary Approval Order (ECF No. 52).

Thereafter, Angeion disseminated notice to the Class consistent with the Amended Preliminary Approval Order and Settlement. *See generally* Weisbrot Decl.

## III.    SUMMARY OF SETTLEMENT TERMS

### A.    The Class Definition

As part of preliminary approval, the Court conditionally certified a class for settlement purposes of: "All persons and entities in the United States, its territories, and/or its possessions who purchased one or more of the Eligible Products (*i.e.*, Artsana booster seats marketed under the 'KidFit' branding, which includes the KidFit, KidFit Zip, KidFit Zip Air, KidFit Luxe, KidFit Plus, and KidFit Air Plus) during the Class Period (*i.e.*, April 22, 2015 to December 31, 2021)." Amended Preliminary Approval Order ¶ 3; *see also* Settlement ¶ 9.[4]

### B.    Monetary Benefits

If the Settlement is approved, Artsana will provide relief in the amount of $50 for each Eligible Product purchased during the Class Period to Class Members who submit a valid Claim Form along with proof of purchase.[5] Settlement ¶ 46. Given that suggested retail prices for the

---

[4] Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of Artsana or its subsidiaries and affiliated companies; (b) persons or entities that purchased the Eligible Products primarily for the purposes of resale; (c) governmental entities; (d) persons and entities that timely and properly exclude themselves from the Class as provided in the Stipulation of Settlement; (e) persons and entities that purchased the Eligible Products via the Internet or other remote means while not residing in the United States; and (f) the Court, the Court's immediate family, and Court staff. Amended Preliminary Approval Order ¶ 3; Settlement ¶ 9.

[5] Proof of purchase can take a variety of forms and is defined to include a valid receipt or retail rewards submission from an authorized retailer, product packaging, a picture of the Eligible Product showing a new or recently purchased product, evidence of the purchase in Artsana's records (either as a result of a direct purchase from Artsana or by registration of the Eligible Product with Defendant or the National Highway Traffic Safety Administration

Booster Seats ranged from $99.99 to $149.99 each in 2021, this equates to an approximate recovery of 33% to 50% of the purchase price of the Products for Class Members with proof of purchase. Vozzolo Decl. ¶ 33. Artsana will provide relief in the amount of $25 for each Eligible Product purchased during the Class Period to Class Members who submit a valid Claim Form without proof of purchase, but who corroborate their purchase by satisfying at least two of four requirements.[6] Settlement ¶ 47. This equates to an approximate recovery of 17% to 25% of the purchase price for Class Members without proof of purchase. Vozzolo Decl. ¶ 34. Notably, there is no limit on the number of claims that a Class Member may submit or that Defendant will ultimately pay to the Class as a whole, and Class Members' benefits will not be prorated for any reason. *Id.* ¶ 35.

### C.     Non-Monetary Benefits

In addition to the significant monetary benefits described above, Artsana has also agreed to the following non-monetary benefits:

- Artsana will include a link on its consumer-facing website for Chicco USA to an informational video previously only available on Facebook.com (the "Facebook Video"), giving consumers increased access to information regarding safe weight, height, and age requirements for the Booster Seats;

- Artsana will add an overlay of text to the Facebook Video, stating: "The National Highway Traffic Safety Administration (NHTSA) recommends that you keep your child in a forward-facing car seat with a harness and tether until he or she reaches the top height or weight limit allowed by your car seat's manufacturer" (the "NHTSA Overlay");

- Artsana will create a new educational video, which discusses the subject of transitioning a child to a booster seat and addresses the minimum requirements for safe use of a booster, including weight, age, height, and child maturity level (the "New Video"). The New Video

---

("NHTSA"), or other physical evidence corroborating the Class Member's purchase claim (*e.g.*, a credit card statement or invoice showing the class member's purchase). Settlement ¶ 46.

[6] On the Claim Form, Class Members without proof of purchase are asked to corroborate their purchase of the Products by satisfying at least two of the following four requirements: (1) identifying the serial number; (2) identifying the model of the Eligible Product they purchased and either the primary and/or secondary colors of the seat; (3) identifying the retailer from which they purchased, as well as the approximate month (or season) and year of purchase; or (4) if the Eligible Product was not purchased online, identifying the municipality and state in which the Eligible Product was purchased and attaching a picture of the Eligible Product. An incorrect response to the primary and/or secondary color question will not be counted against the Claimant. Settlement ¶ 47.

will appear on the Chicco USA website on the product video page. Artsana will either include an audio message identical to the language utilized in the NHTSA Overlay or display the NHTSA Overlay on the New Video.

Settlement ¶ 51.

### D. Release Of Claims

In exchange for the foregoing settlement benefits, Class Members who do not opt out of the Settlement will provide the Released Parties with a release of claims that were asserted or that could have reasonably been asserted in the Actions. The release is set forth in paragraph 29 of the Stipulation of Settlement. *See also id.* ¶¶ 72-77.

### E. Notice, Claims Process, And Settlement Administration

Defendant has paid, and will continue to pay, all costs of providing notice and administration of the Settlement. *Id.* ¶ 44. As further detailed *infra* § VI, the notice program included: (a) direct email and mail notice; (b) print publication notice; (c) a press release; (d) an online media campaign; and (e) a settlement website. Weisbrot Decl. ¶¶ 6-22. Artsana provided to the Settlement Administrator available contact information (including email and physical addresses) from its records. *Id.* ¶ 5.[7]

### F. Attorneys' Fees, Costs, Expenses, And Incentive Awards

Artsana has agreed to pay any attorneys' fees, costs, and expenses awarded by the Court. Settlement ¶ 65. However, the Parties have no agreement on the amount of attorneys' fees, costs, and expenses and Artsana has reserved the right to oppose the amount of attorneys' fees sought by Class Counsel. *Id.* ¶ 66. Class Counsel separately move for an award of attorneys' fees, costs, and expenses in the amount of $2,250,000, including $20,422.43 in litigation expenses, payment of which will be separate and apart from the monetary benefits afforded to the Settlement Class. *See*

---

[7] On January 27, 2023, Angeion also provided notification of the Settlement to the Attorney General of the United States and Attorneys General of each of the 50 states, the District of Columbia, Puerto Rico, and all territories in accordance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b). *See* Weisbrot Decl. ¶ 4. As of August 28, 2023, Angeion has not received any objection or other response from any Attorney General. *Id.*

Vozzolo Decl. ¶ 43. Class Counsel further petition the Court for incentive awards for each Class Representative in the amount of $1,500, for their service on behalf of the Class. Vozzolo Decl. ¶ 60; Settlement ¶ 71.

## IV.    LEGAL STANDARDS

A class action may be settled only with the approval of the Court. FRCP 23(e). To finally approve a class action settlement, the Court must determine the Settlement Class is certifiable under Rules 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (explaining Rule 23(a) and (b) analysis is independent of Rule 23(e) fairness review). A court may certify a settlement class upon finding the action satisfies all Rule 23(a) prerequisites and at least one prong of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 619–22 (1997).

Rule 23(e) requires that class action settlements be procedurally and substantively "fair, reasonable, and adequate." FRCP 23(e). To evaluate procedural fairness, courts examine the negotiating process leading to the settlement. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). To determine substantive fairness, courts in the Second Circuit evaluate the settlement in light of both the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (the "*Grinnell* factors"),[8] and the factors specified in Rule 23(e)(2), many of which overlap.[9] *See, e.g., In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust*

---

[8] These factors are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]" *Grinnell Corp.*, 495 F.2d at 463 (citations omitted).

[9] Rule 23(e)(2), as amended in 2018, instructs the Court to consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." FRCP 23(e)(2).

*Litig.*, 2022 U.S. Dist. LEXIS 137329, at *21 (E.D.N.Y. Aug. 2, 2022) (explaining courts consider the *Grinnell* factors in tandem with Rule 23(e)(2)). "[N]ot every factor must weigh in favor of the settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Nichols v. Noom, Inc.*, 2022 U.S. Dist. LEXIS 123146, at *21 (S.D.N.Y. July 12, 2022) (internal quotations, alteration, and citation omitted). Further, courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart*, 396 F.3d at 116.

## V.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

This Court considered the requirements of Rules 23(a) and 23(b)(3) when granting preliminary certification. Amended Preliminary Approval Order at 2. As Plaintiffs set forth in their Motion for Preliminary Approval (ECF No. 41) and as reiterated below, the proposed Settlement Class satisfies the requirements of Rules 23(a) and 23(b)(3). The Class meets the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which to resolve class member claims, the Court should finally certify the Settlement Class.

### A.     The Requirements of Rule 23(a) are Met

#### 1.     Joinder Of All Members Is Impracticable

Numerosity is met if "the class is so numerous that joinder of all members is impracticable[.]" FRCP 23(a)(1). Here, between April 22, 2015, and December 31, 2021, a total of 874,538 Booster Seats were sold in the United States. Vozzolo Decl. ¶ 35. Given the number and geographic dispersion of Class Members, joinder would be impracticable.

#### 2.     There Are Questions Of Law Or Fact Common To The Class

To be certified as a class action, there must be "questions of law or fact common to the class[.]" FRCP 23(a)(2). Commonality does not require identical claims and arguments. "To

satisfy commonality, 'even a single common question will do.'" *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 U.S. Dist. LEXIS 180914, at *178 (E.D.N.Y. Oct. 15, 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). Here, commonality is satisfied because there are numerous common issues of fact and law, including: (a) whether the 30-pound Claim and Side-Impact Claim are likely to deceive a reasonable consumer, and (b) whether Class Members were all injured by overpaying for the Booster Seats.

### 3.    Plaintiffs' Claims Are Typical Of The Claims Of The Class

Rule 23(a)(3) is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). Here, Plaintiffs' and each Class Member's claims arise out of the same theory of liability—that Defendant made false and misleading representations concerning the benefits of the Booster Seats. CAC ¶¶ 5-13, 72-95. Plaintiffs allege these material misrepresentations caused them injury because they would not have purchased the Products or they overpaid for the Products as a result. *Id.* ¶¶ 96-125. Defendant's conduct caused similar injury to each Settlement Class Member. Thus, because Plaintiffs allege they were harmed by the same overall course of conduct and in the same way as the Class, their claims are typical of the Class.

### 4.    Plaintiffs Fairly And Adequately Protect The Class's Interests

The final Rule 23(a) prerequisite mandates that "representative parties will fairly and adequately protect the interests of the class." FRCP 23(a)(4). The requirement is met if the plaintiff: (1) is represented by counsel who is "qualified, experienced and able to conduct the litigation" and (2) does not possess interests "antagonistic to the interest of other members of the class[.]" *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Both requirements are met here. First, Plaintiffs' interests are aligned with those of the

Class and they have no conflicts of interest. Plaintiffs and each Class Member were injured in the same manner, and Plaintiffs assert the same legal claims as those of the Class. Plaintiffs have provided valuable assistance in the prosecution of this matter and have taken their obligations to the Class seriously, conferring with their counsel, reviewing the pleadings, and consulting with Class Counsel regarding the propriety of the Settlement. Vozzolo Decl. ¶ 62.

Second, Class Counsel are qualified and have extensive experience in class action litigation. Class Counsel spent a significant amount of time identifying and investigating Plaintiffs' claims before filing these cases. Vozzolo Decl. ¶¶ 4, 12-13. Class Counsel is experienced in the litigation, certification, trial, and settlement of multi-state consumer class actions like this one, including serving as lead or co-lead counsel in booster seat litigation against other manufacturers. *Id.* ¶¶ 63-72, Ex. 1; *see also* Declarations and Martha Geer ("Geer Decl.") and Alec Leslie ("Leslie Decl.") in Support of Motion for Attorneys' Fees, Costs and Expenses, Exs. 1 and 13, respectively (firm resumes of Class Counsel). In negotiating this Settlement, Class Counsel had the benefit of years of relevant experience and a familiarity with the facts of this case and the substantive law at issue. *See id.* Finally, Class Counsel have well-regarded practices that are currently litigating dozens of cases in state and federal courts throughout the nation, and they have devoted substantial resources to representing the Class. *Id.* ¶ 71.

Since Plaintiffs and Class Counsel have demonstrated their commitment to representing the Class and have no interests antagonistic to the Class, the adequacy requirement is satisfied.

**5.    Class Members Are Readily Identifiable And Ascertainable**

The ascertainability doctrine in the Second Circuit requires "only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Secs.*, 862 F.3d 250, 264 (2d Cir. 2017). Here, the Class is readily identifiable because it consists of all persons who purchased one or more of the Eligible Products from April 22, 2015 up to and

including December 31, 2021. Because all Class Members are able to determine their membership in the Class through objective criteria, this requirement is met.

**B.** **The Settlement Class Satisfies Rule 23(b)(3)**

To satisfy Rule 23(b)(3), common questions of law or fact must "predominate" over any individual questions, and class treatment must be superior to other methods for the fair and efficient adjudication of the controversy. FRCP 23(b)(3). In the settlement context, the issue of manageability "drop[s] out of the predominance analysis because the proposal is that there be no trial." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012).

**1.** **Common Questions Predominate Over Individual Issues**

The predominance requirement requires "that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 226 (2d Cir. 2006). Predominance is satisfied here, where the issues center on Defendant's uniform marketing and labeling for the Products and whether Defendant's representations concerning the Booster Seats are false, misleading, and/or likely to deceive a reasonable consumer. Every Class Member's claim may be proven by the same common evidence regarding the safety of the Products for children as small as 30 pounds and the ability of the Products to provide side-impact protection.

**2.** **A Class Action Is Superior To Alternative Methods Of Adjudication**

Given each Class Member's claim is of a relatively low value, individual Class Members will likely have little incentive to pursue their claims on an individual basis. A class action enables Class Members to bring together claims that would be economically infeasible to litigate otherwise and conserves judicial resources. Thus, a class action is a superior method of fairly and efficiently adjudicating this case. *See, e.g.*, *Jankowski v. Castaldi*, 2006 U.S. Dist. LEXIS 4237, at *13 (E.D.N.Y. Jan. 13, 2006) (class treatment appropriate where class members are sufficiently

numerous and possess relatively small claims unworthy of individual adjudication).

## VI.     THE COMPLETED NOTICE PLAN SATISFIES DUE PROCESS AND RULE 23

Before final approval, due process and Rule 23 require notice to the Settlement Class that is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FRCP 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 120953, at *38 (S.D.N.Y. Dec. 23, 2009); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d at 114 (notice must "fairly apprise" prospective class members "of the terms of the proposed settlement and of the options that are open to them").

At preliminary approval, the Court approved the Notice Plan, finding it met the requirements of Rule 23 and due process. Amended Preliminary Approval Order ¶ 6. The Class Notice clearly set forth essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* FRCP 23(c)(2)(B). The Settlement Administrator has now successfully implemented the Notice Plan. Specifically, Angeion (1) sent email notice to Class Members for whom email addresses had been identified, including 10,343 emailed notices; (2) sent post card notice to Class Members for whom the Parties had no valid email address but did have a mailing address from Artsana's records, including 99,070 notices sent via regular mail;[10] (3) published a Settlement Website with online claim filing capability and on which the notices and other Court documents were posted; (4) published Internet banner ads, with embedded hyperlinks to the Settlement Website, targeted to reach Class Members; (5) published

---

[10] Angeion also remailed 3,085 post card notices that had been returned as undeliverable. Weisbrot Decl. ¶ 12.

summary notice in *People* magazine, in the magazine's nationwide print edition and its online digital replica; (6) published a press release with a reach of approximately 15,000 media outlets, including English and Spanish language outlets; and (7) established a toll-free telephone number through which Class Members were able to call the Settlement Administrator to get information about the Settlement. *See* Weisbrot Decl. ¶¶ 6-22. With respect to direct notice, on February 6, 2023, Defendant's Counsel provided Angeion with a data file containing a total of 129,878 records of information for Class Members. *Id.* ¶ 5. Angeion performed an analysis and determined that 109,413 were unique records. *Id.* Angeion successfully delivered the Court-approved notice via email or postcard to 108,588 unique Class Members (9,683 through email and 98,905 through postcards), or approximately 12% of potential Class Members. *See id.* ¶¶ 7-12.[11] Further, media notice consisted of approximately 27,086,089 media impressions. *Id.* ¶ 15. Through its multi-channel approach, Notice through the media campaign alone reached an estimated 86.77% of targeted Class Members. *Id.* ¶¶ 23-24. Such notice is consistent with notice programs approved in the Second Circuit and across the United States, is considered a "high percentage," and comports with the standards of due process and Rule 23. *See Pearlstein v. Blackberry Ltd.*, 2022 U.S. Dist. LEXIS 177786, at *25 (S.D.N.Y. Sep. 29, 2022) (approving "combination of individual first-class mail and/or email notice to all Class Members who could be identified with reasonable effort, supplemented by publication notice"); Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Ctr., "*Managing Class Action Litigation: A Pocket Guide or Judges*", 27 (3d Ed. 2010) (explaining a publication notice plan that reaches at least 70% of class members is one that reaches a "high percentage" and is within the "norm").

---

[11] A total of 99,730 postcards were mailed to potential class members (99,070 on March 8, 2023 and 660 from undeliverable emails). *See* Weisbrot Decl. ¶¶ 9-10. A total of 3,085 of the 3,910 undeliverable postcards were re-mailed after skip tracing efforts, leaving 825 undeliverable. *See id.* ¶ 12. Accordingly, a total of 98,905 postcard notices were delivered.

# VII. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND MERITS FINAL APPROVAL

Final approval of the Settlement is appropriate because it is fair, adequate, and reasonable under Rule 23 and the *Grinnell* factors historically considered by Second Circuit Courts. To determine whether to approve a settlement, courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement," particularly of class action suits. *See, e.g.*, *Wal-Mart*, 396 F.3d at 116; *Pearlstein*, 2022 U.S. Dist. LEXIS 177786, at *7 ("The law favors compromise and settlement of class action suits . . . where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.") (internal citations and quotation omitted). If the settlement was achieved through arms'-length negotiations by experienced counsel, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).

Here, the Settlement reached by the Parties resulted from months of arm's length negotiations with the assistance of an experienced mediator and was informed by the exchange of significant information through the settlement process. Vozzolo Decl. ¶¶ 14-26. The Agreement provides favorable monetary benefits to Class Members, as well as non-monetary benefits. Considering the likelihood of success and inherent risks and expense of continued litigation, Plaintiffs and Class Counsel strongly believe that the Settlement is "fair, reasonable, and adequate" under FRCP 23(e)(2) and the *Grinnell* factors. *Id.* ¶¶ 28-31, 75, 77.

## A. The Settlement Is Procedurally Fair (Rules 23(e)(2)(A-B))

Rule 23(e)(2)(A), requiring adequate representation, and Rule 23(e)(2)(B), requiring arm's-length negotiations, "constitute the 'procedural' analysis" of the fairness inquiry. *Christine Asia Co. v. Jack Yun Ma*, 2019 U.S. Dist. LEXIS 179836, at *38 (S.D.N.Y. Oct. 16, 2019).

Here, Plaintiffs and their counsel are adequate representatives. As discussed *supra* § V.A.4

Plaintiffs' interests are consistent with, and not antagonistic to, the interests of other Settlement Class Members and they are represented by qualified and experienced counsel. *See In re PPDAI Grp. Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 11427, at *18 (E.D.N.Y. Jan. 21, 2022) (finding plaintiffs fairly and adequately represented the class under FRCP 23(a)(4) and 23(e)(2)(A) where plaintiffs' interests aligned with those of the settlement class, and they retained qualified and experienced counsel to pursue the actions).

Further, the Settlement resulted from arm's length negotiations over an eleven-month period, conducted by experienced counsel knowledgeable in complex consumer class actions. *See Moses v. N.Y. Times Co.*, 2023 U.S. App. LEXIS 21530, at *14 (2d Cir. Aug. 17, 2023) (explaining although courts should no longer apply a "presumption of fairness" to settlements resulting from arms-length negotiations, "the arms-length quality of the negotiations remain a factor in favor of approving the settlement"). Plaintiffs' Counsel have considerable experience handling consumer class actions and are capable of assessing the strengths and weaknesses of their positions. Vozzolo Decl. ¶¶ 63-72, Ex. 1; *see also* Geer Decl., Ex. 1; Leslie Decl. Ex. 13 (Firm Resumes). Plaintiffs' counsel regularly engage in complex litigation and have extensive experience in consumer class actions similar in size, scope, and complexity to this one, including false advertising and labeling cases. *Id.* The combined experience of the firms and attorneys involved demonstrate Class Members are well-represented and were well-represented throughout negotiations.

Moreover, the Parties reached the Settlement with the assistance of an experienced mediator. Judge Welsh is a highly respected and experienced class action mediator, with over 27 years of experience as a JAMS neutral and federal Magistrate Judge. *Id.* ¶¶ 14-17. Over the course of three mediations and multiple phone conferences, the Parties engaged in hard-fought negotiations to reach a final agreement on the Settlement. *See Yang v. Focus Media Holding Ltd.*, 2014 U.S. Dist. LEXIS 126738, at *14 (S.D.N.Y. Sept. 4, 2014) (noting "the participation of [a]

highly qualified mediator strongly supports a finding that negotiations were conducted at arm's length and without collusion"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576-77 (S.D.N.Y. 2008) (that all parties were represented throughout negotiations by counsel experienced in the relevant law and before an experienced mediator "militates in favor of approv[al]" and a finding "that the process leading to the Settlement was fair to absent Class Members").

## B.    The Settlement Is Substantively Fair (Rules 23(e)(2)(C-D))

The proposed Settlement is also substantively fair under FRCP 23(e)(2)(C) and 23(e)(2)(D) and the *Grinnell* factors.

### 1.    Rule 23(e)(2)(C)(i) – The Costs, Risks, And Delay Of Trial And Appeal And First, Fourth, Fifth, And Sixth *Grinnell* factors

Consideration of the relief provided to the Class in light of the "costs, risks, and delay of trial and appeal" under Rule 23(e)(2)(C)(i) overlaps with the first, fourth, fifth, and sixth *Grinnell* factors, including the complexity, expense and likely duration of the litigation, and risks of establishing liability, damages, and maintaining the class action through trial. *See Rosenfeld v. Lenich*, 2021 U.S. Dist. LEXIS 26950, at *15-16 (E.D.N.Y. Feb. 4, 2021).

Here, the Settlement provides favorable monetary benefits to the Class while avoiding the significant expenses, risks, and delays associated with litigation. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *Pearlstein*, 2022 U.S. Dist. LEXIS 177786, at *8-9 ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.") (alteration omitted). Unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389

(S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

In this case, the costs, risks, complexity and likely duration of the litigation weigh heavily in favor of approval. Proceeding through litigation to trial is a risky, labor-intensive undertaking, which will include defeating Defendant's motions to dismiss and to strike, obtaining and maintaining class certification (including potentially interlocutory appeals), completing fact and expert discovery, briefing motions *in limine*, and establishing liability and proving damages at trial. Discovery, motion practice, expert disclosures, and other pretrial activities could take years, and any trial would likely last weeks, and involve numerous fact witnesses, experts, and voluminous documentary evidence. Moreover, any favorable judgment would be the subject of post-trial motions and appeals, further prolonging the litigation. *See*, *e.g.* *City of Providence v. Aeropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *14-15 (S.D.N.Y. May 9, 2014) ("Even if the Class could recover a judgment at trial, the additional delay through trial, post-trial motions, and the appellate process could prevent the Class from obtaining any recovery for years").

Plaintiffs considered the significant risks of litigation prior to entering into the Settlement and anticipate Defendant would vigorously contest this matter at every stage, including at the motion to dismiss stage, as well as at class certification, summary judgment, trial, and on appeal. Even though Plaintiffs believe the evidence will establish (1) that the Booster Seats are not safe for children weighing as little as 30 pounds and do not deliver the promised benefits regarding side-impact collisions and (2) that Artsana knew its representations otherwise were not true, there is no assurance a jury will agree.

In addition to the uncertainties regarding proof of liability, Plaintiffs will need to establish Defendant's marketing claims were material and resulted in damages. Plaintiffs' reliance on expert testimony to establish damages will be a substantial expense and a jury's acceptance of that expert testimony is far from certain, especially when Defendant will offer contrary expert testimony. *See*

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("[A] jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses."); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) (observing "it is virtually impossible to predict with any certainty which [expert's] testimony would be credited . . . .").[12] By settling, Plaintiffs guarantee a prompt recovery to the Class in the amount of $25.00 or $50.00 per Booster Seat (depending on whether or not a Class Member has proof of purchase), without any cap on the number of Claims or total relief Defendant will pay to the Class. Settlement ¶¶ 46-47. Accordingly, the Settlement provides a meaningful recovery of between 17% to 50% of the purchase price for each Class Member now, *see* Vozzolo Decl. ¶¶ 33-34, while avoiding the risks, delay, and expenditure of resources associated with continued litigation.

## 2.    Rule 23(e)(2)(C)(ii) – The Proposed Method Of Distributing Relief

The effectiveness of the proposed method of distributing relief to the Class, including the method of processing Class Members' claims, weighs in favor of approval. The claims process here is simple and straightforward. To claim a monetary benefit, Settlement Class Members must submit a simple claim form online or by mail. Settlement ¶ 83. Class Members who provide proof of purchase may claim a cash payment of $50.00 per unit, and proof of purchase is broadly defined. Settlement ¶ 46. However, proof of purchase is not required to claim a significant cash benefit. Settlement Class Members who submit Claim Forms without proof of purchase, but who corroborate their class membership by answering basic questions about their purchase, may claim a cash payment of $25.00 per unit. *Id.* ¶ 47.

---

[12] Analyzing these risks "does not require the Court to adjudicate the disputed issues . . . ; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery against the continuing risks of litigation," where the Class might obtain no recovery at all. *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002).

This process is fair and efficient and strikes the appropriate balance between "deter[ing] or defeat[ing] unjustified claims" while "facilitat[ing] filing legitimate claims." FRCP 23(e), 2018 Advisory Committee Notes.

### 3. Rule 23(e)(2)(C)(iii) – Terms Of Any Proposed Award Of Attorneys' Fees

"[T]he district court is required to review both the terms of the settlement and any fee award encompassed in a settlement agreement in tandem." *Moses*, 2023 U.S. App. LEXIS 21530, at *15. Here, although Artsana has agreed to pay any attorneys' fees, costs, and expenses awarded by the Court, the Parties have no agreement on the amount of attorneys' fees, costs, and expenses and Artsana has reserved the right to oppose the amount of attorneys' fees sought by Class Counsel. Settlement ¶¶ 65-66. The Settlement is not conditioned upon the Court's approval of any specific fee amount, nor does any fee award impact the recovery to the Class; rather, the amount of the attorneys' fees, costs, and expenses will be determined by the Court and any such payment will be separate from and will not detract from the monetary relief afforded to the Settlement Class. *Id.* Class Counsel separately move for an award of attorneys' fees, costs, and expenses in the amount of $2,250,000, which, as detailed in Plaintiffs' concurrent filing, represents approximately 9.1% of the total value of the Settlement—well below the benchmark of fees approved within the Second Circuit. Plaintiffs' fee motion has been filed 45 days before the final approval hearing and 10 days before the objection deadline, affording Class Members ample time to consider and respond to Plaintiffs' request. This is fair to the Settlement Class. For these reasons and the reasons set forth in Plaintiffs' separately filed fee motion, this factor supports final approval. *See Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010) (fairness of settlement supported where fee award would in no way diminish benefit to class and issue of fees was not raised until after parties agreed on benefit to class); *see also Rosenfeld*, 2021 U.S. Dist. LEXIS 26950, at *19 (fee award is not an obstacle to approval where it is "specifically reserved to the court's

discretion").

### 4. Rule 23(e)(2)(C)(iv) –Agreements Required To Be Identified Under Rule 23(e)(3)

There are no agreements between Plaintiffs or their counsel and Artsana other than the Settlement Agreement. Vozzolo Decl. ¶ 27.

### 5. Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably

The Settlement Agreement applies to all Class Members equally as they are each entitled to receive the same payment based on the number of Booster Seats purchased and whether they have proof of purchase. *See Hesse v. Godiva Chocolatier*, 2022 U.S. Dist. LEXIS 72641, at *28 (S.D.N.Y. Apr. 20, 2022). This is so even though Class Members with proof of purchase will recover more than those without. *See id.* (citing *Carlotti v. ASUS Computer Int'l*, 2019 U.S. Dist. LEXIS 201564, at *39 (N.D. Cal. Nov. 19, 2019) (holding class members were treated equitably even when those with proof of purchase could recover more)). Moreover, the modest incentive awards for which Plaintiffs move promote Rule 23's equitable-treatment requirement by fairly compensating the Class Representatives for their contributions relative to absent class members who would otherwise "free ride" on their efforts. *See Moses*, 2023 U.S. App. LEXIS 21530, at *17-18, 36-37. As detailed in Plaintiffs' concurrent filing, the requested awards of $1,500 for each Plaintiff are reasonable and equivalent to awards approved by other courts in this Circuit.

### 6. Second *Grinnell* Factor – The Class's Reaction Has Been Positive

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation omitted). Here, the reaction of Class Members to the Settlement has been overwhelmingly positive. Class Notice has reached approximately 86.77% of targeted Class Members, in addition to direct notice to approximately 12% of the Class. *See* Weisbrot Decl. ¶¶ 7-12, 23-24; *see also supra* § VI, at p.14. As of July 21,

2023, claims for 153,244 Eligible Products awaiting confirmation of validity have been reported by the Settlement Administrator to Class Counsel, while only 3 Class Members have opted out and none have objected to the Settlement. *Id.* ¶¶ 31-32.[13] This exceptional participation rate and lack of objections from the Settlement Class is a strong indication that Class Members view the Settlement favorably, which weighs heavily in favor of final approval. *See, e.g.*, *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *42-43 ("When considering the large volume of Claim Forms submitted . . . the reaction of the class to date supports approval of the Settlement."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 U.S. Dist. LEXIS 166383, at *9 (E.D.N.Y. Nov. 16, 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.").

### 7. Third *Grinnell* Factor – Stage Of Proceedings And Amount Of Discovery

Under this factor, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *See Torres v. Gristede's Operating Corp.*, 2010 U.S. Dist. LEXIS 139144, at *16 (S.D.N.Y. Dec. 21, 2010) (internal quotation marks omitted). "This *Grinnell* factor is intended to assure the Court that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them. . . . Formal discovery is not a prerequisite . . . ." *In re Vitamin C Antitrust Litig.*, 2012 U.S. Dist. LEXIS 152275, at *17 (E.D.N.Y. Oct. 22, 2012) (internal citation and quotation marks omitted).

Here, while the settlement was reached in the early stages of litigation, prior to formal discovery, the Parties have exchanged sufficient information so that they can responsibly resolve the case and make an informed decision regarding the value of the Settlement. Specifically, the Settlement was reached after the Parties completed informal confirmatory discovery, including

---

[13] The claims process is ongoing as Class Members have until at least December 11, 2023 to submit Claim Forms and they have until September 7, 2023 to object or opt-out.

Defendant providing data concerning manufacturer's suggested retail prices, total sales nationwide on an annual basis and for the Class period, total sales for each Plaintiffs' state of residence on an annual basis, estimates of average purchase price, and total revenue received by Artsana from April 22, 2015 through December 31, 2021. Vozzolo Decl. ¶ 20. Moreover, in addition to full briefing on Defendant's motion to dismiss and/or strike the complaint in the *Sayers* Action, the Parties also exchanged mediation submissions that helped to clarify the factual and legal issues. *Id.* ¶¶ 9, 14. Additionally, members of Class Counsel also have had substantial involvement in identical class action litigation against other booster seat manufacturers involving the same issues—this experience has provided Class Counsel with additional knowledge relevant to the merits of this case and the Settlement. *Id.* ¶¶ 69-70. Class Counsel, therefore, has had sufficient information to make an informed decision about the merits of this case relative to the benefits provided by the proposed Settlement. Moreover, "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Hadel v. Gaucho, LLC*, 2016 U.S. Dist. LEXIS 33085, at *4 (S.D.N.Y. Mar. 14, 2016); *see also Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218, at *30 (S.D.N.Y. June 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement and avoiding hundreds of hours of legal fees). Accordingly, this factor weighs in favor of approval.

8.      **Seventh *Grinnell* Factor – Ability To Withstand A Greater Judgment**

The seventh *Grinnell* factor considers whether a defendant could withstand a judgment substantially higher than the proposed settlement amount if the case were to proceed to trial. *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 338 (S.D.N.Y. 2005). A defendant's ability to withstand a greater judgment, does not, standing alone, suggest that a settlement is unfair. *See Athale v. Sinotech Energy Ltd.*, 2013 U.S. Dist. LEXIS 199696, at *18 (S.D.N.Y. Sep. 4, 2013).

This factor is either neutral or supports the reasonableness of the Settlement because it is not known whether Artsana could withstand a potentially enormous statutory damages award that could be assessed if the case succeeded at trial and survived appeal. *See Famular v. Whirlpool Corp.*, 2019 U.S. Dist. LEXIS 44907, at *26 (S.D.N.Y. Mar. 18, 2019) (noting "[s]tatutory damages are permissible in class actions alleging [GBL] violations brought in federal court").

> **9.** **Eighth And Ninth *Grinnell* Factors – The Settlement Amount Is Reasonable In Light Of The Possible Recovery And Attendant Risks Of Litigation**

Courts typically analyze the last two *Grinnell* factors together, "consider[ing] and weigh[ing] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 U.S. Dist. LEXIS 119702, at *57 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact . . . and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972)). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455 n.2.

Here, each Class Member is able to recover cash benefits of $25.00 or $50.00 per Booster Seat, without any limit to the number of claims Defendant will pay. Settlement ¶¶ 46-47. Given the complexity of the action and the potential of a non-recovery, the Settlement provides a favorable

resolution for Class Members. More specifically, based on suggested retail prices for the Booster Seats, this equates to an approximate recovery of 17% to 50% of the purchase price for each Class Member. Vozzolo Decl. ¶¶ 33-34. This recovery falls well within the range that courts have traditionally found to be fair and adequate. *See, e.g.*, *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *52 (finding recovery under different damages scenarios ranging from 17% to 20% was "reasonable when viewed against the risks of continued litigation, and the real potential for a zero recovery.").

Moreover, the fact that the Settlement provides for a prompt payment to claimants favors approval. *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004) ("[T]he proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road . . . . Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility – little or no recovery.") (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985)). Therefore, these factors militate in favor of approving the Settlement.

## VIII.    CONCLUSION

For the above reasons, and for those described in Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Awards, Plaintiffs respectfully request the Court enter the proposed Final Approval Order filed herewith, finally certify the Settlement Class, appoint Class Counsel and Plaintiff as representatives for the Settlement Class, award each Plaintiff an incentive award in the amount of $1,500, grant Class Counsel's motion for attorneys' fees, expenses, and costs, and grant final approval of this Settlement.

Dated:  August 28, 2023                      Respectfully submitted,

                                             **BURSOR & FISHER, P.A.**

                                             By: */s/ Antonio Vozzolo*

Alec M. Leslie
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC**
Martha A. Geer
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
Email: mgeer@milberg.com

-and-

**VOZZOLO LLC**
Antonio Vozzolo
Andrea Clisura
345 Route 17 South
Upper Saddle River, NJ 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com
        aclisura@vozzolo.com

*Co-Class Counsel*