## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASHAYILA SAYERS, BRITTNEY TINKER, JENNIFER MONACHINO, KIMBERLY MULLINS, HILDA MICHELLE MURPHREE, and AMANDA JIMENEZ, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>ARTSANA USA, INC.<br><br>       Defendant. | Case No. 7:21-cv-07933-VB<br><br>Hon. Vincent L. Briccetti |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARDS

Dated:  August 28, 2023

**BURSOR & FISHER, P.A.**
Alec M. Leslie
1330 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Martha A. Geer
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
Email: mgeer@milberg.com

-and-

**VOZZOLO LLC**
Antonio Vozzolo
345 Route 17 South
Upper Saddle River, NJ 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com

*Co-Class Counsel*

## <u>TABLE OF CONTENTS</u>

**PAGE(S)**

INTRODUCTION ........................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..................................................2

I.     PLAINTIFFS' ALLEGATIONS ........................................................2

II.    THE LITIGATION AND WORK PERFORMED TO BENEFIT THE CLASS ...............2

SUMMARY OF THE SETTLEMENT .......................................................4

ARGUMENT ...............................................................................................................6

I.     THE REQUESTED ATTORNEYS' FEES, COSTS, AND EXPENSES ARE
       REASONABLE AND SHOULD BE APPROVED ..........................................6

       A.     The Percentage Method Should Be Used To Calculate Fees .................7

       B.     The Reasonableness Of The Requested Fees Under the Percentage-Of-The-
              Fund Method Is Supported By This Circuit's Six-Factor *Goldberger* Test ..........10

              1.     Time And Labor Expended By Counsel......................................10

              2.     Magnitude And Complexity Of The Litigation ..........................11

              3.     The Risk Of Litigation ................................................................12

              4.     The Quality Of Representation ...................................................13

              5.     The Requested Fee In Relation To The Settlement ....................14

              6.     Public Policy Considerations ......................................................16

II.    THE REQUESTED ATTORNEYS' FEES ARE ALSO REASONABLE UNDER
       A LODESTAR CROSS-CHECK .......................................................17

III.   THE REQUESTED INCENTIVE AWARDS REFLECT PLAINTIFFS' ACTIVE
       INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED ........................20

CONCLUSION............................................................................................................21

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Alleyne v. Time Moving & Storage Inc.*,
  264 F.R.D. 41 (E.D.N.Y. 2010) ........................................................................... 9

*Asare v. Change Grp. of N.Y., Inc.*,
  2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ..................................................... 19

*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*,
  2002 WL 1315603 (S.D.N.Y. June 17, 2002) ...................................................... 7

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ....................................................................... 19

*Behzadi v. Int'l Creative Mgmt. Partners, LLC*,
  2015 U.S. Dist. LEXIS 90117 (S.D.N.Y. July 9, 2015) ....................................... 8

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................ 6

*Cassese v. Williams*,
  503 F. App'x 55 (2d Cir. 2012) .......................................................................... 17

*Danganan v. Guardian Prot. Servs.*,
  742 F. App'x 634 (3d Cir. 2018) .......................................................................... 2

*Diaz v. Eastern Locating Serv.*, Inc.,
  2010 U.S. Dist. LEXIS 139136 (S.D.N.Y Nov. 29, 2010) ................................... 9

*Dornberger v. Metro. Life Ins. Co.*,
  203 F.R.D. 118 (S.D.N.Y. 2001) ....................................................................... 22

*Dupler v. Costco Wholesale Corp.*,
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) .......................................................... 16, 19

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. Feb. 25, 2014) ......................................................... 14

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ................................................................... 6, 7, 10, 17

*Hart v. RCI Hosp. Holdings*,
  2015 U.S. Dist. LEXIS 126934 (S.D.N.Y. Sep. 22, 2015) ................................... 9

*Hyun v. Ippudo USA Holdings*,
  2016 WL 1222347 (S.D.N.Y. Mar. 24, 2016) ............................................... 8, 19

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013).................................................................... 7

*In re Credit Default Swaps Antitrust Litig.*,
   2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)........................................................ 19

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ......................................................... 8

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   2018 WL 3863445 (S.D.N.Y. Aug. 14, 2018)...................................................... 21

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................. 12, 14

*In re MetLife Demutalization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) .................................................................. 14

*In re Nasdaq Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................... 12

*In re Nissan N. Am., Inc. Litig.*,
   2023 WL 2749161 (M.D. Tenn. Mar. 31, 2023) .................................................. 12

*In re Penthouse Exec. Club Comp. Litig.*,
   2014 U.S. Dist. LEXIS 5864 (S.D.N.Y. Jan. 14, 2014) ......................................... 9

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 U.S. Dist. LEXIS 128998 (S.D.N.Y. July 21, 2020) .................................... 18

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................................... 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
   746 F. App'x. 655 (9th Cir. 2018) ....................................................................... 20

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
   2020 WL 5901116 (C.D. Cal. Sept. 23, 2020) ..................................................... 12

*LeBlanc-Sternberg v. Fletcher*,
   143 F. 3d 748 (2d Cir. 1998).................................................................................. 18

*Long v. HSBC USA Inc.*,
   2016 U.S. Dist. LEXIS 124199 (S.D.N.Y. Sep. 13, 2016).................................... 19

*Luciano v. Olsten Corp.*,
   109 F.3d 111 (2d Cir. 1997)................................................................................... 18

*Massiah v. MetroPlus Health Plan, Inc.*,
  2012 U.S. Dist. LEXIS 166383 (E.D.N.Y. Nov. 16, 2012)................................... 11

*Massiah v. MetroPlus Health Plan, Inc.*,
  2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)................................................. 17, 21

*Masters v. Wilhelmia Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007)........................................................... 8, 9, 15

*McBean v. City of N.Y.*,
  233 F.R.D. 377 (S.D.N.Y. 2006) ............................................................ 16

*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010)................................................................ 7, 8

*McMahon v. Oliver Cheng Catering and Events, LLC*,
  2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ................................................. 16

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)......................................................................... 18

*Mogull v. Pete and Gerry's Organics, LLC*,
  2022 WL 4661454 (S.D.N.Y. Sept. 30, 2022)................................................ 14

*Monzon v. 103W77 Partners, LLC*,
  2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) .................................................... 7

*Moses v. N.Y. Times Co.*,
  2023 U.S. App. LEXIS 21530 (2d Cir. Aug. 17, 2023)....................................... 21

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
  2010 WL 532960 (S.D.N.Y. Feb. 9, 2010)..................................................... 20

*Reyes v. Altamarea Group, LLC*,
  2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011).................................................. 20

*Shapiro v. JPMorgan Chase 7 Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................... 12, 13, 17, 18

*Suarez v. California Natural Living, Inc.*,
  2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019) .................................................. 13

*Torres v. Gristede's Operating Corp.*,
  519 F. App'x 1 (2d Cir. 2013) ................................................................ 8

*Velez v. Novartis Pharm. Corp.*,
  2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010)....................... 8, 12, 15, 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005).............................................................................. 7, 17

*Yuzary v. HSBC Bank USA, N.A.*,
 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ............................................... 6, 16, 20

*Zink v. First Niagara Bank, N.A.*,
 2016 WL 7473278 (W.D.N.Y. Dec. 29, 2016) .................................................. 8, 9

**STATUTES**

New York General Business Law § 349 ...................................................................... 3

New York General Business Law § 350 ...................................................................... 3

**RULES**

Fed. R. Civ. P. 23(f) ................................................................................................ 13, 14

Fed. R. Civ. P. 23(h) .................................................................................................. 1, 6

## <u>INTRODUCTION</u>

Plaintiffs Mashayila Sayers, Brittney Tinker, Jennifer Monachino, Kimberly Mullins, Hilda Michelle Murphree, and Amanda Jimenez (collectively, "Plaintiffs") hereby move the Court for an award of attorneys' fees, costs, expenses, and incentive awards.  As a result of Plaintiffs' and Class Counsel's efforts—and with the assistance of the Hon. Diane Welsh (Ret.), formerly a Magistrate Judge in the Eastern District of Pennsylvania and now with JAMS—the parties reached a Class Action Settlement (ECF No. 42-1) (the "Settlement")[1] that provides significant monetary compensation to Class Members while also mandating agreed-upon non-monetary benefits designed to educate purchasers regarding proper use of Artsana booster seats.  The Settlement—preliminarily approved by this Court on January 23, 2023—provides up to $24.7 million in value to Class Members, who are entitled to $50 cash payments per Eligible Product with proof of purchase, and $25 cash payments per Eligible Product without proof of purchase.  The Settlement also requires Defendant to provide consumers with educational videos and information on its website and Facebook page.  Lastly, the Settlement provides for the payment of all costs of notice and administration, as well as attorneys' fees and expenses, and incentive awards in such amounts as the Court determines, all of which will be paid *separate and apart* from the benefits provided to Class Members.

In light of this exceptional result, Plaintiffs respectfully request pursuant to Federal Rule of Civil Procedure 23(h) that the Court approve attorneys' fees, costs, and expenses of $2,250,000, as well as incentive awards of $1,500 each to Plaintiffs for their service as class representatives.

---

[1] All capitalized terms used herein shall have the same meaning as defined in the Settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    PLAINTIFFS' ALLEGATIONS

Plaintiffs are purchasers of Defendant's Chicco-brand KidFit Booster Seats, which have included labeling and marketing representations that the Booster Seats are safe for children as small as 30 pounds (the "30-pound Claim") and that the Products offer side-impact collision protection (the "Side-Impact Claim").  Plaintiffs allege that the 30-pound Claim and the Side-Impact Claim were false and misleading.  *See, e.g.*, Consolidated Amended Complaint ("CAC") ¶¶ 5-13, 72-95 (ECF No. 39).

### II.   THE LITIGATION AND WORK PERFORMED TO BENEFIT THE CLASS

On April 22, 2021, Plaintiffs Mashayila Sayers, Kimberly Mullins, Jennifer Monachino, Brittney Tinker, and Hilda Murphee filed a putative class action against Artsana in the Eastern District of Pennsylvania, captioned *Sayers et al. v. Artsana USA, Inc.*, Case No. 5:21-cv-01876-JMG, ECF No. 1 (E.D. Pa.) (the "*Sayers*" action).  The *Sayers* complaint asserted nationwide counts for violation of the Magnuson-Moss Warranty Act, unjust enrichment, and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law,[2] as well as counts for breach of express warranty, breach of implied warranty, and violation of consumer protection acts under the specific laws of Colorado, Florida, Illinois, Maryland, and Texas, that related to, *inter alia*, alleged misrepresentations on advertising, labeling, or marketing concerning the minimum weight requirement for and side-impact collision protection provided by Artsana KidFit booster seats. *Sayers*, ECF No. 1, ¶ 9.  The *Sayers* complaint asserted these claims on behalf of a putative nationwide class of consumers, as well as Colorado, Florida, Illinois, Maryland, and Texas

---

[2] *See Danganan v. Guardian Prot. Servs.*, 742 F. App'x 634, 635-36 (3d Cir. 2018) (explaining that non-residents of Pennsylvania may sue under the Pennsylvania Unfair Trade Practices and Consumer Protection Law).

subclasses of consumers.

On July 28, 2021, Artsana filed a motion to dismiss (*Sayers*, ECF No. 18) and a motion to strike portions of Plaintiffs' complaint (*Sayers*, ECF No. 19).  Plaintiffs filed their opposition to Artsana's motions on September 3, 2021, and the motions were fully briefed on September 22, 2021.  *See Sayers*, ECF Nos. 27, 31.

On September 23, 2021, Plaintiff Amanda Jimenez filed the instant class action lawsuit against Artsana in the United States District Court for the Southern District of New York, Case No. 7:21-cv-07933-VB (S.D.N.Y.), asserting claims for deceptive acts or practices in violation of New York General Business Law section 349, false advertising under New York General Business Law section 350, fraud, unjust enrichment, breach of implied warranty, and breach of express warranty. These claims arose out of  alleged misrepresentations in advertising, labeling, or marketing concerning the minimum weight requirement for and side-impact collision protection provided by Artsana KidFit booster seats.  Ms. Jimenez asserted claims on behalf of a putative nationwide class of consumers, as well as a subclass of consumers that purchased Artsana booster seats in New York.

On September 30, 2021, while the motions to dismiss and strike were fully briefed in the *Sayers* matter, the parties in the *Sayers* and *Jimenez* cases participated in a mediation facilitated by Hon. Diane Welsh (Ret.) of JAMS, who is a retired Magistrate Judge of the U.S. District Court for the Eastern District of Pennsylvania.  *See* Vozzolo Decl. ¶ 15.  After a day-long mediation on September 30, 2021, the Parties were able to make substantial progress, agreeing on the scope of the Class (a time frame of April 22, 2015 through December 31, 2021 and a nationwide Class) and all substantive monetary terms of the Class benefits, leaving for further negotiation prospective non-monetary benefits. *Id*.  The Parties gave the *Sayers* court and this court notice of the settlement

and requested a stay of proceedings. *Id.*  The Parties participated in a second mediation with Judge Welsh on November 8, 2021 regarding non-monetary settlement benefits.  *Id.* ¶ 16.  Although the parties were unable to reach final agreement on the non-monetary benefits, the parties continued to engage in arm's length negotiations over the next several months regarding the non-monetary benefits and the actual terms of the Stipulation of Settlement, exchanging numerous drafts. *Id.*  The parties ultimately reached final agreement on both the non-monetary benefits and all the terms of the Stipulation of Settlement except for attorneys' fees, costs, and expenses.   The parties participated in a third mediation before Judge Welsh on June 6, 2022, and were unable to reach agreement on an amount for attorneys' fees, costs, and expenses, but did agree on a process and schedule for further negotiations. *Id.* ¶¶ 17-18.  Further mediation sessions took place on August 18 and August 28, 2023 but no agreement was reached.  *Id.* ¶ 18.

Finally, on January 17, 2023, after many months of continued, contentious arms' length negotiations, the parties ultimately executed the Stipulation of Settlement.  *Id.* ¶ 25.  That same day, Plaintiffs filed an Amended Complaint in the instant matter which consolidated the *Sayers* and *Jimenez* actions, and Plaintiffs moved for preliminary approval of the Settlement.  ECF Nos. 39-42.  The Court granted preliminary approval on January 23, 2023.  ECF No. 45.  Thereafter, the parties worked diligently to facilitate the dissemination of class notice by March 8, 2023, and have been actively involved in overseeing the claims administration process.  *See* Vozzolo Decl. ¶ 38.

<u>**SUMMARY OF THE SETTLEMENT**</u>

Class Counsel's efforts resulted in an outstanding settlement.  Class Members with proof of purchase who timely submit a claim form are entitled to a $50 cash payment per Eligible Product, and Class Members without proof of purchase are entitled to a $25 cash payment per

Eligible Product.  Settlement ¶¶ 46-47.  The Settlement includes all Artsana booster seats marketed under the "KidFit" branding, which includes the KidFit, KidFit Zip, KidFit Zip Air, KidFit Luxe, KidFit Plus, and KidFit Air Plus, purchased during the Class Period (*i.e.*, April 22, 2015 to December 31, 2021).  The cash payments available to Class Members equate to an approximate recovery of 33% to 50% for Class Members with proof of purchase, or 17% to 25% of the purchase price for Class Members without proof of purchase.

In addition to the significant monetary relief described above, Artsana has also agreed to the following non-monetary benefits:

- Artsana will include a link on its consumer-facing website for Chicco USA to an informational video previously only available on Facebook.com (the "Facebook Video"), giving consumers increased access to information regarding safe weight, height, and age requirements for the Booster Seats;

- Artsana will add an overlay of text to the Facebook Video, stating: "The National Highway Traffic Safety Administration (NHTSA) recommends that you keep your child in a forward-facing car seat with a harness and tether until he or she reaches the top height or weight limit allowed by your car seat's manufacturer" (the "NHTSA Overlay");

- Artsana will create a new educational video, which discusses the subject of transitioning a child to a booster seat and addresses the minimum requirements for safe use of a booster, including weight, age, height, and child maturity level (the "New Video"). The New Video will appear on the Chicco USA website on the product video page. Artsana will either include an audio message identical to the language utilized in the NHTSA Overlay or display the NHTSA Overlay on the New Video.

Settlement ¶ 51.

Further, Artsana agrees to pay all Notice and Administration Costs, as well as any attorneys' fees, costs, and expenses and incentive payments awarded by the Court.  Settlement ¶ 65.  Those payments will be separate from the monetary relief paid to Class Members and will not reduce the amount of relief available and paid to Class Members under the Settlement.[3]  There

---

[3] Although Artsana has agreed to pay attorneys' fees, costs, and expenses awarded by the Court, the Parties have no agreement on the amount of attorneys' fees, costs, and expenses.  Settlement ¶¶ 65-66.  The Parties participated in a mediation with Judge Welsh concerning Class Counsel's

is no cap on the number of Claims or total amount of relief Defendant will pay to the Class, and Class Members' relief will not be prorated for any reason.

## ARGUMENT

### I.  THE REQUESTED ATTORNEYS' FEES, COSTS, AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Under Federal Rule of Civil Procedure 23(h), courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement."  Fed. R. Civ. P. 23(h).[4]  Further, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Here, Plaintiffs request a fee award of $2,250,000, which represents approximately 9.1% of the value of the Settlement.  Vozzolo Decl. ¶ 44.  This is well below the one-third benchmark used in this Circuit under the percentage-of-the-recovery method—which the Court should employ— and it is reasonable under each of the six criteria set out by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), and should be approved as such.  Alternatively, the requested Attorneys' Fees and Expenses award is reasonable under the lodestar method.

---

request for attorneys' fees, costs, and expenses on August 18, 2023; however, no agreement was reached.  *See* Vozzolo Decl. ¶¶ 18-19.  The Parties agreed to participate in another mediation session with Judge Welsh on August 28, 2023, however no agreement was reached.  *Id.*

[4] The requested fee award also encompasses unreimbursed litigation expenses.  Settlement ¶ 65.  Reasonable litigation-related expenses are customarily awarded in class action settlements and include costs such as document preparation and travel.  *See, e.g.*, *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) ("Class Counsel's unreimbursed expenses, including court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the mediator's fees, are reasonable and were incidental and necessary to the representation of the class.").  Thus, included in the requested fee award, Class Counsel respectfully seeks reimbursement of $20,422.43 for out-of-pocket expenses in these standard categories.  *See* Vozzolo Decl. ¶ 43; *id.* Ex. 4; Leslie Decl. Ex. 2; Geer Decl. Ex. 3.

A.      **The Percentage Method Should Be Used To Calculate Fees**

Courts in the Second Circuit apply one of two fee calculation methods: the "percentage of the fund" method or the "lodestar" method. *See Goldberger*, 209 F.3d at 50.  The Court has discretion in choosing which method to employ.  *See McDaniel v. County of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (holding that "the decision as to the appropriate method [is left] to 'the district court, which is intimately familiar with the nuances of the case'") (quoting *Goldberger*, 209 F.3d at 48).  However, "[t]he trend in the Second Circuit is to use the percentage of the fund method … as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77 Partners, LLC*, 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015).  "In fact, the 'trend' of using the percentage of the fund method to compensate plaintiffs' counsel … is now "firmly entrenched in the jurisprudence of this Circuit." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013).

As the Second Circuit has stated, the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).  "In contrast, the 'lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in gimlet-eyed review of line-item fee audits.'" *Id.* (quoting *Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002)); *see also Goldberger*, 209 F.3d at 48-49 (describing the "inevitable waste of judicial resources" that accompanied such problems); *Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) ("In this case, where

the parties were able to settle relatively early and before any depositions occurred … the Court finds that the percentage method, which avoids the lodestar method's potential to 'creative a disincentive to early settlement' … is appropriate.") (citing *McDaniel*, 595 F.3d at 418); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("From a public policy perspective, the percentage method is the most efficient means of compensating the work of class action attorneys.  It does not waste judicial resources analyzing thousands of hours of work, where counsel obtained a superior result.").  Thus, under the circumstances of this case—wherein Class Counsel achieved an exceptional result for the Settlement Class—the Court should employ the percentage-of-the-recovery method.

Under the percentage method, the court calculates the fee award as a percentage of the value obtained for the class.  The Second Circuit "has ruled that '[a]n allocation of fees by percentage should … be awarded on the basis of total funds made available **whether claimed or not**.'"  *Velez v. Novartis Pharm. Corp.*, 2010 U.S. Dist. LEXIS 125945, at *58 (S.D.N.Y. Nov. 30, 2010) (quoting *Masters v. Wilhelmia Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007); emphasis supplied by *Velez*)).  This applies to both common fund settlements and claims made settlements.  *See*, *e.g.*, *Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (calculating fee award "'on the basis of the total funds made available' … *i.e.*, as if it were a common settlement fund" (quoting *Masters*, 473 F.3d at 437)); *Zink v. First Niagara Bank, N.A.*, 2016 WL 7473278, at *7-8 (W.D.N.Y. Dec. 29, 2016) (finding "the weight of authority" holds that attorneys' fees should be based on the amount made available, not the amount actually claimed); *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, 2015 U.S. Dist. LEXIS 90117, at *6-7 (S.D.N.Y. July 9, 2015) ("This is a claims made settlement, meaning the amount paid to the class will depend on the number of claims submitted …. Nevertheless, awarding attorneys' fees based

on a percentage of the settlement amount rather than the amount paid is proper." (citing *Masters*));

*Hart v. RCI Hosp. Holdings*, 2015 U.S. Dist. LEXIS 126934, at *45-46 (S.D.N.Y. Sep. 22, 2015)

("Circuit precedent supports taking the gross monetary settlement into account when calculating

the percentage of the fund" (citing *Masters*) "[a]nd other courts in this Circuit have applied this

approach even when unclaimed funds were to revert to the defendants."); *In re Penthouse Exec.*

*Club Comp. Litig.*, 2014 U.S. Dist. LEXIS 5864, at *31-32 (S.D.N.Y. Jan. 14, 2014) ("The

attorneys' fee percentage should come out of the full settlement amount, rather than the claimed

funds."); *Diaz v. Eastern Locating Serv.*, Inc., 2010 U.S. Dist. LEXIS 139136, at *21 (S.D.N.Y

Nov. 29, 2010) (finding fee reasonable where it was "based on the entire settlement fund, including

the amount that will revert to defendants, rather than on the portion of the fund equal to the claims

actually made"); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010)

("[T]he value of legal service rendered in the creation of a settlement fund [is not ]diminished by

the failure of beneficiaries to cash in, regardless of what happens to the surplus.").

Here, although this Settlement does not create a traditional "common fund," its total value

is at least $24,735,203.20 based on the relief made available to Class Members.[5]  *See* Vozzolo

Decl. ¶ 36.  Specifically, this includes: (1) the number of Eligible Products sold during the Class

Period   (874,538) multiplied by $25 per Eligible Product, which amounts to $21,863,450;

(2) approximately $612,753.20 for Notice and Administration Costs, (3) anticipated incentive

awards to Plaintiffs totaling $9,000, and (4) the requested $2,250,000 for Attorneys' Fees and

Expenses.  *Id.*  Thus, Class Counsel's $2,250,000 fee request is only 9.1% of the total estimated

value of the Settlement.  *Id.* ¶ 44.  Further, this Settlement value is a conservative estimate of the

---

[5] *See Zink*, 2016 WL 7473278, at *7-8 (noting a claims-made settlement is functionally
equivalent to a common fund settlement where unclaimed funds revert to defendant).

maximum amount Artsana is liable for under the Settlement given that it does not account for any claims submitted with proof of purchase, for which claimants are entitled to $50 per Eligible Product.

Thus, Class Counsel's requested fees and expenses are at most just 9.1% of the relief made available to Class Members.  As detailed below, this request is well supported by this Circuit's precedent.

**B.    The Reasonableness Of The Requested Fees Under the Percentage-Of-The-Fund Method Is Supported By This Circuit's Six-Factor *Goldberger* Test**

The Second Circuit has articulated six factors to be considered when determining the reasonableness of a requested percentage to award as attorneys' fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation []; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50.  A review of these factors supports Class Counsel's fee request.

**1.    Time And Labor Expended By Counsel**

Since Class Counsel began investigating this matter in January 2021, Counsel has devoted 1,184.5 hours to the successful pursuit of this matter.  Vozzolo Decl. ¶ 46.  Class Counsel's dedication to this matter and expenditure of substantial time, effort, and resources has brought this complex litigation to a successful resolution.

Class Counsel's work included, *inter alia*:

i.    conducting an extensive, pre-suit factual investigation of the Eligible Products and Defendant's marketing claims;

ii.    interviewing numerous interested Class Members, including Plaintiffs, regarding their purchase of and experience with the Eligible Products;

     iii.      drafting and serving FIOA requests;

     iv.      drafting the initial Complaints and Consolidated Amended Complaint;

     v.      fully briefing a Motion to Dismiss and a Motion to Strike in the *Sayers* action;

     vi.      holding numerous telephonic calls with defense counsel regarding settlement;

     vii.      drafting multiple mediation statements, participating in five full-day mediation sessions with the Honorable Diane Welsh (Ret.) of JAMS on September 30, 2021, November 8, 2021, June 6, 2022, August 18, 2023, and August 28, 2023;

     viii.      successfully moving for Preliminary Approval of the Settlement; and

     ix.      communicating with the Claims Administrator regarding implementation of the Notice Plan and addressing any issues with claims administration as they arise.

*See* Vozzolo Decl. ¶ 74.

Further, Class Counsel's work in this litigation is far from over. Class Counsel will commit significant ongoing time and resources to this litigation, specifically related to administering the Settlement and responding to class member inquiries concerning the claims process. Vozzolo Decl. ¶ 53. Based on Class Counsel's experience in other cases, this ongoing work will likely involve approximately 150-200 total additional hours. *Id.* This additional work should be accounted for as well. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 U.S. Dist. LEXIS 166383, at *20-21 (E.D.N.Y. Nov. 16, 2012) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request."). Thus, this factor favors the fee request.

### 2. Magnitude And Complexity Of The Litigation

The complex nature of this litigation further favors the requested fee award. "[C]lass

actions have a well deserved reputation as being most complex." *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (cleaned up); *see also Shapiro v. JPMorgan Chase 7 Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("It is well settled that class actions are notoriously complex and difficult to litigate."). Indeed, as Judge McMahon has observed, "[t]he federal courts have established that a standard fee in complex class action cases … where plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit," and "[d]istrict courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." *Velez v. Novartis Pharm. Corp.*, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010).

The complexity of this case is further underscored by the challenges Plaintiffs faced on a motion to dismiss, and even more so were the case to proceed to summary judgment and class certification. *See* Argument § 1.B.3, *infra*. Class Counsel can attest to these complexities personally, having litigated multiple similar cases involving allegedly dangerous products through class certification. *See generally Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116 (C.D. Cal. Sept. 23, 2020); *In re Nissan N. Am., Inc. Litig.*, 2023 WL 2749161 (M.D. Tenn. Mar. 31, 2023). This factor favors the requested fee.

### 3. The Risk Of Litigation

This factor recognizes the risk of non-payment in cases prosecuted on a contingency basis where claims are not successful, which can justify higher fees. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) (noting risk of non-payment in cases brought on contingency basis).

Here, this case presented a substantial risk of non-payment for Class Counsel.  For over two years, Class Counsel invested significant time, effort, and resources to the litigation without any compensation.   Vozzolo Decl. ¶ 42.   Specifically, Class Counsel expended resources investigating the claims and opposing a motion to dismiss and a motion to strike in the *Sayers* action.  At class certification, in addition to the usual hurdles and complexities encountered at that stage, Class Counsel would have to contend with other issues, including (i) whether common proof can establish Defendant's marketing claims resulted in damages for Class Members; (ii) whether a nationwide class could be certified; and (iii) whether this Court has personal jurisdiction over the claims of non-New York class members, *Suarez v. California Natural Living, Inc.*, 2019 WL 1046662, at *6 (S.D.N.Y. Mar. 5, 2019) (Briccetti, J.) ("The Court concludes personal jurisdiction over plaintiff's out-of-state claims is best assessed at the class certification stage, not on the instant motion to dismiss.").  Plaintiffs would have to address these and numerous other issues to maintain class certification and ultimately prevail on the merits.  In particular, "[p]roof of damages in complex class actions is always complex and difficult and often subject to expert testimony." *Shapiro*, 2014 WL 1224666, at *11.  *See also* Vozzolo Decl. ¶ 30.  Defendant's success on any one of those issues could have precluded many if not most Class Members from recovering anything.  *Id*.  Further, even if Plaintiffs succeeded at class certification, Defendant would be entitled to appeal the Court's order pursuant to Fed. R. Civ. P. 23(f).  *Id*.  And, even success at class certification would not preclude a victory for Defendant on the merits at summary judgment, at trial, or on appeal.  *Id*.  The fact Class Counsel undertook this representation, despite these significant risks, supports the requested fee award.

### 4.     The Quality Of Representation

Class action litigation presents unique challenges and, by achieving an exceptional

settlement, Class Counsel proved that they have the ability and resources to litigate this case zealously and effectively.  Class Counsel have been recognized by courts across the country for their expertise, including this Court.  *See* Leslie Decl. Ex. 13 (Bursor & Fisher Firm Resume); *see also Mogull v. Pete and Gerry's Organics, LLC*, 2022 WL 4661454, at *2 (S.D.N.Y. Sept. 30, 2022) (Briccetti, J.) ("Bursor & Fisher … has represented other plaintiffs in more than one hundred class action lawsuits, including several consumer class actions that proceeded to jury trials in which Bursor & Fisher achieved favorable results for the plaintiffs."); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) (Rakoff, J.) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five [now six] class action jury trials since 2008."); *see also* Geer Decl. Ex. 1 (Milberg Firm Resume); Vozzolo Decl. Ex. 1 (Vozzolo Firm Resume).

Furthermore, "[t]he quality of the opposition should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance."  *In re MetLife Demutalization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010).  Class Counsel achieved an exceptional result in this case while facing well-resourced and highly experienced defense counsel.  *See In re Marsh ERISA Litig.*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement.").

Class Counsel litigated this case efficiently, effectively, and civilly.  The excellent result is a function of the high quality of that work, which supports the requested fee award.

### 5.    The Requested Fee In Relation To The Settlement

Class Counsel seeks attorneys' fees and expenses of $2,250,000.  "District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater."  *Velez*, 2010 WL

4877852, at *21.  Further, under Second Circuit precedent, Class Counsel's fees must be measured against the relief *made available* to Class Members, not the relief actually claimed.  *Masters*, 473 F.3d at 437 ("An allocation of fees by percentage should … be awarded on the basis of the total funds made available, whether claimed or not.").  In addition to the many other cases following this approach within the Second Circuit cited *supra* § I.A, this Court has also approved requests for fees and expenses measured against the full value of relief made available through the settlement.  *See Adler v. Bank of America, N.A.*, No. 7:13-cv-04866-VB, ECF No. 128 at 19:9-13 (S.D.N.Y. July 20, 2016) (calculating fee award based on "the aggregate settlement value," rather than value of funds claimed); *id.* at 8:12-16 ("In other words, potentially Bank of America would be on the hook for 5.7 million dollars to be paid to the class and on top of that would be on the hook for the attorney's fees of 1.5 million dollars."); *In re HIKO Energy LLC Energy Litig.*, No. 14-cv-01771-VB, ECF No. 83 (requesting $975,000 in attorneys' fees based on total value of settlement, including full amount made available to class) (S.D.N.Y. April 25, 2016); *id.* at ECF No. 93 (S.D.N.Y. May 9, 2016) (approving $975,000 in attorneys' fees); *In re: Scotts EZ Seed Litig.*, No. 12-cv-4727-VB, ECF No. 360 (requesting $9.7 million in attorneys' fees, costs, and expenses representing 18% of total available settlement amount) (S.D.N.Y. Oct. 5, 2018); *id.* at ECF No. 367 (S.D.N.Y. Dec. 19, 2018) (approving $9.7 million in attorneys' fees, costs, and expenses).

Here, the requested Attorneys' Fees and Expenses represent 9.1% of the cash value of the Settlement, $24.7 million—well below the Second Circuit's benchmark for fees.  Vozzolo Decl. ¶ 44.  And, this percentage does not take into account the value of the non-monetary benefits provided for under the Settlement.  *Id.*  Moreover, even if this Court were to consider the Settlement value based on the approximate value of submitted claims awaiting confirmation of

validity, Class Counsel's fee request is only 33.5% of the Settlement value calculated on that basis.[6] *Id.* ¶ 45. That percentage is also within approved norms of class ligation in the Second Circuit. *See Yuzary*, 2013 WL 5492998, at *10 ("Class Counsel's request for 31.7% of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'") (quoting *McMahon v. Oliver Cheng Catering and Events, LLC*, 2010 WL 2399328, at *7 (S.D.N.Y. Mar. 3, 2010)); *Velez*, 2010 WL 4877852, at *21 ("District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater.") (citing cases). Additionally, that percentage will only decrease as additional claims are submitted between now and the end of the claims period, which will continue to run until 60 days after final approval of the Settlement or December 1, 2023 at the earliest. Settlement ¶ 5. Further, any award of attorneys' fees and expenses will not diminish the relief to Class Members under the Settlement in any way. *See Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010) ("In a case where the attorneys' fees are to be paid directly by defendant and, thus, 'money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members.'" (quoting *McBean v. City of N.Y.*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006)). This factor thus supports the requested fee award.

### 6. Public Policy Considerations

The final *Goldberger* factor is public policy. "Skilled counsel must be incentivized to pursue complex and risky claims [that protect the public on a contingency basis]." *Shapiro*, 2014 WL 1224666, at *24. As such, reasonable fee awards must be provided in order to ensure that

---

[6] Class Counsel conservatively calculated this percentage as follows: (1) 153,244 claims awaiting confirmation of validity as of July 21, 2023 multiplied by $25 per claim = $3,831,100; (2) estimated notice and administration expenses: $612,753.20; (3) anticipated incentive awards to Plaintiffs: $9,000; (4) requested amount of fees, costs and expenses: $2,250,000. Total: $3,831,100 + $612,753.20 + $9,000 + 2,250,000 = $6,702,853.20. $2,250,000/$6,702,853.20 = 33.5%.

attorneys are incentivized to litigate class actions, which serve as private enforcement tools to police defendants who engage in misconduct.  *See id.*  "Attorneys who fill the private attorney general role must be adequately compensated for their efforts," otherwise the public risks an absence of a "remedy because attorneys would be unwilling to take on the risk."  *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *7 (E.D.N.Y. Nov. 20, 2012) (citing *Goldberger*, 209 F.3d at 51).  Thus, society undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation that is necessary to protect consumer rights, particularly where it is unlikely that the Class Members will pursue litigation on their own for economic or personal reasons.

## II.     THE REQUESTED ATTORNEYS' FEES ARE ALSO REASONABLE UNDER A LODESTAR CROSS-CHECK

A lodestar cross-check further supports the requested fee.  Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved.  *See Wal–Mart Stores, Inc.*, 396 F.3d at 122; *Shapiro*, 2014 U.S. Dist. LEXIS 37872, at *84-85 (observing, "[w]here . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar"; finding multiplier of approximately 3.05 "reasonable and appropriate" (internal quotation omitted)).  Where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50; *see also Cassese v. Williams*, 503 F. App'x 55, 59 (2d Cir. 2012) (noting the "need for exact [billing] records [is] not imperative" where the lodestar is used as a "mere cross-check").

To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates.  *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 U.S. Dist.

LEXIS 128998, at *47-48 (S.D.N.Y. July 21, 2020).  The resulting figure may be adjusted at the

court's discretion by a multiplier, taking into account various equitable factors.  *See Shapiro*, 2014

WL 1224666, at *24 ("[U]nder the lodestar method, a positive multiplier is typically applied to

the lodestar in recognition of the risk of litigation, the complexity of the issues, the contingent

nature of the engagement, the skill of the attorneys, and other factors.").

The hourly billing rate to be applied is the hourly rate that is normally charged in the

community where the counsel practices, *i.e.*, the "market rate."  *See Luciano v. Olsten Corp.*, 109

F.3d 111, 115-16 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates]

prevailing in the community for similar services by lawyers of reasonably comparable skill,

experience, and reputation'") (alteration in original and citation omitted).  Here, the hourly rates

used by Class Counsel are comparable to rates charged by attorneys with similar experience, skill,

and reputation, for similar services in the New York legal market.  *See* Vozzolo Decl. ¶¶ 56-57.[7]

The hours worked, lodestar, and expenses for Class Counsel are set forth here and in the

Leslie Declaration and Geer Declaration, submitted herewith.  In total, through August 27, 2023,

Class Counsel has devoted 1,814.5 hours to prosecuting this litigation.  *See* Vozzolo Decl. ¶ 46.

Class Counsel's aggregate lodestar is $1,320,040.50.  *Id.*  Therefore, the requested fee award

represents a multiplier of approximately 1.7, which is well within the accepted range in this Circuit.

*See Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013)

("Typically, courts use multipliers of 2 to 6 times the lodestar."); *Beckman v. KeyBank, N.A.*, 293

---

[7] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (recognizing "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise"); *LeBlanc-Sternberg v. Fletcher*, 143 F. 3d 748, 764 (2d Cir. 1998) ("The lodestar should be based on 'prevailing market rates' … and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment.") (citation omitted).

F.R.D. 467, 482 (S.D.N.Y. 2013) (approving attorneys' fees of 33% of a $4.9 million common fund, representing a 6.3 times multiplier on Class Counsel's regular hourly rates); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (approving attorneys' fees of $253,758,000, which reflected a "lodestar multiplier of just over 6"). The requested multiplier is also warranted in this case as Class Counsel's fee will not come out of a common fund and thus will not detract from the value to be paid to the class. *Dupler*, 705 F. Supp. 2d 231, 245 (E.D.N.Y. 2010) ("[P]articularly in light of the fact that class counsel's fee does not come out of a common fund, ... multiplying class counsel's lodestar by 3.3 is reasonable in this case.").

Moreover, as courts in New York and elsewhere have noted, a high multiplier helps to avoid "penalizing plaintiffs' counsel for achieving an early settlement, particularly where, as here, the settlement amount was substantial." *Beckman*, 293 F.R.D. at 482; *Hyun*, 2016 WL 1222347, at *3 ("In this case, where the parties were able to settle relatively early and before any depositions occurred … the Court finds that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement' … is appropriate."); *see also Long v. HSBC USA Inc.*, 2016 U.S. Dist. LEXIS 124199, at *42 (S.D.N.Y. Sep. 13, 2016) (acknowledging counsel's work and experience weighed in favor of a 3.10 multiplier where it "ultimately aided plaintiffs in the development of the claims and in reaching a fair settlement at an early stage in negotiations"). Indeed, in light of the excellent result obtained here, the relatively early resolution of this matter means that Class Members will receive a substantial benefit through prompt cash payments made available under the Settlement.

Class Counsel's lodestar multiplier is also reasonable because it will decrease over time. *See* Vozzolo Decl. ¶ 53. "[A]s class counsel is likely to expend significant effort in the future

implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time." *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010). Here, "[t]he fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request." *Yuzary*, 2013 WL 5492998, at *11; *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 746 F. App'x. 655, 659 (9th Cir. 2018) ("The district court did not err in including projected time in its lodestar cross-check; the court reasonably concluded that class counsel would, among other things, defend against appeals and assist in implementing the settlement."). Specifically, as noted above, Class Counsel expects to bill another 150-200 hours on this matter. Vozzolo Decl. ¶ 53. This higher lodestar would further reduce Class Counsel's requested multiplier.

In sum, Class Counsel's efforts in this case resulted in an exceptional settlement of a complex and uncertain case. Class Counsel should be rewarded for achieving this result.

III.  **THE REQUESTED INCENTIVE AWARDS REFLECT PLAINTIFFS' ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED**

Incentive awards are "common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Reyes v. Altamarea Group, LLC*, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011). Not only do reasonable incentive awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take, *Massiah*, 2012 WL 5874655, at *8, they also "encourage class representatives to participate in class action lawsuits" and "treat differently situated class representatives equitably relative to the class members who simply sit back until they are alerted

to a settlement." *Moses v. N.Y. Times Co.*, 2023 U.S. App. LEXIS 21530, at *36-37 (2d Cir. Aug. 17, 2023) ("[O]ur clear precedent … permits district courts to approve fair and appropriate incentive awards to class representatives.").

Here, the participation of Plaintiffs was critical to the ultimate success of the case. *See* Vozzolo Decl. ¶¶ 77-79. Plaintiffs spent significant time protecting the interests of the class through their involvement in this case. *Id*. Plaintiffs assisted Class Counsel in investigating their claims by providing information necessary to draft and file their respective Complaints and the Consolidated Amended Complaint. *Id*. During the course of this litigation, Plaintiffs kept in regular contact with their lawyers to receive updates on the progress of the case and to discuss strategy and settlement. *Id*; *see also generally* Sayers, Tinker, Monachino, Mullins, Murphree, and Jimenez Declarations, submitted herewith.

On these facts, the $1,500 incentive payments to each Plaintiff—which, like Plaintiffs' attorneys' fees, are being paid separate and apart from any relief provided to the Class—are appropriate in light of the efforts made by Plaintiffs to protect the interests of the other Settlement Class Members, the time and effort they expended pursuing this matter, and the substantial benefit they helped achieve for the other Settlement Class Members. Further, the incentive awards are reasonable and equivalent to awards approved by other courts in this Circuit. *See*, *e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2018 WL 3863445, at *2 (S.D.N.Y. Aug. 14, 2018) (approving incentive awards of $25,000); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) approve attorneys' fees, costs, and expenses in the amount of $2,250,000; (2) grant each Plaintiff an

incentive award of $1,500 in recognition of their efforts on behalf of the class; and (3) award such

other and further relief as the Court deems reasonable and just.

Dated: August 28, 2023                        Respectfully submitted,

 By: */s/ Antonio Vozzolo*

**BURSOR & FISHER, P.A.**
Alec M. Leslie
1330 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Martha A. Geer
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
Email: mgeer@milberg.com

-and-

**VOZZOLO LLC**
Antonio Vozzolo
Andrea Clisura
345 Route 17 South
Upper Saddle River, NJ 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com
       aclisura@vozzolo.com

*Co-Class Counsel*