UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASHAYILA SAYERS, BRITTNEY TINKER, JENNIFER MONACHINO, KIMBERLY MULLINS, HILDA MICHELLE MURPHREE, and AMANDA JIMENEZ, on behalf of themselves and all others similarly situated,<br><br>                           Plaintiffs,<br><br>        v.<br><br>ARTSANA USA, INC.<br><br>                           Defendant. | Case No. 7:21-cv-07933-VB<br><br>Hon. Vincent L. Briccetti |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Dated: October 17, 2023

**BURSOR & FISHER, P.A.**
Alec M. Leslie
1330 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Martha A. Geer
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
Email: mgeer@milberg.com

-and-

**VOZZOLO LLC**
Antonio Vozzolo
345 Route 17 South
Upper Saddle River, NJ 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com

*Co-Class Counsel*

# **TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATMENT ................................................................................................1

STATEMENT OF FACTS .......................................................................................................1

ARGUMENT .............................................................................................................................2

    I.      Artsana's Request for Relief Violates Local Rule 7.1(b) ............................2

    II.     The Court Lacks Authority to Revise the Parties' Settlement .....................3

    III.    Granting Artsana's Requested Relief Would Violate the Class Members'
          Due Process Rights ........................................................................................4

    IV.    The Court Should Not Defer Final Approval of the Settlement ..................6

CONCLUSION .......................................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Advanced Battery Techs., Inc. Secs. Lit.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ...................................................................................4

*Bartosiewicz v. Nelsen*,
   2021 WL 4451445 (W.D.N.Y. Sept. 29, 2021) ..............................................................3

*Bennett v. Boyd Biloxi, LLC*,
   2016 WL 3746658 (S.D. Ala. July 8, 2016) ..................................................................4

*Brown v. Sega Amusements, U.S.A., Inc.*,
   2015 WL 1062409 (S.D.N.Y. Mar. 9, 2015) .................................................................7

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir.1981) ..........................................................................................7

*Dahingo v. Royal Caribbean Cruises, Ltd.*,
   312 F. Supp. 2d 440 (S.D.N.Y. 2004) ............................................................................4

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007) .................................................................................7

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*,
   236 F. Supp. 2d 445 (E.D. Pa. 2002) ...........................................................................10

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ..........................................................................................3

*Evans v. Jeff D.*,
   475 U.S. 717 (1986) ......................................................................................................3

*Hecht v. United Collection Bureau Inc.*,
   691 F.3d 218 (2d Cir. 2017) ..........................................................................................5

*Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC*,
   2019 WL 7195309 (W.D.N.Y. Aug. 29, 2019) .............................................................4

*Lea v. Tal Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ...............................................................9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 206 (1950) ......................................................................................................5

*In re Nissan Radiator/Transmission Cooler Litig.*,
  2013 WL 4080946 (S.D.N.Y. May 30, 2013) (Briccetti, J.) ....................................................4

*Oladapo v. Smart One Energy, LLC*,
  2017 WL 5956907 (S.D.N.Y. Nov. 9, 2017) ........................................................................7

*In re PPDAI Grp. Inc. Sec. Litig.*,
  2022 WL 198491 ................................................................................................................10

*Ramirez v. HB USA Holdings, Inc.*,
  No. EDCV 20-1016-JGB (May 2, 2022) ..............................................................................9

*Stinson v. City of New York*,
  256 F. Supp. 3d 283 (S.D.N.Y. 2017) ..................................................................................6

*In re Warner Commc'ns Sec. Litig.*,
  798 F.2d 35 (2d Cir. 1986) ...................................................................................................3

*Weber v. Gov't Emps. Ins. Co.*,
  2009 WL 2496811 (D.N.J. Aug. 11, 2009) ..........................................................................5

*Whitlock v. FSL Mgmt., LLC*,
  843 F.3d 1084 (6th Cir. 2016) ..............................................................................................1

*Zink v. Niagara Bank, N.A.*,
  155 F.Supp.3d 297 (W.D.N.Y. 2016) ...................................................................................5

**Rules**

Local Rule 7.1(b) .............................................................................................................2, 3

Federal Rule of Civil Procedure 7(b)(1) ................................................................................2

Federal Rule of Civil Procedure 23(e) ...............................................................1, 3, 7, 9, 10

**Other Authorities**

*Viral Class Actions Offer Good (and Bad) News for Plaintiffs' Firms*, LexisNexis Legal
  Insights (Nov. 4, 2019), https://www.lexisnexis.com/community/insights/legal
  /b/thought-leadership/posts/viral-class-actions-offer-good-and-bad-news-for-
  plaintiffs-firms ......................................................................................................................8

**PRELIMINARY STATEMENT**

Without addressing any of the Rule 23(e) requirements or the Second Circuit's *Grinnell* factors, Artsana seeks to defer final approval of the settlement it agreed to after negotiating the terms for more than a year. Contrary to decades of authority, Artsana also asks the Court to re-write the Parties' Settlement Agreement and dramatically shorten the agreed-upon claims period established in that Agreement. Artsana insists on ending the claims period immediately and, consequently, without notice to the Class Members. To justify its literally unprecedented request, Artsana points to the fraudulent claims being filed—even though the evidence it relies on shows that the fraud is being detected and remedied. Indeed, Artsana even proclaims: "The fraud can easily be seen . . . ." ECF 84 at 13.

Artsana's lack of authority to support its demand that the Court "stop the claims period immediately" and defer final approval, ECF 84 at 2, is hardly surprising. As longstanding authority establishes, (1) a court at the final approval stage cannot rewrite the parties' settlement agreement, (2) shortening the agreed-upon claims period wrongfully only benefits Artsana and not the class as a whole, and (3) fraudulent claims are appropriately addressed by the Parties and the Court during the claims administration period rather than during final approval. As the Sixth Circuit has emphasized, "the court-approval mechanism contained in Rule 23(e) is designed to protect absent class members and other non-parties to the litigation," *not* defendants who "agreed to an unfavorable settlement offer." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1094–95 (6th Cir. 2016). "[I]t would be perverse to the aims of Rule 23(e) to employ it in such a way as to rescue a litigating party from a bargain poorly struck." *Id.* at 1095.

**STATEMENT OF FACTS**

When opposing final approval of the Parties' Settlement, Artsana only references the

Settlement Agreement in passing. The Parties' Agreement is a claims-made settlement with no cap on the amount that Artsana must pay, no limit on the number of booster seats for which claims may be made by one household, and an agreed-upon claims period extending 60 days after final approval of the settlement. *See* Geer Declaration in Support of Final Approval, Ex. 1 ¶¶ 8, 46, 47.

The contractual provisions pertinent to Artsana's Response include:

- The "Bar Date" by when class members' claim forms must be received is 60 days after the Court's entry of the final approval order and final judgment. Ex. 1 ¶ 5. The "Claims Period" continues through the Bar Date." *Id.* ¶ 8.

- Angeion Group, as the Claims Administrator, is responsible for "reviewing[] and approving of claims made by Claimants" in accordance with protocols set forth in the Settlement. *Id.* ¶¶ 34, 80, 81, Ex. F.

- Angeion may reject a Claim Form because, among other reasons, "[t]he Claim Form appears to be fraudulent." *Id.* ¶ 85(e).

- Any Class Member who neither seeks exclusion nor files a Claim Form will still "*be bound together with all Class Members by all of the terms of this Stipulation of Settlement*," including a release of Artsana. *Id.* ¶ 84 (emphasis added); *see also* ¶ 89.

- Angeion has authority to determine, after consultation with Class Counsel and Artsana's Counsel, whether to allow a Class Member to cure a deficient Claim Form; Class Members may contest rejection of their Claim Form; and if the Parties cannot agree whether to allow the claim, Angeion may assess the disputed claim's validity. *Id.* ¶ 87.

- Prior to final approval, the Settlement "may be amended, modified, or expanded *by written agreement of the Parties* and approval of the Court[.]" Ex. 1 ¶ 112 (emphasis added).

In addition, Artsana is only allowed to rescind the Settlement Agreement if more than 500 Class Members opt out of the Settlement. *Id.* ¶ 107. Only three Class Members requested exclusion, and no Class Member has objected to the Settlement. ECF 60 ¶¶ 31-32.

## ARGUMENT

**I.     ARTSANA'S REQUEST FOR RELIEF VIOLATES LOCAL RULE 7.1(b).**

Local Rule 7.1(b) states that "an opposing party who seeks relief that goes beyond the denial of [a] motion shall comply with L.R. 7.1(a)(1)," which requires the filing of a notice of

2

motion. *See also* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). Here, Artsana asks the Court to "close the claims period immediately" and to "defer its consideration of final approval until the close of the claims period." ECF No. 84 at 23. Those requests seek affirmative relief by asking the Court to re-write the terms of the settlement. Artsana's brief is thus procedurally improper under L.R. 7.1(b) since it did not file a notice of motion. *See Bartosiewicz v. Nelsen*, 2021 WL 4451445, at \*8 (W.D.N.Y. Sept. 29, 2021) (denying as procedurally improper alternative requests for relief, made in opposition papers, because they did not comply with the requirement that all motions be accompanied by notice outlining relief sought).[1]

## II.   THE COURT LACKS AUTHORITY TO REVISE THE PARTIES' SETTLEMENT.

It is well established that a court may not modify settlement terms, but instead must accept or reject the settlement as a whole. As the Supreme Court has held, "Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial *does not authorize the court to require the parties to accept a settlement to which they have not agreed.*" *Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986) (emphasis added). Thus, "it is not a district judge's job to dictate the terms of a class settlement; he should approve or disapprove a proposed agreement as it is placed before him and should not take it upon himself to modify its terms." *In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) ("[T]here is a restricted, tightly focused role that Rule 23 prescribes for district courts, requiring

---

[1] Artsana's disregard of L.R. 7.1(b) is particularly prejudicial since, in support of its affirmative requests for relief, it submitted a declaration from a privately-retained claims administration consultant. Shortly before Plaintiffs filed their Motion for Final Approval, Artsana's counsel mentioned the existence of the consultant, but ignored, without explanation, Plaintiffs' request that Artsana provide them with the consultant's findings. Geer Decl., Ex. 2. Because Artsana hid its consultant's analysis until filing its responsive brief in violation of L.R. 7.1(b), Plaintiffs were denied the opportunity to respond to Artsana's affirmative requests for relief in an opposition brief as opposed to a reply brief.

them to act as fiduciaries for the absent class members, but that does not vest them with broad powers to intrude upon the parties' bargain."); *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *12 (S.D.N.Y. May 30, 2013) (Briccetti, J.) (a court reviewing a class action settlement "serves as a 'fiduciary' to protect the interest of absent class members, but even in this role, it is not the Court's prerogative to pick and choose terms of the settlement, redact portions of the agreement, or substitute terms more to the Court's liking." (cleaned up)); *Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC*, 2019 WL 7195309, at *3 (W.D.N.Y. Aug. 29, 2019) ("The proposed settlement must stand or fall in its entirety, and I may not delete, modify or substitute its terms." (cleaned up)).

Artsana cites no authority that would allow this Court to modify the Settlement Agreement, let alone the Claims Period that Artsana contractually agreed to with the advice of sophisticated counsel. Indeed, similar attempts have been denied. *See, e.g.*, *Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 445-46 (S.D.N.Y. 2004) (refusing to extend deadline to file claim because "extension of the agreed upon deadline would be a material change in the agreement detrimental to the defendants").

**III.   GRANTING ARTSANA'S REQUESTED RELIEF WOULD VIOLATE THE CLASS MEMBERS' DUE PROCESS RIGHTS.**

Artsana's demand to close the claims period "immediately" also violates absent Class Members' Due Process rights. Artsana's request for "immediate" closure appears to anticipate no notice to Class Members and no opportunity for any further filing of claims. ECF 84 at 2. Proper notice of a class action settlement, consistent with Due Process, includes notice of "all pertinent deadlines[.]" *In re Advanced Battery Techs., Inc. Secs. Lit.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014). Unquestionably, notice of the deadline to file a claim is a pertinent deadline. *Bennett v. Boyd Biloxi, LLC*, 2016 WL 3746658 (S.D. Ala. July 8, 2016) (concluding due process satisfied where notice

4

"apprises class members, with adequate precision, of the opening and closing dates for submitting claims"). Terminating a Claims Period without advance notice and, as a result, allowing Class Members no opportunity to file a claim cannot be reconciled with the Due Process clause.

However, Artsana inconsistently states on the last page of its brief that "[t]he parties can update the settlement website with the new deadline." ECF 84 at 23. Even assuming Artsana did not mean "immediately" and would allow time for Class Members to still file claims, it has stated that, apart from the settlement website, it would only agree to give additional notice to Class Members who registered their booster seats but had not yet made a Claim—it flatly refuses to provide any media notice because it would cost $250,000.[2] ECF No. 84 at 23.

Given that Artsana sold more than 870,000 booster seats covered by the Settlement and the number of class members with registered booster seats was only "over 100,000," *id.* at 6, Artsana is asking the Court to allow hundreds of thousands of class members to be left believing that they have until December or January to file a Claim Form unless they happen to look at the website prior to any new deadline. This notice would be just a "mere gesture" towards providing class members with Due Process. *Hecht v. United Collection Bureau Inc.*, 691 F.3d 218, 224 (2d Cir. 2017) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 206, 314-15 (1950)). "Since the court acts as a fiduciary serving as a guardian of the rights of absent class members, it must exercise its independent judgment to protect the interests of class absentees." *Zink v. Niagara Bank, N.A.*, 155 F.Supp.3d 297, 308 (W.D.N.Y. 2016) (cleaned up). Here, even if the Court were free to disregard the Parties' contract, protecting the due process rights of absent class members means denying Artsana's request to close the claims period immediately without notice to the entire class. *See Weber v. Gov't Emps. Ins. Co.*, 2009 WL 2496811, at *4 (D.N.J. Aug. 11, 2009)

---

[2] One wonders how much Artsana was willing to spend on a private consultant to duplicate Angeion's work in short order.

5

(cited by Artsana) (after concluding that class notice recipients may not have understood the notice, ordering additional notice because of "the importance of affording non-responding class members the opportunity to file claims and participate in the settlement, or decline to do so").[3]

## IV. THE COURT SHOULD NOT DEFER FINAL APPROVAL OF THE SETTLEMENT.

There is no need to defer final approval of the Settlement. It is "neither improper nor premature for the Court to rule on the fairness of the Settlement" prior to the close of the claims period; "[i]t is the absence of significant exclusions or objections that courts in this Circuit regularly consider . . . ." *Stinson v. City of New York*, 256 F. Supp. 3d 283, 290 (S.D.N.Y. 2017) (cleaned up). Consequently, the mere fact that the claims period in this case continues after the final approval hearing is not a basis for denying final approval. And the lack of any objections together with the fact that only three Class Members requested exclusion, ECF 60 ¶¶ 31-32, warrants granting final approval, especially because Artsana has identified no recognized basis for denying final approval.

None of the cases Artsana cites support terminating a claims period or deferring final approval based on the existence of fraudulent claims that are being caught by Angeion and potentially identified by Artsana's private consultant. The fraud is being detected through new, cutting-edge technology developed by Angeion called AngeionAffirm, which "is the first and only comprehensive solution to identify fraud in real time based on both state-of-the-art technology and analysis of over a decade of historical claims data." Weisbrot 10/16/2023 Decl. ¶ 4. It is, however, a process. *Id.* ¶¶ 5-6. The District Court for the Western District of Texas has specifically addressed

---

[3] By seeking to close the claims period immediately, which currently runs until at least January 7, 2024, Defendant seeks to artificially suppress the number of potentially valid claims in this case. This is particularly concerning as there is typically an increase in claims filing near the deadline to submit Claim Forms. Declaration of Steven Weisbrot (dated Oct. 16, 2023) ¶ 6 (hereinafter "Weisbrot 10/16/2023 Decl.").

whether the potential for fraud is grounds for denying final approval and bluntly held:

> [A]n objection that the settlement fails to protect against fraudulent filers, or that the agreement fails to provide a method to verify the information provided by the filers, is not a basis on which to reject the settlement. *Such objections do not seek to protect class members, but rather attempt to protect [the defendant] from paying invalid claims. . . . 'A defendant who negotiates a settlement, however, does not need the court to act in a fiduciary role to protect its interests.'* [*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 225 (5th Cir.1981)]. Therefore, this type of an objection does not support a finding that the settlement is unfair, unreasonable or inadequate.

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 313-14 (W.D. Tex. 2007) (emphasis added). Artsana cites no authority to the contrary, and we have found none.[4]

Because Artsana's main focus is on terminating the Claims Period, it is apparent that Artsana's arguments have nothing do with whether the Settlement is fair, reasonable, or adequate under Rule 23, but rather they are a tactic to have the Court rescue it from its strategic decision to enter into a claims-made settlement without any caps by immediately stopping more claims from being filed. It appears Artsana gambled in hopes that this case would revert to the consistently low claims rate seen in claims-made settlements in consumer protection cases. *See Oladapo v. Smart One Energy, LLC*, 2017 WL 5956907, at *13 (S.D.N.Y. Nov. 9, 2017), *report and recommendation adopted*, 2017 WL 5956770 (S.D.N.Y. Nov. 30, 2017) (noting that with claims made settlements, response rates of 10% or less are common). In fact, based on Artsana's brief, if the Court rewrites the Settlement Agreement and terminates the Claims Period more than two months early, then Artsana will have achieved what it gambled for. According to Artsana, in an

---

[4] *Brown v. Sega Amusements, U.S.A., Inc.*, 2015 WL 1062409, at *3 (S.D.N.Y. Mar. 9, 2015) is the only case Artsana cited that even slightly addresses its fraud argument. However, *Brown* involved denial of preliminary approval where the parties had not proposed any objective means to determine class membership, which created the potential for fraudulent claims, and the settlement included arbitrary payment amounts unrelated to any injury. Here, after extensive negotiations, the Parties agreed to specific tests designed to confirm the purchase of an eligible booster seat. The concern posed in this case is programmatic fraud, as Artsana acknowledges, and Angeion has strategies and technology to address that form of fraud, as it has confirmed to this Court. Weisbrot 10/16/2023 Decl. ¶¶ 3-6.

7

email that was never disclosed to Plaintiffs (dated a month after the Court granted preliminary approval), Angeion projected a claims rate of less than 7% and a maximum liability of $1.5 million. ECF No. 85-3; ECF No. 84 at 10. In its brief, Artsana announces that based on Angeion's updated fraud analysis, "the claims rate now is around 7%." ECF No. 84 at 15.

That claims rate may well change during the two months that remain in the Claims Period. Contrary to Artsana's unsubstantiated statements about "those few honest claimants who . . . wish to wait until the very last day to submit their claims," ECF No. 84 at 22, Angeion explains that there is typically a significant increase in claims filing near the deadline to submit claim forms. Weisbrot 10/16/2023 Decl. ¶ 6.[5] Consequently, by cutting short the Claims Period by more than two months, it is likely that Artsana will avoid significant additional valid claims and maintain its 7% claims rate goal. In fact, Artsana acknowledges that "[k]eeping the claims period open and approving the settlement now will only needlessly increase Artsana's expenses . . . ." ECF 84 at 4.[6]

Moreover, since Artsana's counsel should have been aware, prior to submission of the Settlement Agreement to the Court, of the increasing fraud in "no proof of purchase" claims,[7] the "fraud" argument may have been a strategy from the beginning to limit Artsana's liability should

---

[5] Although Artsana deceptively asserts based on a ClaimScore analysis that "the overwhelming majority of valid claims were submitted back before April," ECF No. 84 at 21, that simply means that of all the valid claims submitted to date, ClaimScore believes that the majority were submitted before April. It does not mean, as Artsana later proclaims (pointing to the ClaimScore analysis) that "virtually all of [the actual class members] have already made claims[.]" *Id.* Taking the numbers Artsana presented, ECF No. 84 at 15, only claims for 61,582 booster seats made as of July 2023 are preliminarily valid, leaving roughly 800,000 booster seats that Artsana sold during the Class Period, ECF No. 84 at 1, unaccounted for.

[6] Artsana's claim that denial of its request will harm class members who have filed valid claims is disingenuous. Artsana reasons that a denial of its request will cause payments to be delayed to class members who have already filed valid claims. The distribution of cash payments is governed by the Settlement Agreement and cannot be expedited without further improper amendment of the Settlement Agreement. *See* Ex. 1 ¶ 94.

[7] *See Viral Class Actions Offer Good (and Bad) News for Plaintiffs' Firms*, LexisNexis Legal Insights (Nov. 4, 2019), https://www.lexisnexis.com/community/insights/legal/b/thought-leadership/posts/viral-class-actions-offer-good-and-bad-news-for-plaintiffs-firms.

claims be higher than expected. Although Artsana's counsel fully partnered with Plaintiffs' counsel in crafting the "no proof of purchase" questions designed as verification of a booster seat purchase, on March 9, 2023 (only one day after Class notice began, and two weeks before the media notice began), Artsana's counsel emailed:

> We and our client continue to have serious concerns about fraud. We understand there has been a significant uptick in fraudulent claims in these kinds of settlements, particularly since the time period when the qualifying conditions were negotiated months ago. So we need to keep a close eye on this, as I am sure Plaintiffs agree, and I know Steve and his team do. *It would be very unfortunate to have done all this work only for fraud to upend the whole settlement.*

Geer Final Approval Decl., Ex. 3 (emphasis added). Tellingly, a year earlier, Artsana's counsel made a similar fraud argument at the final approval hearing in another consumer product case, *Ramirez v. HB USA Holdings, Inc.*, No. EDCV 20-1016-JGB (May 2, 2022), although the District Court responded that the issue was irrelevant to a final approval decision. Geer Final Approval Decl., Ex. 4 at pp. 6-10, 12-14. That is the case here too.

Although Artsana fails to address the specific requirements of Rule 23(e), Rule 23(e)(2)(C)(ii) does require the Court to consider "the effectiveness of any *proposed* method of distributing relief to the class, including the method of processing class-member claims[.]" (Emphasis added). The Settlement Agreement requires that Angeion review the Claim Forms in accordance with the Parties' agreed-upon protocol. Angeion may reject claims for a number of specified reasons, including because a claim appears fraudulent. Angeion also has authority to determine whether to allow a Class Member to cure a deficiency after consulting with the Parties' Counsel, Class Members may contest any rejection of their claim, and if the Parties' Counsel cannot agree whether to allow the claim, Angeion has the discretion to decide whether or not to accept it. (Ex. 1 ¶¶ 34, 80, 81, 85, 87; Weisbrot 10/16/2023 Decl. ¶¶ 7-10). This process is more than adequate to meet Rule 23(e)(2)(C)(ii), as other courts have found. *See Lea v. Tal Educ. Grp.*,

9

2021 WL 5578665, at *11 (S.D.N.Y. Nov. 30, 2021) (finding method of processing claims effective when the Claims Administrator was required to "process the claims under Lead Counsel's guidance, allow Claimants an opportunity to cure claim deficiencies or request the Court to review their claim denial, and, lastly, mail Authorized Claimants their pro rata share of the Net Settlement Fund …, after Court approval"); *accord In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *13 (E.D.N.Y. Jan. 21, 2022.

Since Artsana has made no other showing that final approval is not warranted under Rule 23(e) and no Class Member has objected, the Court should grant final approval. Doing so does not mean that the issues Artsana raises will be ignored. As Rule 23(e)(2)(C)(ii) anticipates, the claims processing stage occurs after final approval. *Angeion's fraud identification process is ongoing and will continue through the claims processing stage with the Settlement Agreement providing ample authority to address issues.* See Weisbrot 10/16/2023 Decl. ¶¶ 4-6.[8] In addition, Plaintiffs welcome further discussions during this stage regarding deficiency processes. If the Parties are unable to reach agreement on how to resolve any issues during this phase under the Settlement, then, at that time, they can address the issues with the Court. *See In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 236 F. Supp. 2d 445, 461 (E.D. Pa. 2002) ("This court is responsible for overseeing the settlement of this massive class action, particularly to make sure that the Settlement Agreement, as approved by this court, is properly enforced.").

## **CONCLUSION**

For all the above reasons and those in Plaintiffs' opening brief, Plaintiffs request that the Court grant Plaintiffs' Motion for Final Approval.

---

[8] With respect to the multiple purchases of booster seats that Artsana finds so suspicious, Angeion has ample authority under the Settlement Agreement to investigate those claims and determine whether to reject the claims in full or in part. We note that one of the class representatives purchased eight booster seats, ECF No. 39 ¶ 111, and a family with two children in booster seats and two cars would logically need four.

10

Dated:  October 17, 2023              Respectfully submitted,

By: /s/ Martha A. Geer

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Martha A. Geer
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
Email: mgeer@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Gregory F. Coleman (admitted *pro hac vice*)
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0080
Email: gcoleman@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Jonathan B. Cohen (admitted *pro hac vice*)
3833 Central Ave.
St. Petersburg, FL 33713
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
Email:  jcohen@milberg.com

**BURSOR & FISHER, P.A.**
Alec M. Leslie
1330 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

-and-

11

**VOZZOLO LLC**
Antonio Vozzolo
Andrea Clisura
345 Route 17 South
Upper Saddle River, NJ 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com
           aclisura@vozzolo.com

*Co-Class Counsel*