UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASHAYILA SAYERS, BRITTNEY TINKER, JENNIFER MONACHINO, KIMBERLY MULLINS, HILDA MICHELLE MURPHREE, and AMANDA JIMENEZ, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>ARTSANA USA, INC.<br><br>      Defendant. | Case No. 7:21-cv-07933-VB<br><br>Hon. Vincent L. Briccetti |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARDS**

Dated:  October 17, 2023

**BURSOR & FISHER, P.A.**
Alec M. Leslie
1330 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Martha A. Geer
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
Email: mgeer@milberg.com

-and-

**VOZZOLO LLC**
Antonio Vozzolo
345 Route 17 South
Upper Saddle River, NJ 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com

*Co-Class Counsel*

**TABLE OF CONTENTS**

**PAGE(S)**

ARGUMENT ..................................................................................................................................1

I. THERE IS NO BASIS TO DEFER APPROVAL OF THE SETTLEMENT OR REQUESTED ATTORNEYS' FEES ...............................................................................1

II. BOTH THE SETTLEMENT AGREEMENT AND THE LAW SUPPORT PLAINTIFFS' FEE REQUEST .......................................................................................2

    A. Artsana Agreed To Pay Attorneys' Fees Directly To Class Counsel, As Well As $1,500 Incentive Awards To Plaintiffs ...................................................2

    B. Attorneys' Fees Are Warranted By The Creation Of A Quantifiable Fund For The Common Benefit Of Class Members .......................................................4

III. PLAINTIFFS' REQUESTED FEE IS REASONABLE UNDER ANY METHOD ...........7

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Aetna Cas. & Sur. Co. v. Liebowitz*,
   730 F.2d 905 (2d Cir. 1984) ................................................................................................. 3

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
   421 U.S. 240 (1975) ............................................................................................................... 3

*Bodon v. Domino's Pizza, Inc.*,
   2015 U.S. Dist. LEXIS 82039 (E.D.N.Y. June 4, 2015) ....................................................... 8

*Bodon v. Domino's Pizza, Inc.*,
   2015 U.S. Dist. LEXIS 81879 (E.D.N.Y. June 23, 2015) ..................................................... 6

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .......................................................................................................... 4, 5

*Cunningham v. Suds Pizza, Inc.*,
   290 F. Supp. 3d 214 (W.D.N.Y. 2017) ................................................................................. 5

*Fleisher v. Phx. Life Ins. Co.*,
   2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sep. 9, 2015) ...................................................... 6

*Hart v. BHH, LLC*,
   2020 U.S. Dist. LEXIS 173634 (S.D.N.Y. Sep. 22, 2020) .................................................... 5

*In re Nig. Charter Flights Litig.*,
   2011 U.S. Dist. LEXIS 155180 (E.D.N.Y. Aug. 25, 2011) ................................................... 6

*In re Nig. Charter Flights Litig.*,
   2012 U.S. Dist. LEXIS 72154 (May 23, 2012) ..................................................................... 6

*Krishnan v. Cutler Grp., Inc.*,
   171 A.3d 856 (2017) .............................................................................................................. 3

*Long v. HSBC USA Inc.*,
   2016 U.S. Dist. LEXIS 124199 (S.D.N.Y. Sep. 13, 2016) ............................................... 9, 10

*Masters v. Wilhelmina Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007) .......................................................................................... 2, 5, 6

*McGreevy v. Life Alert Emergency Response, Inc.*,
   258 F. Supp. 3d 380 (S.D.N.Y. 2017) ................................................................................... 7

*McLaughlin v. IDT Energy*,
   2018 U.S. Dist. LEXIS 128347 (E.D.N.Y. July 30, 2018) .................................................... 6

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ............................................................................................................... 4

*Parker v. Time Warner Entm't Co., L.P.*,
    631 F. Supp. 2d 242 (E.D.N.Y. 2009) ............................................................................. 5, 7, 8

*Savoie v. Merchs. Bank*,
    84 F.3d 52 (2d Cir. 1996) ..................................................................................................... 4

*Simerlein v. Toyota Motor Corp.*,
    2019 U.S. Dist. LEXIS 96742 (D. Conn. June 10, 2019) ..................................................... 6

*Sprague v. Ticonic Nat. Bank*,
    307 U.S. 161 (1939) ............................................................................................................. 4

*Torres v. Gristede's Operating Corp.*,
    519 F. App'x 1 (2d Cir. 2013) ........................................................................................... 6, 8

*Van Gemert v. Boeing Co.*,
    590 F.2d 433 (2d Cir. 1978) ................................................................................................. 8

*Velez v. Novartis Pharm. Corp.*,
    2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ..................................................................... 7

*Zink v. First Niagara Bank, N.A.*,
    2016 U.S. Dist. LEXIS 179900 (W.D.N.Y. Dec. 29, 2016) ..................................... 5, 6, 7, 8

**STATUTES**

N.Y. Gen. Bus. Law §§ 349(h), 350-e(3) ...................................................................................... 3

**OTHER AUTHORITIES**

Newberg on Class Actions (5th ed.) ............................................................................................... 5

Under the Settlement Agreement, Defendant agreed to pay attorneys' fees and expenses in an amount to be determined by the Court. The Court's equitable authority to award fees based on a percentage or lodestar approach is well established. This Court should award Class Counsel's requested fee and Plaintiffs' incentive awards, each of which are reasonable by any measure.

## ARGUMENT

**I.  THERE IS NO BASIS TO DEFER APPROVAL OF THE SETTLEMENT OR REQUESTED ATTORNEYS' FEES**

The Settlement provides an outstanding result. There is a straightforward mechanism for every Class Member to claim a cash benefit—$50 for each product with proof of purchase and $25 each when Class Members without proof of purchase confirm basic purchase details. This structure recognizes consumers rarely retain proof of purchase for retail products and it does not exclude such consumers from recovery. Instead, Class Counsel worked closely with Angeion to ensure robust notice and a suitable claims process to allow every Class Member an opportunity to file a claim. *See* Decl. of Antonio Vozzolo filed herewith ("Vozzolo Decl."), ¶¶ 31-36.

Defendant attempts to blame Class Counsel for high numbers of claims generated by "bots" and other programmatic fraud. There is no evidence that the agreed-upon claim form has led to fraud. *Id.*, ¶¶ 41-42. Rather, characteristics that make this Settlement an excellent result for the Class have also made it appealing to bad actors. But the process of rooting out fraudulent claims is not unmanageable and Artsana does not claim otherwise. Rather, the procedures put in place in the Settlement Agreement, the Claims Administration Protocol, and the Angeion Declarations including the one filed today, illustrate that the fraud can be and is being identified. Importantly, fraudulent claims will not reduce the claims of legitimate Class Members as there is no settlement cap nor *pro rata* adjustments.

The Settlement Agreement terms and the reasonableness of the requested fee can be assessed now. Even Artsana, which takes the extreme position that Class Counsel is due no fee and goes to great lengths to portray the Settlement as having as little value as possible, estimates over $2.2 million in cash benefits to be paid to Class Members once claims are processed. Dkt. 78 ("Def's Mem.") at 19. This means that even using Defendant's estimated figure, Plaintiffs' fee would be only 44% of the Settlement value when calculated using payments to be made to Class Members.[1] But this percentage <u>vastly</u> undervalues the Settlement. When properly valued based on "total funds made available, whether claimed or not," *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007), Class Counsel's requested fee is just 9.1%. *See* Dkt. 62 ("Pls' Mem.") at 9; Vozzolo Decl. ¶¶ 4-6. Under either measure, the Court has the requisite information to assess the reasonableness of fees under the *Goldberger* factors.

## II. BOTH THE SETTLEMENT AGREEMENT AND THE LAW SUPPORT PLAINTIFFS' FEE REQUEST

### A. Artsana Agreed To Pay Attorneys' Fees Directly To Class Counsel, As Well As $1,500 Incentive Awards To Plaintiffs

Artsana's position that it cannot be made to pay attorneys' fees because there is no basis to recover fees from Artsana rather than the Class is contrary to the plain language of the Settlement Agreement, where Artsana agreed to pay any Attorneys' Fees and Expenses awarded by the Court. Settlement, ¶¶ 59(d), 66, 68, 69. Class Members were notified accordingly via language approved by Artsana. Class Notice § 20 ("How will the lawyers be paid? . . . by Artsana"). Defendant was well aware when it agreed to pay Class Counsel's fees that the claims being settled provide multiple bases for awarding fees. In addition to well-established equitable grounds detailed below,

---

[1] Class Counsel calculated this percentage as follows: (1) the $2,209,375 Defendant estimates will be paid to Class Members (Def's Mem. at 19); (2) notice and administration expenses of $612,753.20 as of only July 31, 2023 (Dkt. 60, 8/28/23 Weisbrot Decl., ¶ 33); (3) incentive awards of $9,000; and (4) requested fees, costs and expenses of $2,250,000. Total: $5,081,128.20. $2,250,000/$5,081,128.20= 44.3%. *See* Vozzolo Decl., ¶ 21.

2

this litigation involves a mix of common law and statutory claims, some of which have fee shifting provisions.[2] Given its agreement to pay attorneys' fees, Artsana cannot now claim to be protected by the "American rule" against shifting fees to a losing party. Where Defendant voluntarily agreed to pay any attorneys' fees awarded as determined by the Court, the rationale of that rule does not apply.[3]

Defendant's argument, while contrary to the terms of the Settlement, is unfortunately consistent with other tactics, where it has attempted to subvert or re-write terms agreed to. Vozzolo Decl. ¶ 48. For example, although Artsana agreed to mediate attorneys' fees as part of the Settlement (Settlement ¶ 66), it has shown no intent to negotiate fees in good faith, opting instead to oppose attorneys' fees all together. *Id.* ¶¶ 43-47. This behavior is also consistent with its decision to now oppose Plaintiffs' request for modest incentive awards. Artsana's latest position that "there's [] no basis to award the requested $1,500 'incentive awards'" is also contrary to its Agreement and Second Circuit law. Indeed, the Notice agreed to by Artsana states "Subject to Court approval, **Artsana will also pay an incentive award not to exceed $1,500 to each of the six Class Representatives**…." Settlement Ex. E, Class Notice, § 6 ("What are the benefits of the Settlement?" (emphasis added)); Settlement ¶ 71 ("**Any Service Awards approved by the Court shall be paid by Artsana**…."). Artsana's last-minute attempt to avoid its negotiated, agreed-upon commitments should not be permitted.

---

[2] *See Krishnan v. Cutler Grp., Inc.*, 171 A.3d 856, 872 (2017) (attorneys' fees under Pennsylvania Unfair Trade Practice and Consumer Protection Law ("UTPCPL") may include time litigating both UTPCPL and common law claims given common underlying facts); N.Y. Gen. Bus. Law §§ 349(h), 350-e(3) ("The court may award reasonable attorney's fees to a prevailing plaintiff."); *Aetna Cas. & Sur. Co. v. Liebowitz*, 730 F.2d 905, 908 (2d Cir. 1984) ("[W]hen [Congress] desired to permit attorney's fees to …a plaintiff who does not litigate … through to trial, it …us[ed] such broad terms as … the "prevailing party."). There is no need to rely on such statutory fee shifting, given the firmly established equitable basis for a fee award here.

[3] *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 269 (1975), on which Artsana relies, did not involve a settlement and the Court's decision in that case not to "fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party" is of no relevance here.

3

     **B.     Attorneys' Fees Are Warranted By The Creation Of A Quantifiable Fund For The Common Benefit Of Class Members**

Artsana's assertion that there is no basis for Plaintiffs' fee request because the Settlement does not create a traditional "common fund" is contrary to rulings from the Supreme Court, the Second Circuit, and elsewhere, which recognize the equitable principle that a litigant is entitled to attorneys' fees where they "conferred a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392-94 (1970) (describing expansion of "metes and bounds of the [common fund] doctrine"); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 166-67 (1939) (when "a fund is for all practical purposes created for the benefit of others" the Court has the power to do equity as the particular facts demand); *see also Savoie v. Merchs. Bank*, 84 F.3d 52 (2d Cir. 1996).[4] This equitable rationale applies equally to this claims-made Settlement, where Plaintiffs have created substantial and quantifiable economic value for the Settlement Class.

In this case, there is a claims-made process where every Class Member has the right to claim a cash benefit upon submitting a valid claim form, whether they choose to exercise that right or not. Thus, for all practical purposes, a fund has been created for the benefit of an ascertainable class. "[I]t has repeatedly been recognized that [a claims-made] settlement is 'the functional

---

[4] *Savoie*, 84 F.3d at 59 ("[E]ven if the injunction is viewed as compelling the Bank to escrow its own funds, the circumstances of this case make that appropriate. Alternatively, … money is fungible . . . . The $500,000 now in escrow can be viewed as the remaining common fund money, and if the District Court finds a causal connection between the lawsuit and the benefit [], the Court can use this money to award attorney's fees.").

equivalent of a common fund settlement where the unclaimed funds revert to the defendant." *Zink v. First Niagara Bank, N.A.*, 2016 U.S. Dist. LEXIS 179900, at *19 (W.D.N.Y. Dec. 29, 2016) (quoting Newberg on Class Actions, §13:7 (5th ed.). "There is no meaningful distinction between a fund with a reversion provision and a defendant-paid-claims process . . . . In both cases, unclaimed funds wind up with the defendant." *Id.*

Unclaimed funds that wind up with Defendant are properly considered part of the benefit created for Class Members. In *Boeing*, the Supreme Court affirmed the Second Circuit (en banc), determining the common fund doctrine could apply even where funds were unclaimed and could revert to defendant: "To claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." 444 U.S. at 480. Likewise, the Second Circuit's decision in *Masters* instructs "[a]n allocation of fees by percentage should . . . be awarded on the basis of the total funds made available, whether claimed or not." *Masters*, 473 F.3d at 437. Defendant argues the many cases following this approach are all based on a "misinterpretation" of *Masters*, which involved a *cy pres* award. Def's Mem. at 17. But *Masters* reasoned "[t]he entire Fund, and not some portion [], is created through the efforts of counsel…." 473 F.3d at 437. Indeed, as in *Boeing* and "in both of the cases with which *Masters* 'side[d]' (473 F.3d at 437), the unclaimed funds *did* revert to the defendant." *Zink*, 2016 U.S. Dist. LEXIS 179900, at *19. *Masters* cannot be distinguished on that basis.[5] The weight of authority

---

[5] Cases such as *Hart* and *Cunningham* are unpersuasive for this reason. *Hart v. BHH, LLC*, 2020 U.S. Dist. LEXIS 173634, at *17 (S.D.N.Y. Sep. 22, 2020) (distinguishing *Masters* based on cy pres; reasoning benefit to class is determined by "number of claims submitted"); *Cunningham v. Suds Pizza, Inc.*, 290 F. Supp. 3d 214, 224 (W.D.N.Y. 2017) ("There is no Cy Pres …only a reversion clause and a clear sailing provision.").

The few cases cited by Defendant on this issue do not undermine the weight of authorities that apply *Masters* to claims-made settlements and award fees based on the full value of the benefit. Defendant cites *Parker v. Time Warner*

5

appropriately applies *Masters* when including unclaimed funds in determining the total settlement value.[6]  *See*, *e.g.*, *Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (calculating fee award "'on the basis of the total funds made available' … *i.e.*, as if it were a common settlement fund" (quoting *Masters*, 473 F.3d at 437); *Zink v. First Niagara Bank, N.A.*, 2016 WL 7473278, at *7-8 (W.D.N.Y. Dec. 29, 2016) (finding "weight of authority" holds that attorneys' fees should be based on the amount made available, not the amount actually claimed).

Consistent with these principles, the benefits created through Plaintiffs' efforts can be appropriately viewed as a common fund. Every Class Member has a right to share in the Settlement upon filing a valid claim for a quantified cash benefit, whether or not they exercise it. *Simerlein v. Toyota Motor Corp.*, 2019 U.S. Dist. LEXIS 96742, at *68 (D. Conn. June 10, 2019) (treating claims-made settlement as fund where valuation provided "a clear denominator against which the fees can be assessed in applying the percentage method"); *Adler v. Bank of America, N.A.*, No. 7:13-cv-04866-VB, Dkt. 128 (Fairness Transcript 8:12-16, 14:20-25, 19:9-13) (S.D.N.Y. July 20, 2016) (Briccetti, J.) (approving fee on percentage of aggregate value, though fees would be paid separately from claims). Defendant understood when settling that Plaintiffs' creation of these benefits would entitle them to a fee under this equitable doctrine. Its agreement to pay Class

---

*Entm't Co., L.P.*, 631 F. Supp. 2d 242 (E.D.N.Y. 2009), as "affirmed," but the Second Circuit dealt only with an objector's entitlement to fees based on lodestar. *Bodon* was a report and recommendation where on adoption, the Court noted it was "not required to review the factual or legal conclusions" where no objections were made. *Bodon v. Domino's Pizza, Inc.*, 2015 U.S. Dist. LEXIS 81879, at *3 (E.D.N.Y. June 23, 2015). *McLaughlin v. IDT Energy*, 2018 U.S. Dist. LEXIS 128347, at *48 (E.D.N.Y. July 30, 2018), was also a report and recommendation that the court adopt the lodestar method given the Magistrate's perceived uncertainty over whether *Masters* governed.

[6] *See* Pls' Mem. at 8-9; *Fleisher v. Phx. Life Ins. Co.*, 2015 U.S. Dist. LEXIS 121574, at *55-56 n.10 (S.D.N.Y. Sep. 9, 2015) ("[C]ourts in the Second Circuit agree that the entire-fund rule applies even if some portion of the unclaimed fund reverts"); *In re Nig. Charter Flights Litig.*, 2011 U.S. Dist. LEXIS 155180, at *18-19 (E.D.N.Y. Aug. 25, 2011), *report & recommendation adopted*, 2012 U.S. Dist. LEXIS 72154 (May 23, 2012).

6

Counsel's fee directly does not negate this equitable basis—rather, Defendant's agreement to pay any such fees in an amount to be determined by the Court is another benefit accruing to the Class.[7]

### III. PLAINTIFFS' REQUESTED FEE IS REASONABLE UNDER ANY METHOD

This Court has the discretion to base fees on a percentage of the benefit approach or Class Counsel's lodestar. Under either approach, the requested fee is reasonable and warrants approval.

*First*, the requested fee is reasonable viewed as a percentage of aggregate value. Plaintiffs seek just 9.1% of the total monetary benefits made available. Pls' Mem. at 9. *Masters* explained that looking to the full value does not create a "windfall" because the percentage can be adjusted up or down. *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 387-89 (S.D.N.Y. 2017), relied on by Defendant (Def's Mem. at 16, 18), did just that. The Court applied *Masters* and calculated a fee based on the full value of the claims-made settlement, and determined a decrease of just "5% of the baseline fee percentage" was appropriate given the reversionary nature of the fund. Here, 9.1% is reasonable. *See Velez v. Novartis Pharm. Corp.*, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("a standard fee in complex class action[s] ... where plaintiffs' counsel have achieved a good recovery…, ranges from 20 to 50 percent of the gross settlement benefit" and "30 percent or greater"). Plaintiffs' percentage conservatively calculates the monetary benefits[8] and Class Members' rights to share in the recovery are not a "fiction" where all have a meaningful opportunity to make a claim. Vozzolo Decl. ¶¶ 26-36. Represented by experienced counsel, Artsana settled without requiring a cap on total valid claims or costs and

---

[7] *See, e.g.*, *Zink*, 2016 U.S. Dist. LEXIS 179900, at *20-21 (even if indirectly, "separately-paid attorney's fees [are] a 'benefit to the class'" because "if the fees were not separately paid, then they would be paid out of the amounts otherwise available to the class, thereby diminishing the class recovery.").

[8] It is based on the lower $25 benefit and includes administrative expenses incurred only as of July 31, 2023 when under the Settlement the claims period continues to run for 60 days after final approval. *Cf. Parker*, 631 F. Supp. 2d at 267 (many benefits were "service coupons" with no reliable evidence on value –"The Court has been given only a few pieces of information from which it could infer the benefit mix chosen by those Class Members making claims, and finds the valuations … to be overstated and unreliable.").

agreed to pay any attorneys' fees awarded by the Court, in an amount not to exceed $2,250,000. *See id.*, ¶ 46. Awarding fees based on the full value of the Settlement is appropriate.

**Second**, the total benefit being paid directly to the Class supports the fee request. *Van Gemert v. Boeing Co.*, 590 F.2d 433, 441 (2d Cir. 1978) (en banc), *aff'd*, 444 U.S. 472 (1980) ("To be sure, in determining fair compensation the judge may take into account the number of plaintiffs likely to claim [] but the claimed portion of the fund does not place a ceiling on the fee."). Even using Defendant's proposed estimate—based on a 10% claims rate where approximately $2,209,375 would be paid to the Class—Plaintiffs' requested fee would be only 44.3% of the benefits actually paid, including claims paid, notice and administrative expenses as of July 2023, and attorneys' fees and costs. Vozzolo Decl., ¶ 21. Each of these components is a benefit achieved for the Class under the Settlement. It is appropriate to include the requested attorneys' fee award as part of this calculation given Defendant's agreement to pay any such award separate from any payments made to the Class. *See, e.g.*, *Zink*, 2016 U.S. Dist. LEXIS 179900, at *20-21; *Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (when reviewing fee as proportion of value, including fee as part of total amount and finding 52.2% fee was not abuse of discretion).[9]

**Third**, Defendant's attacks fail to show the requested fee is unreasonable under the criteria in *Goldberger*. In bringing this action, Plaintiffs could not simply copy from a 32-page Congressional report that dealt with seven different booster seat manufacturers and devoted a few paragraphs to Artsana. Vozzolo Decl. ¶ 22. Plaintiffs conducted a pre-suit investigation and independently drafted[10] comprehensive complaints setting forth detailed allegations. *Id.* ¶¶ 22-

---

[9] Even *Bodon*, 2015 U.S. Dist. LEXIS 81879, at *35, on which Defendant relies, included fees as part of the "constructive fund" when considering the proportionality of the fee award.

[10] Alleging *Jimenez* "copied and pasted" from the *Sayers* complaint, Artsana cites just seven paragraphs of *Jimenez* that deal with tolling of the statute of limitations. Def's Mem. at 4 (citing *Jimenez* Complaint, ¶ 80-87). These allegations were not "copied"—both complaints recite similar basic facts to support tolling.

8

23.  Defendant's suggestion *Sayers* counsel recycled a motion to dismiss opposition from a similar matter is also wrong. In particular, the opposition in *Sayers* involved briefing the important issue of plaintiffs' standing to assert a nationwide claim under Pennsylvania's UTPCPL. *See Sayers et al. v. Artsana USA, Inc.*, No. 5:21-cv-01876- JMG, ECF No. 27 (Pls' Opp. to Def's Mot. to Dismiss and Mot. to Strike) (E.D. Pa. Sept. 3, 2021).

Undoubtably, much of the work in this matter related to the proposed Settlement. The fact that Defendant created initial drafts of Settlement documents did not make Plaintiffs' job of reviewing, negotiating, revising, and ultimately finalizing the Settlement provisions any less significant. The time and resources Class Counsel have devoted to negotiating and overseeing the Settlement should not be discounted, especially given Defendant's multiple attempts to renegotiate settled provisions and/or creatively reinterpret Settlement language. In particular, Class Counsel devoted many hours to ensuring Class Members who lack proof of purchase could meaningfully participate in the Settlement, first by negotiating reasonable criteria to verify their claims and then by ensuring the Claim Form captured those criteria in a way that would not deter legitimate claimants. Vozzolo Decl. ¶¶ 26-42. Class Counsel's significant—and ongoing—work to monitor the claims process does not support Defendant's assertion of "unclean hands." *See id.*

***Fourth***, the requested fee award is reasonable under the lodestar method. It represents a modest multiplier of approximately 1.7.  This is warranted given Plaintiffs obtained an excellent result for the Class at an early stage and recognizes that early resolution, where appropriate, should not penalize counsel. *Long v. HSBC USA Inc.*, 2016 U.S. Dist. LEXIS 124199, at *42 (S.D.N.Y. Sep. 13, 2016) ("Counsel's work…, aided by their experience, ultimately aided plaintiffs in the development of the claims and in reaching a fair settlement at an early stage in negotiations…. [This] also weighs in favor of the multiplier"; finding 3.1 multiplier was reasonable).

Nor does Defendant succeed in undermining Class Counsel's billing records. It is not surprising that attorneys participating in full-day, virtual mediations would have to give attention to other matters at certain times and thus would have different hours allotted to those sessions. Nor is it suspicious that over many months of investigating, litigating, and settling a matter one partner did not bill time for certain phone calls that occurred with his co-counsel. *See* Vozzolo Decl. ¶ 49. There is no basis to suggest any calls or entries were fabricated and it only benefits Defendant if certain time was not logged. Defendant's complaints that Class Counsel's entries are "vague" are also overblown. While Defendant complains of entries describing the subject of communications as "re: litigation strategy," a review of time records submitted in a different matter by defendant's counsel show Gibson Dunn uses virtually identical descriptions. *Id.* ¶ 50 (identifying over 30 time entries described as communications regarding "case strategy"). Defendant recognizes the lodestar does not seek to "achieve auditing perfection," Def's Mem. at 10, and Class Counsel's entries demonstrate their work was reasonably spent in resolving this matter. Vozzolo ¶ 51.

Dated: October 17, 2023                     Respectfully submitted,

                                            By: */s/ Antonio Vozzolo*

                                            **BURSOR & FISHER, P.A.**
                                            Alec M. Leslie
                                            1330 Avenue of the Americas, 32nd Fl.
                                            New York, NY 10019
                                            Telephone: (646) 837-7150
                                            Facsimile: (212) 989-9163
                                            Email: aleslie@bursor.com

                                            **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
                                            Martha A. Geer
                                            900 W. Morgan Street
                                            Raleigh, NC 27603
                                            Telephone: (919) 600-5000
                                            Facsimile: (919) 600-5035
                                            Email: mgeer@milberg.com

**VOZZOLO LLC**
Antonio Vozzolo
Andrea Clisura
345 Route 17 South
Upper Saddle River, NJ 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com
       aclisura@vozzolo.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Gregory F. Coleman (admitted *pro hac vice*)
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0080
Email: gcoleman@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Jonathan B. Cohen (admitted *pro hac vice*)
3833 Central Ave.
St. Petersburg, FL 33713
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
Email:  jcohen@milberg.com

*Co-Class Counsel*