## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASHAYILA SAYERS, BRITTNEY TINKER, JENNIFER MONACHINO, KIMBERLY MULLINS, HILDA MICHELLE MURPHREE, and AMANDA JIMENEZ, on behalf of themselves and all others similarly situated, <br><br>                    Plaintiffs, <br><br>      v. <br><br> ARTSANA USA, INC., <br><br>                    Defendant. | Case No. 7:21-cv-07933-VB <br><br> Hon. Vincent L. Briccetti |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Dated: February 7, 2025

**BURSOR & FISHER, P.A.**
Alec M. Leslie
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Martha A. Geer
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
Email: mgeer@milberg.com

-and-

**VOZZOLO LLC**
Antonio Vozzolo
345 Route 17 South
Upper Saddle River, NJ 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com

*Co-Class Counsel*

## <u>TABLE OF CONTENTS</u>

<b>PAGE(S)</b>

I.     INTRODUCTION ................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND.............................................. 2

III.   SUMMARY OF SETTLEMENT TERMS............................................................. 6

       A.     The Class Definition ................................................................................. 6

       B.     Monetary Benefits..................................................................................... 6

       C.     Non-Monetary Benefits ............................................................................ 7

       D.     Release Of Claims..................................................................................... 7

       E.     Notice, Claims Process, And Settlement Administration ......................... 8

       F.     Attorneys' Fees, Costs, Expenses, And Incentive Awards....................... 8

IV.    LEGAL STANDARDS ......................................................................................... 9

V.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................... 10

       A.     The Requirements of Rule 23(a) are Met ............................................... 10

              1.     Joinder Of All Members Is Impracticable ................................... 10

              2.     There Are Questions Of Law Or Fact Common To The Class................ 10

              3.     Plaintiffs' Claims Are Typical Of The Claims Of The Class .................. 10

              4.     Plaintiffs Fairly And Adequately Protect The Class's Interests .............. 11

              5.     Class Members Are Readily Identifiable And Ascertainable.................. 11

       B.     The Settlement Class Satisfies Rule 23(b)(3) ........................................ 11

              1.     Common Questions Predominate Over Individual Issues ........................ 11

              2.     A Class Action Is Superior To Alternative Methods Of Adjudication..... 12

VI.    THE COMPLETED NOTICE PLAN SATISFIES DUE PROCESS AND RULE 23..... 12

VII.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT........ 14

       A.     The Settlement Is Procedurally Fair (Rules 23(e)(2)(A-B)) ................................. 15

B.    The Settlement Is Substantively Fair (Rules 23(e)(2)(C-D)) ............................... 17

    1.    Rule 23(e)(2)(C)(i) – The Costs, Risks, And Delay Of Trial And Appeal And First, Fourth, Fifth, And Sixth *Grinnell* Factors ................... 17

    2.    Rule 23(e)(2)(C)(ii) – The Proposed Method Of Distributing Relief ....... 19

    3.    Rule 23(e)(2)(C)(iii) – Terms Of Any Proposed Award Of Attorneys' Fees ........................................................................................................ 20

    4.    Rule 23(e)(2)(C)(iv) –Agreements To Be Identified Under Rule 23(e)(3) ..................................................................................................... 21

    5.    Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably ......... 21

    6.    Second *Grinnell* Factor – The Class's Reaction Has Been Positive ......... 22

    7.    Third *Grinnell* Factor – Stage Of Proceedings And Amount Of Discovery .................................................................................................. 22

    8.    Seventh *Grinnell* Factor – Ability To Withstand A Greater Judgment .... 24

    9.    Eighth And Ninth *Grinnell* Factors – The Settlement Amount Is Reasonable In Light Of The Possible Recovery And Attendant Risks Of Litigation ............................................................................................... 24

VIII.    CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Athale v. Sinotech Energy Ltd.*,
  2013 U.S. Dist. LEXIS 199696 (S.D.N.Y. Sep. 4, 2013) ........................ 24

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) ........................................................ 11

*Carlotti v. ASUS Computer Int'l*,
  2019 U.S. Dist. LEXIS 201564 (N.D. Cal. Nov. 19, 2019) ...................... 21

*Castagna v. Madison Square Garden, L.P.*,
  2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7, 2011) ......................... 23

*Christine Asia Co. v. Jack Yun Ma*,
  2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019) ............. 15, 22, 25

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .................................................. Passim

*City of Providence v. Aeropostale, Inc.*,
  2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) ......................... 18

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ...................................................... 9

*Denney v. Jenkens & Gilchrist*,
  230 F.R.D. 317 (S.D.N.Y. 2005) ................................................. 24

*Dupler v. Costco Wholesale Corp.*,
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) .......................................... 21

*Ebin v. Kangadis Food, Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ................................................. 20

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ............................................................. 12

*Famular v. Whirlpool Corp.*,
  2019 U.S. Dist. LEXIS 44907 (S.D.N.Y. Mar. 18, 2019) ....................... 24

*Fikes Wholesale, Inc. v. Visa U.S.A., Inc.*,
  62 F.4th 704 (2d Cir. 2023) ..................................................... 11

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................ 24

*Hadel v. Gaucho, LLC*,
   2016 U.S. Dist. LEXIS 33085 (S.D.N.Y. Mar. 14, 2016) ............................ 23

*Heerwagen v. Clear Channel Commc'ns*,
   435 F.3d 219 (2d Cir. 2006) ......................................................................... 11

*Hesse v. Godiva Chocolatier*,
   2022 U.S. Dist. LEXIS 72641 (S.D.N.Y. Apr. 20, 2022) ............................ 21

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   2014 U.S. Dist. LEXIS 180914 (E.D.N.Y. Oct. 15, 2014) .......................... 10

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ......................................................... 18

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012) ......................................................................... 11

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................... 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ........................................................................... 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 8, 2010) ........................... 24

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) ................................................... 18

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) .......................... 12

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................................................... 22

*In re Novartis*
   2024 U.S. Dist. LEXIS 132677 (S.D.N.Y. July 26, 2024) ........................... 19

*In re Petrobras Secs.*,
   862 F.3d 250 (2d Cir. 2017) ......................................................................... 11

*In re PPDAI Grp. Inc. Sec. Litig.*,
  2022 U.S. Dist. LEXIS 11427 (E.D.N.Y. Jan. 21, 2022) .................................................. 16, 20

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ................................................................................ 20

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................................................ 16

*In re Vitamin C Antitrust Litig.*,
  2012 U.S. Dist. LEXIS 152275 (E.D.N.Y. Oct. 22, 2012) ............................................. 23

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) ............................................................................. 18

*Jankowski v. Castaldi*,
  2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. Jan. 13, 2006) ............................................... 12

*Lea v. Tal Educ. Grp.*,
  2021 U.S. Dist. LEXIS 229314 (S.D.N.Y. Nov. 30, 2021).............................................. 19

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................................ 18

*Massiah v. MetroPlus Health Plan, Inc.*,
  2012 U.S. Dist. LEXIS 166383 (E.D.N.Y. Nov. 16, 2012) ........................................... 22

*Moses v. N.Y. Times Co.*,
  79 F.4th 235 (2d Cir. 2023) .................................................................... 9, 16, 20, 22

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) .................................................................................. 24

*Nichols v. Noom, Inc.*,
  2022 U.S. Dist. LEXIS 123146 (S.D.N.Y. July 12, 2022)............................................. 9

*Pearlstein v. Blackberry Ltd.*,
  2022 U.S. Dist. LEXIS 177786 (S.D.N.Y. Sep. 29, 2022) ........................................... 13

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) .................................................................................. 10

*Rosenfeld v. Lenich*,
  2021 U.S. Dist. LEXIS 26950 (E.D.N.Y. Feb. 4, 2021) ......................................... 17, 21

*TBK Partners, Ltd. v. Western Union Corp.*,
    517 F. Supp. 380 (S.D.N.Y. 1981) ........................................................................ 17

*Torres v. Gristede's Operating Corp.*,
    2010 U.S. Dist. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010) ..................................... 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................................... 9, 12

*Yang v. Focus Media Holding Ltd.*,
    2014 U.S. Dist. LEXIS 126738 (S.D.N.Y. Sept. 4, 2014) ...................................... 16

## STATUTES

15 U.S.C. §§ 2301 .................................................................................................... 3

28 U.S.C. § 1715(b) .................................................................................................. 8

N.Y.U.C.C. § 2-607(3)(a) ......................................................................................... 3

New York General Business Law ("GBL") § 349 .................................................... 3

New York General Business Law ("GBL") § 350 .................................................... 3

## RULES

Fed. R. Civ. P. 15(a)(2) ............................................................................................ 3

Fed. R. Civ. P. 23 ............................................................................................. Passim

## I.    INTRODUCTION

On January 23, 2023, this Court preliminarily approved the Settlement between Plaintiffs and Artsana.[1] Since that time, the Parties, along with the Settlement Administrator, Angeion Group ("Angeion"), have devoted significant time to implementing procedures to identify fraudulent claims, while protecting the interests of class members through supplemental notice programs and deficiency and appeals processes. Vozzolo Decl. ¶¶ 60-72. Ultimately, the Court-approved notice plans have resulted in validated claims for 65,174 products, equating to a cash payment of $2,390,825.00 directly to Class Members, among other benefits. No Class Members have objected and only 3 requested to be excluded. 2/7/25 Weisbrot Decl. ¶¶ 47-48.[2] The positive response from Class Members confirms the excellent results achieved through the Settlement. Class Members who submitted valid Claim Forms with proof of purchase will receive $50 per Eligible Product. Because manufacturers' suggested retail prices for the Booster Seats ranged from $99.99 to $149.99 each, this equates to an approximate recovery of 33% to 50% of the purchase price of the Products for Class Members with proof of purchase. Vozzolo Decl. ¶ 48. Class Members who submitted a valid Claim Form without proof of purchase, but who corroborated their purchase as provided in the Settlement, will receive $25 per Eligible Product. This equates to approximately 17% to 25% of the purchase price for Class Members without proof of purchase. *Id.* ¶ 49. Subsequent to the prior final approval hearing, the Parties were able to agree on procedures that enabled Class Members who lack proof of purchase to participate in the settlement and claim a meaningful cash benefit. These procedures empowered Angeion, under the Parties' supervision, to reject fraudulent and invalid claims, while providing deficiency and appeals processes to protect legitimate claimants.

---

[1] Capitalized terms not otherwise defined herein have the definitions set forth in the Stipulation of Settlement attached as Exhibit 1 to the concurrently filed Declaration of Antonio Vozzolo in Support of Plaintiffs' Motions for Final Approval of Settlement and Award of Attorneys' Fees and Expenses, and Approval of Incentive Awards ("Vozzolo Decl.").

[2] The February 7, 2025 Declaration of Steven Weisbrot, Esq. ("2/7/25 Weisbrot Decl.") is filed herewith.

In addition to cash payments to Class Members, under the Settlement Artsana agreed to pay costs of notice and administration up to $500,000, and any incentive awards and reasonable attorneys' fees, costs, and expenses the Court may award. These payments are separate from the funds paid to the Class so that any such amounts will not reduce the payments made to Class Members. The Settlement also had no cap on the amount that Artsana would pay under the Settlement.

Plaintiffs now renew their motion for final approval on the basis that the Settlement meets Rule 23's standards for final approval and is fair, reasonable, and adequate, and an exceptional result for the Settlement Class. It is the product of extensive arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this case. The Parties engaged in informal and confirmatory discovery and have ample knowledge of the legal claims and defenses, the risks presented by the case, and the value achieved by the proposed Settlement. Moreover, the Settlement was reached with the assistance of a highly respected and experienced class action mediator, the Hon. Diane M. Welsh (Ret.) from JAMS. Despite the significant risks of litigation, Plaintiffs secured substantial monetary benefits for Class Members, including the opportunity to receive up to approximately 50% of their Booster Seat purchase price, as well as meaningful non-monetary benefits.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This class action arose out of the advertising and sale of Defendant's Chicco-brand KidFit booster seats ("Booster Seats" or "Products").[3] Artsana's marketing has included representations that the Booster Seats are safe for children as small as 30 pounds (the "30-pound Claim") and that the Products offer side-impact collision protection (the "Side-Impact Claim"). Plaintiffs allege the 30-pound Claim and the Side-Impact Claim were false and misleading. *See* Consolidated Amended Complaint ("CAC") ¶¶ 5-13, 72-95, ECF 39. Defendant denies these allegations.

---

[3] The Booster Seats include the KidFit, KidFit Zip, KidFit Zip Air, KidFit Luxe, KidFit Plus, and KidFit Air Plus. Settlement ¶ 17.

On February 19, 2021, counsel for Plaintiff Jimenez served pre-suit notice and demand on Artsana, pursuant to U.C.C. § 2-607(3)(a), concerning breaches of express and implied warranties, violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq*. and New York General Business Law ("GBL") §§ 349-50. On April 22, 2021, Plaintiffs Sayers, Tinker, Monachino, Mullins, and Murphree commenced a proposed class action in the Eastern District of Pennsylvania against Artsana, captioned *Sayers, et al. v. Artsana USA, Inc.*, No. 21-cv-01876-JMG, ECF 1 ("*Sayers* Action"). The Parties fully briefed Defendant's motion to dismiss and separate motion to strike portions of the complaint. *Id.*, ECF 18-20, 27, 29, 31.

On September 23, 2021, Plaintiff Jimenez commenced a proposed class action in the Southern District of New York against Artsana, captioned *Jimenez v. Artsana USA, Inc.*, No. 21-cv-07933-VB (the "*Jimenez* Action"). Shortly thereafter, the Parties initiated settlement discussions. The Parties had lengthy and hard-fought negotiations about the terms of a settlement, including three mediations with Judge Welsh, a well-respected mediator and retired Magistrate Judge of the U.S. District Court for the Eastern District of Pennsylvania. Vozzolo Decl. ¶ 16. The Parties made substantial progress toward resolution during the mediation sessions, which occurred on September 30, 2021, November 8, 2021, and June 6, 2022. *Id.* ¶¶ 16-19. The Parties also participated in multiple phone conferences with each other, along with the assistance of Judge Welsh, to finalize the terms of the Settlement. *Id.* ¶¶ 18-19, 32. Before and during the mediation sessions, the Parties had an arm's length exchange of information or informal discovery to permit Plaintiffs and their counsel to evaluate their claims and the potential defenses and to meaningfully conduct informed settlement discussions. *Id.* ¶ 21. Throughout the mediation sessions and follow-up sessions/discussions, the Parties engaged in protracted, informed negotiations. *Id.* These efforts culminated in the Settlement, which was fully executed on January 17, 2023. *Id.* ¶ 32.

On January 17, 2023, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure,

Plaintiff Jimenez filed a Consolidated Amended Complaint adding the claims of Plaintiffs Sayers, Tinker, Monachino, Mullins, and Murphree. ECF 39. Plaintiffs bring causes of action under the MMWA and various state laws.[4] Specifically, the CAC alleges, *inter alia*, that the 30-pound Claim and Side Impact Claim were false and misleading.

Prior to and throughout negotiations, Plaintiffs, by and through their respective counsel, conducted a thorough examination and investigation of the facts and law relating to the issues in this case, including, but not limited to, research and assessment of the claims and products at issue, discussions with experts, review and analysis of Artsana's documents and data, and confirmatory discovery. Vozzolo Decl. ¶ 119. The Parties engaged in rigorous debate of legal and factual theories and Class Counsel assessed the merits of all Parties' contentions and thoroughly evaluated all aspects of this Settlement, as it affects all Parties and Class Members. *Id.* ¶¶ 20-23. As a result of the negotiations, the Parties agreed to the terms of the Stipulation of Settlement.

The Court granted preliminary approval of the Settlement on January 23, 2023 and modified certain deadlines on February 3, 2023. *See* ECF 45, 52. Thereafter, Angeion disseminated notice to the Class consistent with the amended Preliminary Approval Order and Settlement. *See* 2/7/25 Weisbrot Decl., ¶¶ 9-25; *see also* Declaration of Steven Weisbrot, Esq. Regarding Implementation of the Notice Plan ("Weisbrot 8/28/23 Decl.") (ECF 59) ¶¶ 31-32.

Plaintiffs initially moved for final approval of the Settlement on August 28, 2023, and a Fairness Hearing was held on November 8, 2023. At that time, Defendant opposed final approval of the Settlement and sought an immediate close of the claims period based on the apparent large number of fraudulent claims being filed. *See* ECF 84. After discussions at the hearing, the Parties agreed to modify the length of the claims period and notify the Class of the same. *See* ECF No. 98. The Court

---

[4] Plaintiffs assert claims for violations of unfair and deceptive trade practices acts and consumer protections laws of Pennsylvania, Colorado, Florida, Illinois, Maryland, New York and Texas, and the Commercial Codes of Colorado, Florida, Illinois, Maryland, New York, and Texas for breach of express and implied warranties, and unjust enrichment.

denied the final approval motion and motion for attorneys' fees, expenses, and incentive awards without prejudice to renewal and continued the Fairness Hearing. ECF 102.

In accordance with the Parties' agreement, Angeion notified the Class of the January 7, 2024 claims deadline, including through the Settlement Website and through a limited round of direct notice to Class Members who had not already submitted a claim. ECF 99; 2/7/25 Weisbrot Decl., ¶¶ 17. After the close of the claims period, the Parties, along with Angeion, devoted significant time to conferring regarding Angeion's fraud determinations, and negotiating deficiency and appeals processes to protect legitimate claimants while excluding fraudulent claims. Vozzolo Decl. ¶ 65. Because the majority of rejected claims were filed not by any Class Member but by bad actors using programmatic means to generate fraudulent claims (*see* 2/7/25 Weisbrot Decl. ¶¶ 49-52)—a situation that has occurred in other class actions as well—in July of 2024, notice of rejection was provided through a combination of direct notice to certain categories of claimants, along with a web-based notice through the Settlement Website. *See id.*, ¶¶ 29-33; *see also* Declaration of Jenny Shawver dated August 30, 2024 ("8/30/24 Shawver Decl."), ECF 116, ¶¶ 12-16.  Angeion received 6,929 responses to the July 2024 deficiency and appeal notices and reviewed and approved claims for 5,718 products based on those responses. 2/7/25 Weisbrot Decl. ¶ 34.

On August 28, 2024, counsel for Artsana notified Angeion and Class Counsel that the original class list used to deliver direct notice and for assessment of claims eligible for $50 for having purchased directly from Artsana inadvertently excluded purchases that had been made directly from Artsana on its website but were not later registered. Vozzolo Decl. ¶ 73. As a result of this discovery, the Parties negotiated and Angeion implemented an additional notice program that provided direct notice to individuals who purchased eligible products from Artsana but (a) did not previously receive direct notice and (b) had not already filed a claim (which would indicate they got notice through other means). Those Class Members were provided an additional period of 45 calendar days to file a claim for $50

or to opt-out of or object to the Settlement. 2/7/25 Weisbrot Decl. ¶¶ 35-41; ECF 124-25. In addition, claimants who previously claimed to have purchased a booster seat on a Chicco website, but who did not appear on Artsana's list of Chicco website purchasers were provided direct notice of rejection and an opportunity to appeal. 2/7/25 Weisbrot Decl. ¶¶ 42-43; ECF 124-25.

## III.    SUMMARY OF SETTLEMENT TERMS

### A.    The Class Definition

The Court conditionally certified a Class for settlement of: "All persons and entities in the United States, its territories, and/or its possessions who purchased one or more of the Eligible Products (*i.e.*, Artsana booster seats marketed under the 'KidFit' branding, which includes the KidFit, KidFit Zip, KidFit Zip Air, KidFit Luxe, KidFit Plus, and KidFit Air Plus) during the Class Period (*i.e.*, April 22, 2015 to December 31, 2021)." ECF 52, ¶ 3; *see also* Settlement ¶ 9.[5]

### B.    Monetary Benefits

Artsana agreed to provide payments of $50 for each Eligible Product purchased during the Class Period to Class Members who submitted a valid Claim Form with proof of purchase.[6] Settlement ¶ 46. Given that suggested retail prices for the Booster Seats ranged from $99.99 to $149.99 each in 2021, this equates to an approximate recovery of 33% to 50% of the purchase price of the Products for Class Members with proof of purchase. Vozzolo Decl. ¶ 48. In addition, Artsana will provide payments of $25 for each Eligible Product purchased during the Class Period

---

[5] Excluded from the Class are (a) all persons who are employees, directors, officers, and agents of Artsana or its subsidiaries and affiliated companies; (b) persons or entities that purchased the Eligible Products primarily for the purposes of resale; (c) governmental entities; (d) persons and entities that timely and properly exclude themselves from the Class as provided in the Stipulation of Settlement; (e) persons and entities that purchased the Eligible Products via the Internet or other remote means while not residing in the United States; and (f) the Court, the Court's immediate family, and Court staff. Amended Preliminary Approval Order, ECF 52, ¶ 3; Settlement ¶ 9.

[6] Proof of purchase can take a variety of forms and is defined to include a valid receipt or retail rewards submission from an authorized retailer, product packaging, a picture of the Eligible Product showing a new or recently purchased product, evidence of the purchase in Artsana's records (either as a result of a direct purchase from Artsana or by registration of the Eligible Product with Defendant or the National Highway Traffic Safety Administration ("NHTSA"), or other physical evidence corroborating the Class Member's purchase claim (*e.g.*, a credit card statement or invoice showing the class member's purchase). Settlement ¶ 46.

to Class Members who submit a valid Claim Form without proof of purchase, but who corroborate their purchase by satisfying at least two of four requirements.[7] Settlement ¶ 47. This is an approximate recovery of 17% to 25% of the purchase price for Class Members without proof of purchase. Vozzolo Decl. ¶ 49. Class Members' benefits will not be prorated for any reason. *Id.* ¶ 50.

### C.    Non-Monetary Benefits

Artsana has also agreed to the following non-monetary benefits:

- Artsana will include a link on its consumer-facing website for Chicco USA to an informational video previously only available on Facebook.com (the "Facebook Video"), giving consumers increased access to information regarding safe weight, height, and age requirements for the Booster Seats;

- Artsana will add an overlay of text to the Facebook Video, stating: "The National Highway Traffic Safety Administration (NHTSA) recommends that you keep your child in a forward-facing car seat with a harness and tether until he or she reaches the top height or weight limit allowed by your car seat's manufacturer" (the "NHTSA Overlay");

- Artsana will create a new educational video, which discusses the subject of transitioning a child to a booster seat and addresses the minimum requirements for safe use of a booster, including weight, age, height, and child maturity level (the "New Video"). The New Video will appear on the Chicco USA website on the product video page. Artsana will either include an audio message identical to the language utilized in the NHTSA Overlay or display the NHTSA Overlay on the New Video.

Settlement ¶ 51.

### D.    Release Of Claims

In exchange for the foregoing benefits, Class Members who do not opt out will provide the Released Parties with a release of claims that were asserted or that could have reasonably been asserted in the Actions as set forth in paragraph 29 of the Settlement. *See also id.* ¶¶ 72-77.

---

[7] On the Claim Form, Class Members without proof of purchase are asked to corroborate their purchase by satisfying at least two of the following four requirements: (1) identifying the serial number; (2) identifying the model of the Eligible Product they purchased and either the primary and/or secondary colors of the seat; (3) identifying the retailer from which they purchased, as well as the approximate month (or season) and year of purchase; or (4) if the Eligible Product was not purchased online, identifying the municipality and state in which the Eligible Product was purchased and attaching a picture of the Eligible Product. An incorrect response to the primary and/or secondary color question will not be counted against the Claimant. Settlement ¶ 47.

### E.    Notice, Claims Process, And Settlement Administration

Defendant agreed to pay costs of notice and administration of the Settlement up to $500,000. *Id.* ¶ 44, Ex. F. As further detailed *infra* § VI, the notice program included: (a) direct email and mail notice; (b) print publication notice; (c) a press release; (d) an online media campaign; (e) a settlement website; and (f) supplemental notices. 2/7/25 Weisbrot Decl. ¶¶ 5-25.[8]

Angeion was responsible for "reviewing[] and approving of claims" in accordance with the Settlement. Settlement ¶¶ 34, 80, 81, Ex. F. Angeion could reject claims for a number of reasons, including because a claim appeared fraudulent. *Id.* ¶ 85. The Parties negotiated and stipulated to modify the Settlement with regard to deficiency and appeals processes for rejected claims. *See* ECF 114. Specifically, certain categories of claimants were sent direct notice of their opportunity to validate their claim by providing additional information and/or documents. 8/30/24 Shawver Decl., ¶ 12. ECF No. 116. For claimants with rejected claims, notice of rejection and the opportunity to appeal was provided through a combination of direct notice to certain claimants with disallowed claims, as well as a web-based notice through the Settlement Website. *Id.*, ¶¶ 12-15; 2/7/25 Weisbrot Decl. ¶¶ 29-33.

### F.    Attorneys' Fees, Costs, Expenses, And Incentive Awards

Artsana agreed to pay attorneys' fees, costs, and expenses in an amount to be determined by the Court. Settlement ¶¶ 59(d), 65-66. The Parties have no agreement on the amount of attorneys' fees and expenses and Artsana has reserved the right to challenge any fee and expense award. *Id.* ¶ 66. Class Counsel separately move for an award of attorneys' fees, costs, and expenses of $2,250,000, including $23,793.91 in litigation expenses, payment of which will be separate and apart from the monetary benefits afforded to the Class. *See id.*, ¶ 80. Class Counsel further petition

---

[8] On January 27, 2023, Angeion also provided notification of the Settlement to the Attorney General of the United States and Attorneys General of each of the 50 states, the District of Columbia, Puerto Rico, and all territories in accordance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b). *See* 2/7/25 Weisbrot Decl. ¶ 8. Angeion received no objection or other response from any Attorney General. *Id.*

the Court for incentive awards for each Class Representative in the amount of $1,500, for their service on behalf of the Class. *Id.* ¶ 85; Settlement ¶ 71.

## IV.    LEGAL STANDARDS

To grant final approval, the Court must determine the Settlement Class is certifiable under Rules 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (explaining Rule 23(a) and (b) analysis is independent of Rule 23(e) fairness review). A court may approve a class action settlement that is "fair, reasonable, and adequate" considering the factors enumerated in Rule 23(e)(2).[9] "The first two factors are procedural in nature and the latter two guide the substantive review of a proposed settlement." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). To determine substantive fairness, courts in the Second Circuit also consider the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (the "*Grinnell* factors").[10] *See Moses*, 79 F.4th at 243. "[N]ot every factor must weigh in favor of the settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Nichols v. Noom, Inc.*, 2022 U.S. Dist. LEXIS 123146, at *21 (S.D.N.Y. July 12, 2022) (internal quotations, alteration, and citation omitted). Further, courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

---

[9] Under Rule 23(e)(2) the Court considers whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." FRCP 23(e)(2).

[10] These factors are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]" *Grinnell Corp.*, 495 F.2d at 463 (citations omitted).

## V.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Court should finally certify the Settlement Class because it meets the requirements of Rules 23(a) and 23(b)(3), as it did at preliminary approval. *See* ECF 52 at 2.

### A.    The Requirements Of Rule 23(a) Are Met

#### 1.    Joinder Of All Members Is Impracticable

Numerosity is met if "the class is so numerous that joinder of all members is impracticable[.]" FRCP 23(a)(1). Here, between April 22, 2015, and December 31, 2021, a total of 874,538 Booster Seats were sold in the United States. Vozzolo Decl. ¶ 52. Given the number and geographic dispersion of Class Members, joinder would be impracticable.

#### 2.    There Are Questions Of Law Or Fact Common To The Class

Commonality under Rule 23(a)(2) does not require identical claims and arguments. "To satisfy commonality, even a single common question will do." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 U.S. Dist. LEXIS 180914, at *178 (E.D.N.Y. Oct. 15, 2014) (internal quotation omitted). Here, the numerous common issues of fact and law include: (a) whether the 30-pound Claim and Side-Impact Claim are likely to deceive a reasonable consumer, and (b) whether Class Members were injured by overpaying for the Booster Seats.

#### 3.    Plaintiffs' Claims Are Typical Of The Claims Of The Class

Rule 23(a)(3) is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). Here, Plaintiffs' and each Class Member's claims arise out of the same theory of liability—that Defendant made false and misleading representations concerning the benefits of the Booster Seats. CAC ¶¶ 5-13, 72-95. Plaintiffs allege these material misrepresentations caused them injury because they would not have purchased the Products or

they overpaid for the Products as a result. *Id.* ¶¶ 96-125. Defendant's conduct caused similar injury to each Settlement Class Member. Thus, because Plaintiffs allege they were harmed by the same overall course of conduct and in the same way as the Class, their claims are typical of the Class.

### 4.    Plaintiffs Fairly And Adequately Protect The Class's Interests

The requirement that "representative parties will fairly and adequately protect the interests of the class" under Rule 23(a)(4) is met if the plaintiff: (1) is represented by counsel who is "qualified, experienced and able to conduct the litigation" and (2) does not possess interests "antagonistic to the interest of other members of the class[.]" *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). As discussed herein, those criteria are met here.

### 5.    Class Members Are Readily Identifiable And Ascertainable

In the Second Circuit, ascertainability requires "only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Secs.*, 862 F.3d 250, 264 (2d Cir. 2017). Moreover, "[r]equiring administrative feasibility is 'neither compelled by precedent nor consistent with Rule 23.' . . . The only relevant inquiry is whether determinations as to class membership are 'objectively *possible*.'" *Fikes Wholesale, Inc. v. Visa U.S.A., Inc.*, 62 F.4th 704, 717 (2d Cir. 2023) (quoting *Petrobras*, 862 F.3d at 264, 270). Here, the Class consists of all persons who purchased one or more of the Eligible Products from April 22, 2015 up to and including December 31, 2021. Thus, all Class Members are identifiable through objective criteria.

### B.    The Settlement Class Satisfies Rule 23(b)(3)[11]

### 1.    Common Questions Predominate Over Individual Issues

The predominance requirement under Rule 23(b)(3) requires "that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to

---

[11] In a settlement, the issue of manageability "drop[s] out of the predominance analysis because the proposal is that there be no trial." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012).

individualized proof." *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 226 (2d Cir. 2006). Predominance is satisfied here, where the issues center on Defendant's uniform marketing and labeling for the Products and whether Defendant's representations concerning the Booster Seats are false, misleading, and/or likely to deceive a reasonable consumer. Every Class Member's claim may be proven by the same common evidence regarding the safety of the Products for children as small as 30 pounds and the ability of the Products to provide side-impact protection.

### 2.    A Class Action Is Superior To Alternative Methods Of Adjudication

Given each Class Member's claim is of a relatively low value, individual Class Members will likely have little incentive to pursue their claims on an individual basis. A class action enables Class Members to bring together claims that would be economically infeasible to litigate otherwise and conserves judicial resources. Thus, a class action is a superior method of fairly and efficiently adjudicating this case. *See, e.g.*, *Jankowski v. Castaldi*, 2006 U.S. Dist. LEXIS 4237, at *13 (E.D.N.Y. Jan. 13, 2006) (class treatment appropriate where class members are sufficiently numerous and possess relatively small claims unworthy of individual adjudication).

## VI.    THE COMPLETED NOTICE PLAN SATISFIES DUE PROCESS AND RULE 23

Due process and Rule 23 require notice to the Class that is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FRCP 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Such notice "need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 120953, at *38 (S.D.N.Y. Dec. 23, 2009); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d at 114 (notice must "fairly apprise" prospective class members "of the terms of the proposed settlement and of the options that are open to them").

The Class Notice clearly set forth essential information, including the nature of the action, terms of the settlement, and class members' options. *See* FRCP 23(c)(2)(B). The Settlement Administrator successfully implemented the court-approved Notice Plan. *See* Weisbrot 8/28/23 Decl. ¶¶ 6-22.[12] Angeion successfully delivered the initial notice via email or postcard to over 100,000 unique Class Members. *See id.* ¶¶ 7-12. Further, media notice consisted of approximately 27,086,089 impressions. *Id.* ¶ 15. Through its multi-channel approach, Notice through the media campaign alone reached an estimated 86.77% of targeted Class Members. *Id.* ¶¶ 23-24. Such notice is consistent with notice programs approved in the Second Circuit and across the United States, is considered a "high percentage," and comports with the standards of due process and Rule 23. *See Pearlstein v. Blackberry Ltd.*, 2022 U.S. Dist. LEXIS 177786, at *25 (S.D.N.Y. Sep. 29, 2022) (approving "combination of individual first-class mail and/or email notice to all Class Members who could be identified with reasonable effort, supplemented by publication notice").[13]

In addition, notice of subsequent modifications to the Settlement was provided to the Class through a combination of direct notice to certain categories of claimants, as well as through the Settlement Website and public docket. Angeion notified the Class of the modified claims deadline through the Settlement Website and through a limited round of direct notice to Class Members who had not already submitted a claim. 2/7/25 Weisbrot Decl., ¶ 17; *see also* ECF 99, ¶ 1. After the close of the claims period, given the vast majority of rejected claims were filed not by any

---

[12] Specifically, Angeion (1) sent initial email notice to Class Members for whom email addresses had been identified, including 10,343 emailed notices; (2) sent post card notice to Class Members for whom the Parties had no valid email address but did have a mailing address from Artsana's records, including 99,070 notices sent via regular mail; (3) published a Settlement Website with online claim filing capability and on which the notices and other Court documents were posted; (4) published Internet banner ads, with embedded hyperlinks to the Settlement Website, targeted to reach Class Members; (5) published summary notice in *People* magazine, in the magazine's nationwide print edition and its online digital replica; (6) published a press release with a reach of approximately 15,000 media outlets, including English and Spanish language outlets; and (7) established a toll-free telephone number through which Class Members were able to call the Settlement Administrator to get information. *See* Weisbrot 8/28/23 Decl. ¶¶ 6-22.

[13] Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Ctr., "*Managing Class Action Litigation: A Pocket Guide for Judges*", 27 (3d Ed. 2010) (explaining a publication notice plan that reaches at least 70% of class members is one that reaches a "high percentage" and is within the "norm").

Class Member, but through programmatic fraud, direct notice of rejection and the right to appeal was provided to claimants with disallowed claims whose claim filing showed no indicia of fraud, but who provided information on their claim form that did not correlate with an Eligible Product. 2/7/25 Weisbrot Decl., ¶¶ 29-30. Claimants were sent direct notice of their opportunity to validate their claim by providing additional information and/or documents to correct a deficiency. *Id.* Otherwise, for claimants showing multiple indications of fraud, and likely were not legitimate filers, notice of rejection and appeal were provided through the Settlement Website. *Id.*, ¶¶ 31-33. This process served to balance claimants' right to notice of rejection and the appeal process, with the interests of avoiding spending resources and funds sending direct notice to claimants who are likely to be bad actors. *See, e.g.*, *In re Juul Labs, Inc. Marketing, Sales Practices, and Product Liability Litig.*, No. 19-md-2913-WHO, ECF 4224, Order re Class Counsel's Notice regarding Administration of the JLI and Altria Class Action Settlements (N.D. Cal. May 7, 2024) (approving plan for claims handling where it "fairly balances the various interests present, providing notice and a fair process for claimants who may have been incorrectly identified as potentially fraudulent to verify their claims, and rejecting claims that are clearly fraudulent without expending class resources unnecessarily").

Finally, an additional round of direct notice, along with an opportunity to file a claim, opt-out, or object to the Settlement was provided to Class Members who were omitted from the initial direct notice program based on Artsana's initial class list. 2/7/25 Weisbrot Decl., ¶¶ 35-39.

## VII.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

Final approval of the Settlement is appropriate because it is fair, adequate, and reasonable under Rule 23 and the *Grinnell* factors. The Settlement resulted from months of arm's length negotiations with the assistance of an experienced mediator and was informed by the exchange of significant information through the settlement process. Vozzolo Decl. ¶ 21. The Agreement

provides favorable monetary benefits to Class Members, as well as non-monetary benefits. Considering the likelihood of success and inherent risks and expense of continued litigation, Plaintiffs and Class Counsel strongly believe that the Settlement is "fair, reasonable, and adequate" under FRCP 23(e)(2) and the *Grinnell* factors. *Id.* ¶¶ 46, 72, 120.

### A.    The Settlement Is Procedurally Fair (Rules 23(e)(2)(A-B))

Rule 23(e)(2)(A), requiring adequate representation, and Rule 23(e)(2)(B), requiring arm's-length negotiations, "constitute the 'procedural' analysis" of the fairness inquiry. *Christine Asia Co. v. Jack Yun Ma*, 2019 U.S. Dist. LEXIS 179836, at *38 (S.D.N.Y. Oct. 16, 2019).

Here, Plaintiffs and their counsel are adequate representatives. First, Plaintiffs' interests are aligned with those of the Class, and they have no conflicts of interest. Plaintiffs and each Class Member were injured in the same manner, and Plaintiffs assert the same legal claims as those of the Class. Plaintiffs have provided valuable assistance in the prosecution of this matter and have taken their obligations to the Class seriously, conferring with their counsel, reviewing the pleadings, and consulting with Class Counsel regarding the propriety of the Settlement. Vozzolo Decl. ¶ 122-24. Second, Class Counsel are qualified and have extensive experience in class action litigation. Class Counsel spent a significant amount of time identifying and investigating Plaintiffs' claims before filing these cases. Vozzolo Decl. ¶¶ 5-7. Class Counsel is experienced in the litigation, certification, trial, and settlement of multi-state consumer class actions similar in size, scope, and complexity to this one, including serving as lead or co-lead counsel in booster seat litigation against other manufacturers. *Id.* ¶ 113; *see also* Declarations of Martha Geer ("Geer Decl.") and Alec Leslie ("Leslie Decl.") in Support of Motion for Attorneys' Fees, Costs and Expenses, Exs. 1 and 13, respectively (firm resumes). In negotiating this Settlement, Class Counsel had the benefit of years of relevant experience and a familiarity with the facts of this case and the substantive law. *See id.* Finally, Class Counsel have well-regarded practices currently litigating

dozens of cases in state and federal courts throughout the nation, and they have devoted substantial resources to representing the Class. *Id.* ¶ 116. The combined experience of the firms and attorneys involved demonstrate Class Members are well-represented and were well-represented throughout negotiations. Since Plaintiffs and Class Counsel have demonstrated their commitment to representing the Class and have no interests antagonistic to the Class, the adequacy requirement is satisfied. *See In re PPDAI Grp. Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 11427, at *18 (E.D.N.Y. Jan. 21, 2022) (finding plaintiffs fairly and adequately represented the class under FRCP 23(a)(4) and 23(e)(2)(A) where plaintiffs' interests aligned with those of the settlement class, and they retained qualified and experienced counsel to pursue the actions).

Further, the Settlement resulted from arm's length negotiations over an eleven-month period, conducted by counsel knowledgeable in complex consumer class actions and capable of assessing the strengths and weaknesses of their positions. *See Moses*, 79 F.4th at 243 (explaining although courts should no longer apply a "presumption of fairness", "the arms-length quality of the negotiations remain a factor in favor of approving the settlement"). Moreover, the Parties reached the Settlement with the assistance of a mediator. Judge Welsh is a highly respected and experienced class action mediator, with over 27 years of experience as a JAMS neutral and federal Magistrate Judge.  Over the course of three mediations and multiple phone conferences, the Parties engaged in hard-fought negotiations to reach a final agreement on the Settlement. *See Yang v. Focus Media Holding Ltd.*, 2014 U.S. Dist. LEXIS 126738, at *14 (S.D.N.Y. Sept. 4, 2014) (noting "the participation of [a] highly qualified mediator strongly supports a finding that negotiations were conducted at arm's length and without collusion"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576-77 (S.D.N.Y. 2008) (parties represented throughout negotiations by experienced counsel and before an experienced mediator "militates in favor of approv[al]" and indicates process "was fair to absent Class Members").

**B.    The Settlement Is Substantively Fair (Rules 23(e)(2)(C-D))**

The Settlement is also fair under FRCP 23(e)(2)(C) and (D) and the *Grinnell* factors.

**1.    Rule 23(e)(2)(C)(i) – The Costs, Risks, And Delay Of Trial And Appeal And First, Fourth, Fifth, And Sixth *Grinnell* Factors**

Consideration of the relief provided to the Class in light of the "costs, risks, and delay of trial and appeal" under Rule 23(e)(2)(C)(i) overlaps with the first, fourth, fifth, and sixth *Grinnell* factors, including the complexity, expense and likely duration of the litigation, and risks of establishing liability, damages, and maintaining the class action through trial. *See Rosenfeld v. Lenich*, 2021 U.S. Dist. LEXIS 26950, at *15-16 (E.D.N.Y. Feb. 4, 2021).

Here, the Settlement provides favorable monetary benefits to the Class while avoiding the significant expenses, risks, and delays associated with litigation. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *Pearlstein*, 2022 U.S. Dist. LEXIS 177786, at *8-9 ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.") (alteration omitted). Unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

In this case, the costs, risks, complexity and likely duration of the litigation weigh heavily in favor of approval. Proceeding through litigation to trial is a risky, labor-intensive undertaking, which will include defeating Defendant's motions to dismiss and to strike, obtaining and maintaining class certification (including potentially interlocutory appeals), completing fact and expert discovery, briefing motions *in limine*, and establishing liability and proving damages at

trial. Discovery, motion practice, expert disclosures, and other pretrial activities could take years, and any trial would likely last weeks, and involve numerous fact witnesses, experts, and voluminous documentary evidence. Moreover, any favorable judgment would be the subject of post-trial motions and appeals, further prolonging the litigation. *See*, *e.g.*, *City of Providence v. Aeropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *14-15 (S.D.N.Y. May 9, 2014) ("Even if the Class could recover a judgment at trial, the additional delay through trial, post-trial motions, and the appellate process could prevent the Class from obtaining any recovery for years.").

Plaintiffs considered the significant risks of litigation prior to entering into the Settlement and anticipated Defendant would vigorously contest this matter at every stage. Even though Plaintiffs believe the evidence will establish that (1) the Booster Seats are not safe for children weighing as little as 30 pounds and do not deliver the promised benefits regarding side-impact collisions and (2) Artsana knew its representations otherwise were not true, there is no assurance a jury will agree. In addition to the uncertainties regarding proof of liability, Plaintiffs will need to establish Defendant's marketing claims were material and resulted in damages. Plaintiffs' reliance on expert testimony to establish damages will be a substantial expense and a jury's acceptance of that expert testimony is far from certain, especially when Defendant will offer contrary expert testimony. *See In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("[A] jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses."); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) (observing "it is virtually impossible to predict with any certainty which [expert's] testimony would be credited . . . .").[14] By settling, Plaintiffs guarantee an earlier and

---

[14] Analyzing these risks "does not require the Court to adjudicate the disputed issues . . . ; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery against the continuing risks of litigation." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002).

meaningful recovery of between 17% to 50% of the purchase price for Class Members now, while avoiding the risks, delay, and expenditure of resources associated with continued litigation.

### 2. Rule 23(e)(2)(C)(ii) – The Proposed Method Of Distributing Relief

The effectiveness of the proposed method of distributing relief to the Class, including the method of processing Class Members' claims, weighs in favor of approval. Class Members who provided a valid Claim Form with proof of purchase will receive a cash payment of $50.00 per unit, and proof of purchase is broadly defined. Settlement ¶ 46. However, proof of purchase is not required to participate in the Settlement. Class Members who submitted Claim Forms without proof of purchase, but who corroborated their class membership by answering basic questions about their purchase, may claim a payment of $25.00 per unit. *Id.* ¶ 47. Additionally, the Settlement authorizes Angeion to reject claims for a number of specified reasons, including because a claim appears fraudulent. Angeion has reported that approximately 8.6 million fraudulent and/or invalid claims were submitted over the course of the claims period. 2/7/25 Weisbrot Decl., ¶ 45; *see also In re Novartis*, No. 1:18-cv-04361 (AKH) (SDA), 2024 U.S. Dist. LEXIS 132677, at *13 (S.D.N.Y. July 26, 2024) (Aaaron, M.J.), *report and recommendation* (noting "in recent years, the filing of fraudulent claims in class action settlements has meaningfully increased").

To identify and exclude fraudulent claims, Angeion has employed several techniques, including a proprietary fraud detection system (AngeionAffirm). *See* 2/7/25 Weisbrot Decl., ¶¶ 49-52; *see also In re Novartis*, 2024 U.S. Dist. LEXIS 132677, at *15 (expressing view that "Angeion's fraud detection system is robust and appropriately designed to weed out fraudulent claims"). The deficiency and appeal processes negotiated by the Parties further serve to protect legitimate claimants while eliminating fraudulent claims. *See* 2/7/25 Weisbrot Decl., ¶¶ 35-43; Vozzolo Decl., ¶ 65. In sum, the claims administration process satisfies Rule 23(e)(2)(C)(ii). *See*

*Lea v. Tal Educ. Grp.*, 2021 U.S. Dist. LEXIS 229314, at *32 (S.D.N.Y. Nov. 30, 2021) (method of processing claims effective when claims administrator was required to "process the claims under Lead Counsel's guidance, allow Claimants an opportunity to cure claim deficiencies or request the Court to review their claim denial, and, lastly, mail Authorized Claimants their pro rata share of the Net Settlement Fund …, after Court approval"); *accord In re PPDAI Grp. Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 11427, at *34 (E.D.N.Y. Jan. 21, 2022) (same).

The process also strikes the appropriate balance between "deter[ring] or defeat[ing] unjustified claims" while "facilitat[ing] filing legitimate claims." FRCP 23(e), 2018 Advisory Committee Notes. Indeed, to exclude class members without proof of purchase from the claims process, would largely eliminate relief for many of the consumers for which class actions are designed. *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 407-08 (S.D.N.Y. 2015) ("If proof of purchase was required . . . there would be no such thing as a consumer class action, especially with respect to low-cost products."); *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014) ("[T]he class action device, at its very core, is designed for cases like this where a large number of consumers have been defrauded but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit.").

### 3. Rule 23(e)(2)(C)(iii) – Terms Of Any Proposed Award Of Attorneys' Fees

"[T]he district court is required to review both the terms of the settlement and any fee award encompassed in a settlement agreement in tandem." *Moses*, 79 F.4th at 244. Here, although Artsana has agreed to pay any attorneys' fees, costs, and expenses awarded by the Court, the Parties have no agreement on the amount of attorneys' fees and expenses. Settlement ¶¶ 65-66. The Settlement is not conditioned upon approval of any specific fee amount, nor does any fee award impact the recovery to the Class; rather, the amount of the attorneys' fees and expenses will be determined by the Court and any such payment will be separate from and will not detract from

payments afforded to the Class. *Id.* Class Counsel separately move for an award of attorneys' fees, costs, and expenses in the amount of $2,250,000, which, as detailed in Plaintiffs' concurrent filing, represents a lodestar multiplier of 1.032 and approximately 9% of the total value of the Settlement—well below the benchmark of fees approved within the Second Circuit. Plaintiffs' fee motion was initially filed 45 days before the November 8, 2023 final approval hearing and 10 days before the objection deadline, affording Class Members time to consider and respond to Plaintiffs' request. No objections were filed to the Settlement or to Plaintiffs' fee application. 2/7/25 Weisbrot Decl.,¶ 48. In accordance with the Court's orders, Plaintiffs now renew their motion for fees and expenses. For these reasons and the reasons set forth in Plaintiffs' separately filed fee motion, this factor supports final approval. *See Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010) (fairness of settlement supported where fee award would in no way diminish benefit to class and issue of fees was not raised until after parties agreed on benefit to class); *see also Rosenfeld*, 2021 U.S. Dist. LEXIS 26950, at *19 (fee award is not an obstacle to approval where it is "specifically reserved to the court's discretion").

### 4.    Rule 23(e)(2)(C)(iv) –Agreements To Be Identified Under Rule 23(e)(3)

There are no agreements between Plaintiffs or their counsel and Artsana other than the Settlement Agreement and the Joint Stipulations filed with the Court. Vozzolo Decl. ¶ 77.

### 5.    Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably

The Settlement Agreement applies to all Class Members equally as they are each entitled to receive the same payment based on the number of Booster Seats purchased and whether they have proof of purchase. *See Hesse v. Godiva Chocolatier*, 2022 U.S. Dist. LEXIS 72641, at *28 (S.D.N.Y. Apr. 20, 2022). This is so even though Class Members with proof of purchase will recover more than those without. *See id.* (citing *Carlotti v. ASUS Computer Int'l*, 2019 U.S. Dist. LEXIS 201564, at *39 (N.D. Cal. Nov. 19, 2019) (holding class members were treated equitably

even when those with proof of purchase could recover more)). Moreover, the modest incentive awards for which Plaintiffs move promote Rule 23's equitable-treatment requirement by fairly compensating the Class Representatives for their contributions relative to absent class members who would otherwise "free ride" on their efforts. *See Moses*, 79 F.4th at 244-45, 253-56. As detailed in Plaintiffs' concurrent filing, the requested awards of $1,500 for each Plaintiff are reasonable and equivalent to awards approved by other courts in this Circuit.

### 6. Second *Grinnell* Factor – The Class's Reaction Has Been Positive

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation omitted). Here, the reaction of Class Members to the Settlement has been overwhelmingly positive. Class Notice has reached approximately 86.77% of targeted Class Members, in addition to direct notice to known class members. *See* 2/7/25 Weisbrot Decl. ¶¶ 26; *see also supra* § VI, at p.13-14. As of February 7, 2025, the Settlement Administrator has reported 65,174 valid claims have been filed, while only 3 Class Members have opted out and none have objected to the Settlement. 2/7/25 Weisbrot Decl., ¶¶ 45, 47-48. This exceptional participation rate and lack of objections from the Settlement Class is a strong indication that Class Members view the Settlement favorably, which weighs heavily in favor of final approval. *See, e.g.*, *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *42-43 ("When considering the large volume of Claim Forms submitted . . . the reaction of the class to date supports approval of the Settlement."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 U.S. Dist. LEXIS 166383, at *9 (E.D.N.Y. Nov. 16, 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.").

### 7. Third *Grinnell* Factor – Stage Of Proceedings And Amount Of Discovery

Under this factor, "[t]he pertinent question is whether counsel had an adequate appreciation

of the merits of the case before negotiating." *See Torres v. Gristede's Operating Corp.*, 2010 U.S. Dist. LEXIS 139144, at *16 (S.D.N.Y. Dec. 21, 2010) (internal quotation marks omitted). "This *Grinnell* factor is intended to assure the Court that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them. . . . Formal discovery is not a prerequisite . . . ." *In re Vitamin C Antitrust Litig.*, 2012 U.S. Dist. LEXIS 152275, at *17 (E.D.N.Y. Oct. 22, 2012) (internal citation and quotation marks omitted).

Here, while the settlement was reached in the early stages of litigation, prior to formal discovery, the Parties have exchanged sufficient information so that they can responsibly resolve the case and make an informed decision regarding the value of the Settlement. Specifically, the Settlement was reached after the Parties completed informal confirmatory discovery, including Defendant providing data concerning manufacturer's suggested retail prices, total sales nationwide on an annual basis and for the Class period, total sales for each Plaintiff's state of residence on an annual basis, estimates of average purchase price, and total revenue received by Artsana from April 22, 2015 through December 31, 2021. Vozzolo Decl. ¶ 21. Moreover, in addition to full briefing on Defendant's motion to dismiss and/or strike the complaint in the *Sayers* Action, the Parties also exchanged mediation submissions that helped to clarify the factual and legal issues. *Id.* ¶ 16. Additionally, members of Class Counsel have had substantial involvement in identical class action litigation against other booster seat manufacturers involving the same issues—this experience has provided Class Counsel with additional knowledge relevant to the merits of this case and the Settlement. Class Counsel, therefore, has had sufficient information to make an informed decision about the merits of this case relative to the benefits provided by the Settlement. Moreover, "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Hadel v. Gaucho, LLC*, 2016 U.S. Dist. LEXIS 33085, at *4 (S.D.N.Y. Mar. 14, 2016);

*see also Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218, at *30 (S.D.N.Y. June 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement and avoiding hundreds of hours of legal fees). This factor favors approval.

### 8.    Seventh *Grinnell* Factor – Ability To Withstand A Greater Judgment

The seventh *Grinnell* factor considers whether a defendant could withstand a judgment substantially higher than the proposed settlement amount if the case were to proceed to trial. *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 338 (S.D.N.Y. 2005). A defendant's ability to withstand a greater judgment, does not, standing alone, suggest that a settlement is unfair. *See Athale v. Sinotech Energy Ltd.*, 2013 U.S. Dist. LEXIS 199696, at *18 (S.D.N.Y. Sep. 4, 2013). This factor is either neutral or supports the reasonableness of the Settlement because it is not known whether Artsana could withstand a potentially enormous statutory damages award that could be assessed if the case succeeded at trial and survived appeal. *See Famular v. Whirlpool Corp.*, 2019 U.S. Dist. LEXIS 44907, at *26 (S.D.N.Y. Mar. 18, 2019) (noting "[s]tatutory damages are permissible in class actions alleging [GBL] violations brought in federal court").

### 9.    Eighth And Ninth *Grinnell* Factors – The Settlement Amount Is Reasonable In Light Of The Possible Recovery And Attendant Risks Of Litigation

Courts typically analyze the last two *Grinnell* factors together, "consider[ing] and weigh[ing] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 U.S. Dist. LEXIS 119702, at *57 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact . . . and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*,

464 F.2d 689, 693 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972)). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455 n.2.

Here, each Class Member is able to recover cash benefits of $25.00 or $50.00 per Booster Seat, without any limit to the number of claims Defendant will pay. Settlement ¶¶ 46-47. Given the complexity of the action and the potential of a non-recovery, the Settlement provides a favorable resolution for Class Members. More specifically, based on suggested retail prices for the Booster Seats, this equates to an approximate recovery of 17% to 50% of the purchase price for each Class Member. Vozzolo Decl. ¶¶ 48-49. This recovery falls well within the range that courts have traditionally found to be fair and adequate. *See, e.g.*, *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *52 (finding recovery under different damages scenarios ranging from 17% to 20% was "reasonable when viewed against the risks of continued litigation, and the real potential for a zero recovery.").Therefore, these factors militate in favor of approving the Settlement.

## VIII.    CONCLUSION

For the above reasons and those described in the motion for fees and expenses, Plaintiffs respectfully request the Court enter the proposed Final Approval Order filed herewith, finally certify the Settlement Class, appoint Class Counsel and Plaintiffs as representatives for the Settlement Class, award each Plaintiff an incentive award in the amount of $1,500, grant Class Counsel's motion for fees, expenses, and costs, and grant final approval of this Settlement.

Dated:  February 7, 2025                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Alec M. Leslie*

Alec M. Leslie
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC**
Martha A. Geer
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
Email: mgeer@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Gregory F. Coleman (admitted *pro hac vice*)
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0080
Email: gcoleman@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Jonathan B. Cohen (admitted *pro hac vice*)
3833 Central Ave.
St. Petersburg, FL 33713
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
Email: jcohen@milberg.com

-and-

**VOZZOLO LLC**
Antonio Vozzolo
Andrea Clisura
499 Route 304
New City, New York 10956
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com
       aclisura@vozzolo.com

and

345 Route 17 South
Upper Saddle River, NJ 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400

*Co-Class Counsel*