UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASHAYILA SAYERS, BRITTNEY TINKER, JENNIFER MONACHINO, KIMBERLY MULLINS, HILDA MICHELLE MURPHREE, and AMANDA JIMENEZ, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br>   v.<br><br>ARTSANA USA, INC.,<br><br>                Defendant. | Case No. 7:21-cv-07933-VB<br><br>Hon. Vincent L. Briccetti |

**ARTSANA USA, INC.'S RESPONSE TO PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

    Artsana joins in Plaintiffs' motion for final approval of the settlement.  Although there was unprecedented fraud that plagued the claims process in this case, the settlement administrator was eventually able to successfully identify and eliminate the bulk of the fraudulent claims.  Artsana appreciates the additional time that the Court has provided to allow for a robust fraud-detection and audit process.  The additional time was essential, given the scale of the fraud that occurred here—there were ultimately claims for 9.6 million products when fewer than 875 thousand were sold during the class period.  The final numbers reported by Angeion are 52,648 valid claims for 65,174 products (of the 874,538 eligible products sold).  This is a claims rate of 7.45%.

    Now that this validation process has occurred, this Court can ratify the settlement as "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

1

## I. Rule 23(e)(2)(A)–(B)

As an initial matter, the settlement is procedurally fair under Rule 23(e)(2)(A)–(B), because class members were adequately represented,[1] and the settlement was the result of arm's-length negotiations between the parties.

## II. *Grinnell* Factors

The settlement is also substantively fair under this Circuit's nine-factor test in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

1. *Complexity, Expense, and Likely Duration of Litigation*. This factor supports final approval. Plaintiffs' fundamental allegation—that Artsana's booster-seat advertising was somehow misleading—is baseless, because that advertising truthfully advised purchasers about the appropriate height, weight, and temperament of children using Chicco-branded booster seats and because Artsana carefully tests its products to government and industry standards. *See Sayers v. Artsana USA, Inc.*, No. 5:21-cv-01876, ECF 20 at 1 (E.D. Pa. July 28, 2021). To prevail in this action, Plaintiffs would have to overcome Artsana's motion to dismiss, undertake discovery (including document discovery and depositions), successfully seek certification of the class, and prevail at trial and on appeal. Each of those stages would entail significant complexity and risk, and bringing the case to a successful conclusion would take many years. This settlement, by contrast, avoids that significant complexity, expense, and delay. *See Grottano v. City of New York*, No. 15-cv-9242-RMB, 2021 WL 5563990, at *5 (S.D.N.Y. Nov. 29, 2021) (finding factor weighed in favor of settlement approval because otherwise, the parties "would likely need to engage in

---

[1] As explained in its concurrently filed Opposition to the Motion for Attorneys' Fees, Artsana respectfully submits that a significant reduction in attorneys' fees is warranted, given Plaintiffs' counsel's overstaffing, inefficiency, and needless (and groundless) intransigence in the face of the historic fraud plaguing this settlement.

more motion practice and trial preparation," and "[a]ny judgment following trial could be appealed, further delaying finality and substantially increasing the costs of litigation").

2. *Reaction of the Class to the Settlement*. As explained above, the validated claims rate is 7.45%, which is higher than the rate generally expected in consumer class actions. Moreover, as Plaintiffs note, only three Class Members opted out, and none has objected to the Settlement. ECF 134 ¶¶ 47–48.

3. *Stage of Proceedings and Amount of Discovery Completed*. This litigation settled in its early stages, while Artsana's motion to dismiss was pending and before any discovery had taken place. However, Plaintiffs' counsel—which has engaged in "identical class action litigation . . . involving the same issues," ECF 133 at 23—had sufficient information to evaluate the strength of Plaintiffs' claims, including via voluntary information exchanges and the mediation briefs from Artsana. This factor also favors final approval.

4. *Risks of Establishing Liability*. The risks of establishing liability favor final approval. As Plaintiffs explain, litigating putative class actions through trial and appeal is an inherently risky endeavor. ECF 133 at 17–18. But this case in particular poses significant risk for Plaintiffs, because there was nothing misleading about Artsana's booster-seat advertising. Plaintiffs' core allegation—that Artsana claimed its booster seats are "safe for children weighing as little as 30 pounds," ECF 1 ¶ 60—is simply untrue. Instead, the "Child Guidelines" in the user guide specified that the booster seats should "ONLY" be used when a child is between 30 and 110 pounds and is "at least 4 years old," "can sit relatively still . . . throughout the car ride," "can leave the shoulder and lap belt properly positioned . . . every time in the car," and is "between 38-57 inches" tall. *Id.*

5. *Risks of Establishing Damages*. Because Plaintiffs would also have an uphill battle in establishing damages, even if they could prove liability (they could not), this factor also favors

3

approval. Plaintiffs' allegation that they "would not have paid as much" for the booster seats if they had been aware of the supposed "defects" strains credulity. *Sayers*, ECF 1 ¶¶ 103, 108, 113, 118, 168. As Plaintiffs themselves allege, the booster seats were designed for children who satisfied several different conditions, not just the 30-to-110-pound weight requirement. *Id.* ¶ 77. Moreover, Plaintiffs allege that a diverse range of high-profile organizations had "agreed for decades that children under 40 pounds should remain in harnessed car seats," *id.* ¶ 5, undermining their claims that there was any actionable deception. And, of course, there is no allegation that the booster seats at issue manifested any defect or caused an injury. Plaintiffs would therefore face significant hurdles in establishing damages, another fact that favors approval of the settlement.

      6.    *Risks of Maintaining a Class Action Through Trial*. This factor favors approval because, as Plaintiffs concede (ECF 133 at 17), they would have faced significant risk in securing class certification in the first instance and maintaining a certified class through a trial. The claims implicate a number of inherently individualized analyses that were highly likely to overwhelm any alleged "common" issues—including individualized assessments of materiality, injury, causation, and damages. People purchase booster seats for their children based on a wide array of personal reasons, including price, color, word of mouth, brand loyalty, and a host of other subjective preferences. The diverse class of consumers across numerous states purchased and used different products from different retailers at different times during the proposed class period, and they had differing knowledge regarding the at-issue advertising. These (and other) variations very likely would have presented insurmountable challenges to class certification outside of the settlement context.

      7.    *Ability of Defendants to Withstand Greater Judgment*. While Artsana could withstand a greater judgment, this factor alone does not suggest the settlement is unfair. *Athale v. Sinotech Energy Ltd.*, No. 11-cv-05831-AJN, 2013 WL 11310686, at *6 (S.D.N.Y. Sept. 4, 2013).

8. *Range of Reasonableness of Settlement Fund in Light of the Best Possible Recovery*. Per the terms of the settlement, valid claimants were able to recover $25 or $50 for each booster seat product that they purchased during the class period. As Plaintiffs note, that equates to approximately 17% to 50% of the purchase price of the booster seat (ECF 133 at 25), which is significant given that Plaintiffs merely alleged they would have paid *less* for the booster seats if they had been aware the allegedly proper weight range was 40 to 110 pounds, rather than 30 to 110 pounds.

9. *Range of Reasonableness of the Settlement Fund in Light of All Attendant Risks of Litigation*. The monetary relief afforded to valid claimants is reasonable when considering the risks Plaintiffs would face in trying to recover. As Artsana explained above, it views the allegations concerning Artsana's booster-seat advertising as meritless and believes that had this case proceeded many of the claims would have been dismissed, no class would have been certified, no liability would have been proven, and no damages would have been awarded.

### III. Rule 23(e)(2)(C)–(D)

The settlement is also fair under Federal Rule of Civil Procedure 23(e)(2)(C) and (D).

1. *Rule 23(e)(2)(C)(i)*. This provision requires courts to assess the "costs, risks, and delay of trial and appeal." As explained above under the first, fourth, fifth, and sixth *Grinnell* factors, absent settlement, Plaintiffs would have faced an uphill and costly challenge and would have needed to (a) overcome Artsana's motion to dismiss; (b) conduct significant discovery; (c) successfully seek and maintain certification of the class, and (d) prevail at trial and on appeal. Each of the considerations in Rule 23(e)(2)(C)(i) weighs in favor of approval.

2. *Rule 23(e)(2)(C)(ii)*. Under the circumstances now before the Court, the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," weighs in favor of approval. Fed. R. Civ. P. 23(e)(2)(C)(ii). As

discussed in Artsana's Opposition to the Motion for Attorneys' Fees, the claims form included a matrix, which directly contributed to the overwhelming fraud in this case and hampered the effectiveness of processing class member claims. ECF 85 ¶¶ 3–9 (noting that Artsana expressed concerns about the matrix, but Plaintiffs only agreed, after some delay, to minor adjustments). The settlement administrator, Angeion, was therefore forced to wade through nearly 9 million claims to identify the 52,648 approved claims. However, after this Court provided additional time, Angeion was able to accomplish the task (with the help of a third-party expert hired by Artsana), and no party disputes the final result. Now that this validation and audit process is complete, Angeion may effectively distribute payments to claimants in accordance with the terms of the settlement.

       3.    *Rule 23(e)(2)(C)(iii)*. The settlement's provision regarding attorneys' fees does not counsel against approval. Plaintiffs' counsel request fees of $2.25 million (the maximum permissible recovery under the settlement), an amount that nearly matches the entire cash benefit to the class of $2.39 million. As Artsana explains in its concurrently filed Opposition, the request of $2.25 million is excessive for several reasons and this Court should award no more than $725,000. However, because the settlement leaves the final amount of any award to the discretion of the Court, ECF 42-1 ¶ 66, this factor does not prevent the Court from approving the settlement.

       4.    *Rule 23(e)(2)(C)(iv)*. Because there is no agreement between Plaintiffs or Plaintiffs' counsel and Artsana—other than the Settlement Agreement and the Joint Stipulations filed with the Court—this factor also counsels in favor of approving the settlement.

       5.    *Rule 23(e)(2)(D)*. Finally, the "proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The settlement creates two groups of class members, based on whether they have proof of purchase of their booster seat or not and treats members in each group equitably. If a class member provided valid proof of purchase, they are entitled to a

$50 payment per booster seat, ECF 42-1 ¶ 46; if a class member does not have proof of purchase, but meets the criteria in the settlement, they are entitled to $25 per booster seat, *id.* ¶ 47.

*   *   *

In sum, it is very likely that some fraudulent claims have slipped through the validation process. But the final result is the best the parties could hope for given the unprecedented fraud that plagued this claims process. Accordingly, the Court should grant final approval of the settlement.

Dated: February 28, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Christopher Chorba*

Christopher Chorba (*Pro Hac Vice*)
CChorba@gibsondunn.com
Jeremy S. Smith (*Pro Hac Vice*)
JSSmith@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: (213) 229-7000

Jason W. Myatt
JMyatt@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Tel.: (212) 351-4000

*Attorneys for Artsana USA, Inc.*

## **ATTORNEY CERTIFICATION PURSUANT TO LOCAL RULE 7.1**

I, Chris Chorba, an attorney admitted pro hac vice to practice law before this Court, hereby certify that this Memorandum of Law complies with the word limit set forth in Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, because it contains 1,834 words, excluding the parts of the Memorandum of Law exempted by Rule 7.1. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this Memorandum of Law.

Dated: February 28, 2025

By: */s/ Christopher Chorba*
Christopher Chorba
