# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASHAYILA SAYERS, BRITTNEY TINKER, JENNIFER MONACHINO, KIMBERLY MULLINS, HILDA MICHELLE MURPHREE, and AMANDA JIMENEZ, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>ARTSANA USA, INC.<br><br>　　　　　　　　　　Defendant. | Case No. 7:21-cv-07933-VB<br><br>Hon. Vincent L. Briccetti |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARDS

Dated:  March 14, 2025

**BURSOR & FISHER, P.A.**
Alec M. Leslie
1330 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Martha A. Geer
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
Email: mgeer@milberg.com

-and-

**VOZZOLO LLC**
Antonio Vozzolo
345 Route 17 South
Upper Saddle River, NJ 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com

*Co-Class Counsel*

## TABLE OF CONTENTS

**PAGE(S)**

I. THE LODESTAR METHOD SUPPORTS THE REQUESTED FEE ................................2

II. THE REQUESTED FEE IS ALSO REASONABLE UNDER THE PERCENTAGE APPROACH ........................................................................................................................7

III. ARTSANA AGREED TO PAY ATTORNEYS' FEES AS PART OF THE SETTLEMENT ....................................................................................................................10

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*ATX Debt Fund 1, LLC v. Paul*,
  2024 U.S. Dist. LEXIS 84640 (S.D.N.Y. May 9, 2024) ............................................................... 2

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ..................................................................................................................... 8

*Broome v. Biondi*,
  17 F. Supp. 2d 230 (S.D.N.Y. 1997) ............................................................................................ 5

*Cunningham v. Suds Pizza, Inc.*,
  290 F. Supp. 3d 214 (W.D.N.Y. 2017) ......................................................................................... 9

*Darby v. Sterling Home Care, Inc.*,
  2020 U.S. Dist. LEXIS 483 (S.D.N.Y. Jan. 2, 2020) .................................................................... 7

*Fox v. Vice*,
  563 U.S. 826 (2011) ..................................................................................................................... 5

*Grant v. Martinez*,
  973 F.2d 96 (2d Cir. 1992) ...................................................................................................... 3, 5

*Hart v. BHH, LLC*,
  2020 U.S. Dist. LEXIS 173634 (S.D.N.Y. Sep. 22, 2020) ........................................................... 9

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ..................................................................................................................... 6

*In re Flag Telecom Holdings*,
  2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010) ............................................................ 7

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
  2017 U.S. Dist. LEXIS 85004 (S.D.N.Y. May 22, 2017) ............................................................ 7

*In re Wawa, Inc. Data Sec. Litig.*,
  85 F.4th 712 (3d Cir. 2023) ........................................................................................................ 10

*Karsch v. Blink Health*,
  2019 U.S. Dist. LEXIS 220129 (S.D.N.Y. Dec. 20, 2019) .......................................................... 6

*Kirsch v. Fleet St., Ltd.*,
  148 F.3d 149 (2d Cir. 1998) ......................................................................................................... 7

*Kurtz v. Kimberly-Clark Corp.*,
   2024 U.S. Dist. LEXIS 8711 (E.D.N.Y. Jan. 17, 2024) .......................................................... 9, 10

*Martinez v. Paramount Country Club, LLC*,
   2019 U.S. Dist. LEXIS 56735 (S.D.N.Y. Apr. 1, 2019) ............................................................. 7

*Masters v. Wilhelmina Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007) ....................................................................................................... 8

*McGreevy v. Life Alert Emergency Response, Inc.*,
   258 F. Supp. 3d 380 (S.D.N.Y. 2017) ........................................................................................ 8

*Moses v. N.Y. Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ........................................................................................................ 9

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
   711 F.2d 1136 (2d Cir. 1983) ..................................................................................................... 6

*Raja v. Burns*,
   43 F.4th 80 (2d Cir. 2022) .......................................................................................................... 6

*Torres v. Gristede's Operating Corp.*,
   519 F. App'x 1 (2d Cir. 2013) .................................................................................................... 6

*Van Gemert v. Boeing Co.*,
   590 F.2d 433 (2d Cir. 1978) ....................................................................................................... 9

*Varljen v. H.J. Meyers & Co.*
   2000 U.S. Dist. LEXIS 16205 (S.D.N.Y. Nov. 6, 2000) ............................................................ 7

*Zink v. First Niagara Bank, N.A.*,
   2016 U.S. Dist. LEXIS 179900 (W.D.N.Y. Dec. 29, 2016) ....................................................... 8

**STATUTES**

N.Y. Gen. Bus. Law § 349(h) ........................................................................................................ 11

N.Y. Gen. Bus. Law § 350-e(3) ..................................................................................................... 11

**RULES**

FRCP 23(e)(3) 2018 ........................................................................................................................ 9

Under the Settlement, Artsana agreed to pay Attorneys' Fees and Expenses in an amount to be determined by the Court. After previously opposing fees altogether, Artsana now asks that the Court reduce Class Counsel's lodestar by 66%. None of the authorities cited by Artsana support that request. Instead, the cases Artsana relies on involve fee applications that included time for non-settled or unsuccessful claims, or cases where the lodestar dwarfed a small common fund. In contrast, all of Class Counsel's time contributed to the Settlement and protecting Class Members' interests and, critically, the Attorneys' Fees and Expenses will not reduce payments to the Class. Although Artsana attempts to minimize the achievements of the Settlement, it acknowledges Class Members' recovery of $50 per booster seat with proof of purchase (33% to 50% of the purchase price) and $25 per booster seat without proof of purchase (17% to 25% of the purchase price) "is significant." ECF 142 at 5.

The Settlement recognizes many Class Members lack proof of purchase. Class Counsel worked with Angeion and Artsana to ensure robust notice and a suitable claims process to allow every Class Member an opportunity to file a claim. While Artsana attempts to blame Class Counsel for claims generated by "bots" and other programmatic fraud, there is no evidence any actions by Class Counsel led to fraud. Rather, the characteristics that make this Settlement an excellent result for the Class also made it appealing to fraudsters. The fraud that occurred made the supplemental notices and deficiency and appeal processes all the more important to protect legitimate Class Members. These activities were critical to ensuring a fair and adequate Settlement.

Now that the lengthy period of claims review and deficiency and appeals processes have concluded, Angeion's claims determinations result in a claims rate of approximately 7.45%. Although that rate is relatively high as noted by Artsana (ECF 142 at 3), Defendant's request to use the claims rate to impose a ceiling on Class Counsel's fee is contrary to Second Circuit

1

precedent. In fact, cases cited by Artsana note that when considering a fee with respect to funds claimed, a higher percentage of that recovery is necessary to account for counsel's efforts and the results achieved, and to avoid disincentivizing attorneys from pursuing similar cases, most of which result in low claims rates. Thus, when viewing Class Counsel's fee request as a percentage, this Court should consider both the full value made available, as well as the amounts that will be paid. Class Counsel's requested fee is reasonable under either measure.

## I.     THE LODESTAR METHOD SUPPORTS THE REQUESTED FEE

Artsana's request to slash Class Counsel's lodestar by 66% is based on false premises that Class Counsel "promoted" fraudulent claims and performed duplicative or unnecessary work. Neither contention is true and the cases Artsana cites are inapposite. Plaintiffs' requested award is reasonable and fully supported.[1]

*First*, Class Counsel's hours were devoted to resolving the claims and ensuring the Settlement and its implementation are fair and adequate. Artsana cannot attribute claims generated by programmatic fraud to Class Counsel. Unfortunately, class actions involving products for which there is not proof of purchase have become susceptible to more sophisticated fraud. Here, Artsana agreed to criteria by which Class Members without proof of purchase could file a claim for $25. Settlement ¶ 47. That criteria was reflected in a matrix on the claim form mutually agreed to by the Parties with the recommendations of Angeion. Artsana cannot plausibly claim it was unfairly cajoled into agreeing to what it now calls "an easily gameable matrix." ECF 140 at 4, 15. More significantly, Artsana's argument overlooks the type fraud that occurred, which stemmed from

---

[1] Artsana does not challenge Class Counsel's attorney rates, but states support staff rates from $150 to $300 are excessive. Those rates are supported by cases in this District. *See, e.g.*, *ATX Debt Fund 1, LLC v. Paul*, No. 19-CV-8540 (JPO), 2024 U.S. Dist. LEXIS 84640, *13-14 (S.D.N.Y. May 9, 2024) (finding Gibson Dunn's rates of $335-$350 for research employees and $595-$685 for senior paralegals reasonable after a 10% reduction).

sophisticated programs designed to file claims on a massive scale while bypassing traditional deterrents. In fact, in a recent podcast referencing "the rising problem of fraud in class action settlements," Artsana's lead attorney explained that fraudulent claims based on people taking advantage of a "loose claim form that doesn't require proof of purchase . . . ***are one-offs***." Vozzolo Decl. ¶ 12. As Defense counsel explained, the fraud today is "more sophisticated" and "not something you're going to catch unless you're using a good administrator." *Id.* Artsana does not explain how promoting the serial number criteria would have reduced programmatic fraud because it wouldn't. Catching this kind of fraud depends on administrators implementing their own sophisticated technology to root out fraudulent claims. Artsana's claim that Class Counsel is responsible for fraud is baseless and inappropriate. *Id.* ¶¶ 7-13.

***Second***, the history of this case shows substantial work was required. Plaintiffs could not simply copy a 32-page Congressional report dealing with seven different manufacturers. *Id.* ¶ 6. Plaintiffs conducted thorough investigations and drafted comprehensive complaints with detailed allegations. There were not many "individualized facts about plaintiffs" (ECF 140 at 3) because this is a class action where the core facts concern Artsana's false marketing that its products were safe for children weighing as little as 30 pounds (which it knew flouted expert advice) and provided special side-impact protection. The time *Jimenez* counsel spent independently researching and drafting the complaint was not "duplicative" or unnecessary. Vozzolo Decl. ¶¶ 4-5. "The relevant issue [in calculating lodestar] is not whether hindsight vindicates an attorney's time…, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Artsana's claim that *Sayers* recycled a motion to dismiss opposition from a similar matter is also wrong. The opposition in *Sayers* involved the important issue of plaintiffs' standing to assert a nationwide claim under

3

Pennsylvania's UTPCPL. *Sayers v. Artsana USA, Inc.*, No. 5:21-cv-01876- JMG, ECF 27 (E.D. Pa. Sept. 3, 2021).

Undoubtably, much of the work related to the Settlement. The fact that Defendant created drafts of certain documents did not make Plaintiffs' job of reviewing, negotiating, and finalizing the Settlement any less significant. Class Counsel worked to ensure Class Members without proof of purchase could participate, including by negotiating verification criteria, working with Angeion and Artsana to develop appropriate claims forms, and later by negotiating deficiency and appeals processes. Artsana is correct that many hours were devoted to the deficiency process—a process required under the Settlement (Settlement ¶ 87) and important to its fairness. Class Counsel's work was essential to developing notice, deficiency, and appeal processes tailored to allow claimants a fair opportunity to correct deficiencies or contest possible indicators of fraud. Vozzolo Decl. ¶¶ 14-22. Artsana's preferred approach to use a hatchet to eliminate claims with any indication of fraud, including wholesale exclusion from any deficiency process and notice of rejection, was contrary to the Settlement and inconsistent with the concern expressed at the initial fairness hearing that legitimate claims could be inadvertently caught in the "fraud net."

The motion practice in advance of the initial fairness hearing also could not simply have been avoided because there were fundamental disagreements over how to address the fraud—in particular, with Defendant insisting on an immediate close to the claims period contrary to the Settlement and Class Notice. The modifications to the Settlement, claims period, and claims administration to fairly address the fraud, required significant work including conferences with Angeion and Artsana, lengthy negotiations over the deficiency/appeal processes, Court filings, and notifications and web portals to implement the processes. This work was essential to fairly

4

implementing the Settlement.[2] *Cf. Grant v. Martinez*, 973 F.2d 96, 100 (2d Cir. 1992) (time expended defending settlement and establishing its fairness is compensable given the alternative is "further settlement negotiations or trial, either of which would likely have required considerable resources"). Finally, after Artsana discovered in late August 2024 that it inadvertently omitted over 5,000 Class Members from its initial class list, the Parties engaged in yet another round of negotiations and drafting for new notice, claim forms, and an appeal process with related notice and additional web portals. *See* ECF Nos. 117, 122, 124. Artsana's contention Class Counsel performed little work and "created" additional work is untrue.

**Third**, Class Counsel's hours are reasonable and supported. Artsana declines to say how many total timekeepers its counsel staffed since this matter commenced four years ago, stating only that six attorneys at Gibson Dunn each billed more than 15 hours. ECF No. 141, ¶ 19. Looking at the hours billed by the firms appointed Class Counsel, two timekeepers performed 100% of the work at Vozzolo (ECF 136-3), two performed 75% and five performed 97% at Bursor & Fisher (ECF 129-1), and at Milberg, 95% was performed by seven timekeepers (ECF 130 ("Geer Decl."), ¶ 10). Staff turnover and absences unavoidably increase the timekeepers involved in a lengthy case (just as it did at Gibson Dunn (ECF 141 ¶ 19)). As explained in the Geer Declaration ¶ 12, there is no indication the involvement of additional attorneys or staff resulted in wasted time that did not contribute to the litigation or Settlement. *See Broome v. Biondi*, 17 F. Supp. 2d 230, 235 (S.D.N.Y. 1997) ("[T]he presence and collaboration of multiple lawyers do not, by themselves, indicate needless duplication.").

The "essential goal in shifting fees" is "not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "Trial courts evaluating fee requests 'need not, and indeed should not,

---

[2] Vozzolo Decl. ¶¶ 15-22.

5

become green-eyeshade accountants." *Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 4 (2d Cir. 2013); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation."). Instead, the Court "should focus on the significance of the overall relief obtained…in relation to the hours reasonably expended…." *Hensley*, 461 U.S. at 434-35. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* Here, the time records show "the date, the hours expended, and the nature of the work," including its "general subject matter." *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). "Counsel is not required to record in great detail how each minute of his time was expended." *Id.* (citing *Hensley*, 461 U.S. at 437 n.12). It is not suspicious that over many months of a case one partner did not bill time for certain calls with co-counsel. Nor is it suspect that counsel participating in full-day, virtual mediations would have different hours allotted to the mediation over the course of the day.

     Defendant's complaints of "vague" entries are overblown. Indeed, time records submitted in a different matter by Artsana's counsel shows Gibson Dunn frequently uses similar descriptions. *Id.* ¶¶ 27-28. Moreover, block billing "is by no means prohibited…as long as the district court is still able to conduct a meaningful review of the hours…." *Raja*, 43 F.4th at 87. As long as the Court can discern the entries "fall within the scope of th[e] fee award" a drastic reduction in fees is not warranted. *Karsch v. Blink Health*, No. 17-CV-3880 (VM) (BCM), 2019 U.S. Dist. LEXIS 220129, at *16-17 (S.D.N.Y. Dec. 20, 2019) ("modest 5% reduction" addressed vagueness in Gibson Dunn entries). Class Counsel's hours are detailed and proportionate to the excellent results obtained and challenges overcome in this case.

***Fourth***, cases cited by Artsana to support a 66% reduction of lodestar involve situations where only certain claims were successful or the percentage method was used to avoid swallowing up a small common fund. *See Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172-73 (2d Cir. 1998) (50% reduction was to exclude hours devoted to failed unrelated labor law claim); *Martinez v. Paramount Country Club, LLC*, 2019 U.S. Dist. LEXIS 56735, at *13-14 (S.D.N.Y. Apr. 1, 2019) (individual Rule 68 fee application included time for co-plaintiff and class claims that could not be parsed out); *Darby v. Sterling Home Care, Inc.*, 2020 U.S. Dist. LEXIS 483, at *8, 10-11 (S.D.N.Y. Jan. 2, 2020) (timesheets included time for separate individual settlement and Court used percentage approach, noting negative multiplier was common to avoid "swallow[ing] up" small fund); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2017 U.S. Dist. LEXIS 85004, at *9, 14-15 (S.D.N.Y. May 22, 2017) (negative multiplier necessary given small fund); *Varljen v. H.J. Meyers & Co.*, 97 CIV. 6742 (DLC), 2000 U.S. Dist. LEXIS 16205, at *15 (S.D.N.Y. Nov. 6, 2000) (same). Here, the Settlement resolves <u>all</u> claims and Class Counsel's fee will not reduce payments to Class Members. Moreover, the Parties are not aware of a single objection to the Settlement or requested fee. *See In re Flag Telecom Holdings*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, *85-86 (S.D.N.Y. Nov. 5, 2010) ("[T]he lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee.").

## II.   THE REQUESTED FEE IS ALSO REASONABLE UNDER THE PERCENTAGE APPROACH

When considering fees using a percentage approach, the Court should consider the full value made available to Class Members through the efforts of Class Counsel, as well as funds claimed. Plaintiffs achieved a Settlement where every Class Member had a right to make a claim for at least $25—*at least* 17% to 25% of the purchase price of the products. Class Counsel worked

to ensure Class Members' right to claim a share of the funds was not illusory by negotiating reasonable verification criteria, along with fair claims, deficiency, and appeals processes, as well as multiple notice programs to afford every Class Member an opportunity to file a claim. To ignore the funds made available to Class Members, but unclaimed, is contrary to the weight of authority and disregards benefits obtained for absentee class members through the work of Class Counsel. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) ("Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel."); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("An allocation of fees by percentage should [] be awarded on the basis of the total funds made available, whether claimed or not."); *see also* ECF 128 at 14-16 (citing cases).

Artsana argues the cases following the full-benefit approach are "a few older cases" and based on a "misinterpretation of *Masters*," which involved a *cy pres* award. ECF 140 at 21. But this ignores *Masters*' reasoning that "[t]he entire Fund, and not some portion [], is created through the efforts of counsel," 473 F.3d at 437, and that "in both of the cases with which *Masters* 'side[d]', the unclaimed funds *did* revert to the defendant" as noted in *Zink v. First Niagara Bank, N.A.*, No. 13-CV-01076-JJM, 2016 U.S. Dist. LEXIS 179900, *19 (W.D.N.Y. Dec. 29, 2016). *Masters* explained that looking to the full value does not create a "windfall" because the percentage can be adjusted up or down. *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 387-89 (S.D.N.Y. 2017), relied on by Defendant, did just that. The Court calculated a fee based on the full value of the claims-made settlement, and determined a decrease of just "5% of the baseline fee percentage" was appropriate given the reversionary nature of the fund. Even cases cited by Artsana that limit *Masters* to cases involving *cy pres* recognize that when assessing fees against funds

actually paid, a reasonable percentage may be significantly higher than the typical "benchmark" to adequately compensate counsel and give due credit for their efforts and the results achieved.[3] Indeed, in *Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142 (PKC) (RML), 2024 U.S. Dist. LEXIS 8711, *35-38, 52 (E.D.N.Y. Jan. 17, 2024), the Court ultimately awarded a fee that amounted to approximately 73% of the settlement value based on claims made.[4] Here, Plaintiffs seek 43.69% of the value based on claims made and 9% of the value based on total funds available. Both percentages are reasonable in light of the significant cash benefits and total value of the Settlement based on claims made—$5,149,825 (including approved claims, agreed notice and administration expenses, anticipated incentive awards, and requested fees and costs) with $2,390,825 being paid directly to Class Members. ECF 136 ¶ 82.

Contrary to Artsana's assertions, this is consistent with *Buffington v. Progressive Advanced Ins.*, No. 20-cv-7408-VB, ECF 170 at 88-91 (S.D.N.Y. Aug. 6, 2024), where this Court "disagree[d]. . . that Second Circuit case law *requires* an allocation of fees on the basis of the hypothetical maximum recovery," but awarded fees with reference to *both* the gross and net values of the settlement. That is the approach Plaintiffs have advocated here, urging this Court to consider fees with reference to both the gross value and the quantity of funds claimed in accordance with Second Circuit precedent and Rule 23. *See* ECF 128 at 22-23 (citing *Moses v. N.Y. Times Co.*, 79 F.4th 235, 244 (2d Cir. 2023); FRCP 23(e)(3) 2018 Advisory Committee Note); *Van Gemert v.*

---

[3] *See Hart v. BHH, LLC*, No. 15cv4804, 2020 U.S. Dist. LEXIS 173634, at *17, 2, 30 (S.D.N.Y. Sep. 22, 2020) (distinguishing *Masters* and using lodestar as main measure of fee; awarding fee that was 51.75% of value based on claims made); *Cunningham v. Suds Pizza, Inc.*, 290 F. Supp. 3d 214, 224, 230 (W.D.N.Y. 2017) (distinguishing *Masters*; ultimately awarding fee that was 54% of value based on claims made).

[4] *See Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142 (PKC) (RML), 2024 U.S. Dist. LEXIS 8711, at *35-38, 52 (E.D.N.Y. Jan. 17, 2024) (where requested $3,961,668.77 fee was 77.5% of value based on claims made and $993,958.70 was expected payment to class, reducing fee award to $3,169,335.02 based on lodestar, which equates to approximately 73% of settlement value based on claims made).

9

*Boeing Co.*, 590 F.2d 433, 441 (2d Cir. 1978) (en banc), *aff'd*, 444 U.S. 472 (1980)). This approach is also consistent with public policy considerations to give "due credit" to counsel's efforts and the results achieved and to avoid disincentivizing attorneys from pursuing similar actions. *See Kurtz*, 2024 U.S. Dist. LEXIS 8711, at *37-38; *Buffington*, ECF 170 at 91 ("Awarding counsel a reasonable percentage of a class's maximum hypothetical recovery encourages lawyers to pursue small-claim actions that individual plaintiffs would otherwise be unable or unwilling to bring and deters defendants from engaging in wrongdoing in the first place.").[5]

### III. ARTSANA AGREED TO PAY ATTORNEYS' FEES AS PART OF THE SETTLEMENT

Artsana's position that there is no basis to recover fees from Artsana is contrary to the plain language of the Settlement, where Artsana agreed to pay Attorneys' Fees and Expenses awarded by the Court, up to $2,250,000. Vozzolo Decl. ¶¶ 24-26; Settlement ¶¶ 4, 59(d), 65, 66, 68, 69; Exhibit E § 20. Given its voluntary agreement to separately pay Attorneys' Fees and Expenses as part of the Settlement and release of all claims, Artsana cannot claim to be protected by the "American rule" against shifting fees. The issue for the Court to determine under the Settlement is the *amount* of fees. As Artsana previously argued, citing *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712 (3d Cir. 2023), "district courts can use the percentage-of-the-fund method to determine a reasonable amount of fees, even though there is no actual common fund in a claims-made settlement." ECF 96 (citations omitted). If the Court finds that method inappropriate, it can utilize

---

[5] Artsana also asserts the fee awarded in *Buffington* (19% of estimated recovery) is "less than half of the 44% Plaintiffs seek here." ECF 140 at 21. But in *Buffington*, average payments to class members were expected to be hundreds and thousands of dollars of unpaid vehicle sales tax (with most expected to receive approximately $1,800). *See* No. 20-cv-7408-VB, ECF 170 at 38-40. It is not surprising that in class actions involving known class members with hundreds and thousands of dollars per claim, claims rates and actual payments to class members are likely to be higher than in settlements involving largely unidentified consumers and lower-cost or off-the shelf-products.

the lodestar and award a fully compensatory fee for Attorneys' Fees and Expenses in connection with the Actions and the Settlement, as provided in the Settlement Agreement.[6]

Dated: March 14, 2025

Respectfully submitted,

By: */s/ Alec M. Leslie*

**BURSOR & FISHER, P.A.**
Alec M. Leslie
1330 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Martha A. Geer
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
Email: mgeer@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Gregory F. Coleman (admitted *pro hac vice*)
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0080
Email: gcoleman@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Jonathan B. Cohen (admitted *pro hac vice*)
3833 Central Ave.
St. Petersburg, FL 33713
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
Email: jcohen@milberg.com

---

[6] Artsana ignores this contractual language, despite Plaintiffs raising it multiple times. It also ignores fee shifting statutes such as PA UTPCPL and N.Y. Gen. Bus. Law §§ 349(h), 350-e(3) include time for claims with common underlying facts as cited in Plaintiff's motion. ECF 128 at 9 n.6. Regardless, Artsana *voluntarily* agreed to pay Attorneys' Fees and Expenses.

11

-and-

**VOZZOLO LLC**
Antonio Vozzolo
Andrea Clisura
499 Route 304
New City, New York 10956
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com
      aclisura@vozzolo.com

and

345 Route 17 South
Upper Saddle River, NJ 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400

*Co-Class Counsel*

**ATTORNEY CERTIFICATION PURSUANT TO LOCAL RULE 7.1**

      I, Alec M. Leslie, an attorney admitted to practice law before this Court, hereby certify that this Memorandum of Law complies with the word limit set forth in Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, because it contains 3,497 words, excluding the parts of the Memorandum of Law exempted by Rule 7.1(c). In preparing this certification, I have relied on the word count of the word-processing program used to prepare this Memorandum of Law.

Dated: March 14, 2025                    By: */s/ Alec M. Leslie*